**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------X
DENISE CASSESE f/k/a DENISE CALIGIURI,
GEORGE SCOTT RUSH, RICHARD MELICHAR
and RICHARD SCHROER, individually and on
behalf of all others similarly situated,

**MEMORANDUM OF**
**DECISION AND ORDER**
05 CV 2724 (ADS) (ARL)

                     Plaintiffs,

       -against-

WASHINGTON MUTUAL, INC.,
WASHINGTON MUTUAL BANK, FA,
WASHINGTON MUTUAL BANK, FSB,
WASHINGTON MUTUAL BANK, and
WASHINGTON MUTUAL HOME LOANS, INC.,

                     Defendants.
-------------------------------------------------------X

**APPEARANCES:**

**WHALEN & TUSA, P.C.**
Attorneys for the Plaintiffs
33 West 19th Street, Suite 405
New York, NY 10011
       By:    Joseph S. Tusa, Esq.
                 Paul C. Whalen, Esq., of Counsel

**DANNENBERG, BEMPORAD, SELINGER & COHEN, P.C.**
Attorneys for the Plaintiffs
White Plains Plaza
One North Broadway
White Plains, NY 10601
       By:    Peter D. St. Philip, Jr., Esq., of Counsel

**WEIL, GOTSHAL & MANGES, LLP**
Attorneys for the Defendant Washington Mutual Inc.
767 Fifth Avenue
New York, NY 10153
    By:    Brian S. Rosen , Esq., Of Counsel

**STROOCK, & STROOCK & LAVAN**
Attorneys for the Defendants
2029 Century Park East, 18th Floor
Los Angeles, California 90067
    By:    Lisa M. Simonetti, Esq.
           Sarah B. Takasugi, Esq., of Counsel

**STROOCK, & STROOCK & LAVAN**
Attorneys for the Defendants and
Presently Representing the Federal Deposit Insurance Corporation
180 Maiden Lane
New York, New York 10038
    By:    Burton Lipshie, Esq.,
           Claude Gabriel Szyfer, Esq.,
           Heidi Balk, Esq.,
           James Lawrence Bernard, Esq., of Counsel

**BAKER BOTTS, LLP**
Attorneys for the Defendants and Federal Deposit Insurance Corporation
The Warner
1299 Pennsylvania Avenue, NW
Washington, D.C. 20004
    By:    David A. Super, Esq.,
           Ryan Bull, Esq.,
           Elysa M. Dishman, Esq.,
           Samuel J. Waldon, Esq., of Counsel

**SPATT, District J.**

In this class action, named plaintiffs Denise Cassese, George Scott Rush, and Richard Schroer (the "plaintiffs") allege that Washington Mutual, Inc. ("WMI"); Washington Mutual Bank, formerly known as Washington Mutual Bank, FA

("WMB"); Washington Mutual Bank, FSB; Former State-Chartered Washington Mutual Bank; and Washington Mutual Home Loans, Inc. (collectively, the "defendants') imposed and collected unlawful fees, prepayment penalties, and finance charges from them in connection with their mortgage loans.  The defendants state that the fees charged were for additional services, such as providing borrowers with payoff statements, either through the mail or via facsimile.

## I.   BACKGROUND

At the time that this action was commenced, WMB was a federally chartered savings association, engaged in the practice of mortgage banking, home loan lending, and loan servicing, in New York, New Jersey, North Carolina, and other states.  Each plaintiff is an individual who entered into loan agreements originated and/or serviced by WMB.  The plaintiffs allege that they entered into standard form mortgage agreements and notes that stated that they could make full or partial prepayments of the principal amount of their loans at any time without penalty.  The plaintiffs allege that they were improperly charged additional fees in violation of their loan agreements at the time that they sought to prepay their mortgages.  Collectively, the Court refers to these fees as the "Disputed Charges.

### B.   Procedural History

Plaintiffs Cassese and Rush commenced this action on June 6, 2005.  On September 7, 2007, the Court ruled on defendants' motion to dismiss pursuant to FED. R. CIV. P. 12(b)(6) and motion to strike pursuant to FED. R. CIV. P. 12(f) and 8(a).  The

3

Court dismissed Counts I, II, III, and IV of the plaintiffs' second amended complaint, alleging violations of the Truth in Lending Act, 15 U.S.C. §§ 1601-1693r, the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. §§ 2601-2617, and various state law causes of action.  Remaining after the Court's decision were the plaintiffs' claims for violation of the New York General Business Law as well as other state consumer protection statutes, and common law claims for breach of contract, unjust enrichment, and fraud.  On June 27, 2008, the Court denied the plaintiffs' motion for reconsideration, stating that although the Count I claims pursuant to TILA were dismissed with prejudice as to the named plaintiffs, potential TILA claims of the putative class members could be raised, if appropriate, at a later time.  In addition, the Court denied the plaintiffs' motion for class certification for lack of adequate representation as to the Count I claims.

On July 28, 2008, the plaintiffs renewed their motion to certify a class.  The motion was opposed separately by two groups of defendants.  WMB opposed class certification as to it, while WMI, Washington Mutual Bank, FSB, Former State-Chartered Washington Mutual Bank, and Washington Mutual Home Loans, Inc. joined in opposition, arguing that they are all improper defendants because the named plaintiffs were borrowers of WMB alone, and therefore the latter defendants could not have assessed the Disputed Charges to the plaintiffs.

By letter dated October 1, 2008, counsel for the defendants advised the court that as of September 25, 2008, the Office of Thrift Supervision, a federal agency

possessing authority to regulate insured financial institutions, like WMB, appointed the Federal Deposit Insurance Corporation ("FDIC") as receiver for WMB for the purpose of liquidation. On October 24, 2008, the FDIC, acting as receiver for WMB, filed a Notice of Substitution of Party, of the FDIC for WMB. On the same day, the FDIC moved for a mandatory 90 day stay of this action pursuant to 12 U.S.C. § 1821(d)(12)(A)(ii). On October 30, 2008, following a teleconference in this matter, the Court granted the FDIC's request for a mandatory stay. The mandatory stay expired on December 24, 2008.

In addition, on December 1, 2008, WMI filed a notice of automatic stay pursuant to a voluntary petition for bankruptcy protection under Chapter 11 of the United States Code filed in the United States Bankruptcy Court for the District of Delaware.

On December 22, 2008 the plaintiffs' counsel advised this Court by letter that the FDIC had established December 30, 2008 as the bar date for the filing of claims against WMB for resolution by the FDIC claims review process. The plaintiffs requested that the Court either resolve the class certification motion so that they could proceed to file claims either individually or on behalf of the class, as appropriate, or to extend the FDIC claims filing deadline. In addition, in light of the bankruptcy filing of WMI, the plaintiffs' counsel represented that the plaintiffs did not oppose a modification of their proposed class definition to exclude WMI until such time as the automatic bankruptcy stay expired.

5

The FDIC as Receiver for WMB opposed plaintiffs' request, arguing that the Court was without authority to extend the claims bar date beyond December 30, 2008 because the claims process is committed to the exclusive power and discretion of the FDIC-Receiver. Further, The FDIC moved for an additional stay until the earlier of (i) September 14, 2009, or (ii) 180 days after the named plaintiffs submitted their claims to the administrative claims process.

On December 29, 2008, the Court granted the class certification motion as to defendant WMB only, reserving the class certification determination as to the remaining defendants. The Court appointed a class pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3) as follows:

> All consumers or borrowers in the United States and its territories who had a mortgage, deed of trust, home loan, co-operative loan, home equity loan or line of credit secured by a residence, which loan was serviced by Washington Mutual Bank, formerly known as Washington Mutual Bank, FA and who paid or will be demanded to pay prohibited fees, charges and/or penalties (often but not always termed "Fax Fees," "Payoff Statement Fees," "Recording Fees," or "UCC-3 Fees" by Washington Mutual Bank, formerly known as Washington Mutual Bank, FA in Payoff Statements) in connection with requests for payoff statements or payoff amounts or the prepayment, repayment, discharge, satisfaction or settlement of loans secured by a residence.

In addition, the Court noted that it would make "no pronouncements about the form in which the claims of the class members should be submitted to the FDIC or whether the FDIC must accept those claims." *Cassese v. Washington Mut., Inc.*, 255 F.R.D. 89, 95 (E.D.N.Y. 2008).

At a conference held on February 12, 2009, counsel for the FDIC explained that Washington Mutual Bank, F.A.; Washington Mutual Home Loans, Inc.; and Former State-Chartered Washington Mutual Bank, had been consolidated under a single entity, Washington Mutual Bank (WMB). As noted above, the FDIC has been appointed receiver for the WMB entity. In addition, counsel explained that Washington Mutual Bank, FSB, is a separate legal entity, which is presently owned by JP Morgan Chase & Co. and not under the receivership of the FDIC. Finally, counsel confirmed that WMI was an independent entity that had filed for bankruptcy protection.

Pursuant to an application by the FDIC, on April 6, 2009, the Court entered an additional stay of this entire case for a maximum of 180 days from March 17, 2009 so that the FDIC claims review process could go forward without the threat of potentially conflicting concurrent litigation. The stay expired on or about September 14, 2009.

On September 14, 2009, counsel for the plaintiffs advised the Court that the Bankruptcy Court for the District of Delaware granted a motion by plaintiffs to lift and modify the automatic bankruptcy stay as it pertains to defendant WMI, thereby permitting this action to proceed against WMI. By letter, counsel cited the above procedural history and requested that the Court enter a determination of class certification regarding WMI.

Motion practice resumed and on September 21, 2009, the FDIC filed motions (1) to decertify the class that was certified as to WMB on December 29, 2008; and (2)

7

for judgment on the pleadings.  In addition, the plaintiffs have recently moved (1) for the joinder or intervention as a plaintiff one William Bloom, an individual whose loan was serviced by Washington Mutual Home Loans, Inc; and (2) to join or substitute J.P. Morgan Chase Bank, N.A. as a defendant.  These motions remain pending.

Based on the above procedural history, the Court now rules on whether the class should be certified as against WMI; Washington Mutual, FSB; Former State-Chartered Washington Mutual Bank; and Washington Mutual Home Loans, Inc. (the "Standing Defendants").  In essence, this motion requires the Court to consider whether, on the present record, the certified class should be expanded to include individuals whose loans were issued by or serviced by one of the other Washington Mutual entities, namely Washington Mutual Bank, FSB; State-Chartered Washington Mutual Bank; or Washington Mutual Home Loans, Inc. and whether the class claims should proceed against WMI, the parent of the other Washington Mutual entities.  For the reasons that follow, the plaintiffs' motion is granted in part and denied in part.

## II.    DISCUSSION

The Standing Defendants contend that because Cassese, Rush, and Schroer were borrowers of only the WMB entity, they cannot satisfy the threshold jurisdictional requirement of standing and may not seek class certification as against the Standing Defendants.  The Standing Defendants contend that the named plaintiffs may not bring a class action against defendants with whom they had no dealing.

In opposition, the plaintiffs contend that as the Washington Mutual entities

8

share a subsidiary relationship with the overall parent company, WMI, there exists a juridical link that allows for the certification of this action against the Standing Defendants. Further, the plaintiffs contend that WMI, as the parent company, controls the servicing activities of all defendants and that the plaintiffs' claims arise from a concerted scheme by all of the named defendants to charge the Disputed Fees to consumers. Finally, the plaintiffs contend that the defendants have resisted their requests for discovery regarding the activities of the Standing Defendants and they should not benefit from their own discovery abuses.

To establish standing to sue a defendant, a plaintiff must: (1) have suffered an injury-in-fact; (2) demonstrate that a causal connection exists between the injury and the conduct of the defendant; and (3) demonstrate the likelihood, and not merely the speculative possibility, that the injury will be redressed by the requested relief. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). "Standing to sue is an essential threshold which must be crossed before any determination as to class representation under Rule 23 can be made. Without standing, one cannot represent a class, but standing to sue does not, of itself, support the right to bring a class action." *Weiner v. Bank of King of Prussia*, 358 F. Supp. 684, 694 (E.D. Pa. 1973) (holding that the putative class plaintiff must establish his personal standing to sue each defendant before seeking class certification under Rule 23); *accord Angel Music, Inc. v. ABC Sports. Inc.*, 112 F.R.D. 70, 74 (S.D.N.Y. 1986) ("The courts of this circuit have expressly endorsed these concepts of standing for

9

named plaintiffs in purported class actions . . . reaffirming the principle that representative plaintiffs must have individual standing to assert claims against all the members of the defendant class.").

In *La Mar v. H&B Novelty & Loan Co.*, 489 F.2d 461 (9th Cir. 1973), the Ninth Circuit Court of Appeals, without regard to the issue of standing, stated that "under a proper application of Rule 23 of the Federal Rules of Civil Procedure, the plaintiffs here are not entitled to bring a class action against defendants with whom they had no dealing." *Id.* at 464. The court was willing to assume standing as the plaintiffs were consumers "injured by a method of dealing more or less common to all defendants," who were pawn brokers licensed to conduct business in the state of Oregon. *Id.*

With respect to the requirements of Rule 23, however, the court found that "typicality is lacking when the representative plaintiff's cause of action is against a defendant *unrelated* to the defendants against whom the cause of action of the members of the class lies." *Id.* at 465 (emphasis added). Further, the court noted two exceptions to the rule that a named plaintiff could not represent those injured by other defendants: (1) where "all injuries are the result of a conspiracy or concerted schemes between the defendants at whose hands the class suffered injury;" or (2) where "all defendants are juridically related in a manner that suggests a single resolution of the dispute would be expeditious." *Id.* at 466. "Examples of such [juridical] links include partnerships or joint enterprises, conspiracy, and aiding and abetting, since these terms

denote some form of relationship or activity on the part of the members of the proposed defendant class that warrants imposition of joint liability against the group even though the plaintiff may have dealt primarily with a single member." *Follette v. Vitanza*, 658 F. Supp. 492, 507–08 (N.D.N.Y. March 27, 1987) (internal quotations and citations omitted).

Here, the plaintiffs resist the defendants' standing argument on the exceptions set forth in *La Mar* and the related nature of the named defendants. However, even despite closely interconnected business entities, a class action plaintiff does not have standing to sue defendants for a breach of contract to which the plaintiff was not a party. *Lindquist v. Farmers Ins. Co. of Arizona*, No. 06CV597, 2008 WL 343299, at *9 (D. Arizona 2008). "[T]he 'juridical links' doctrine is only appropriately applicable in the context of Rule 23 class action analysis [particularly the typicality inquiry], as opposed to the separate issue of standing." *Id.* (finding plaintiff homeowner without standing to sue insurance companies bearing a close corporate relationship with his real property insurer on behalf of putative class members insured by those companies); *see also Aguilar v. Allstate Fire and Casualty Ins. Co.*, No. 06CV4660, 2008 WL 343299, at *5 (E.D. La. 2007) ("The plaintiffs' concession that none of the named plaintiffs were insured by either Allstate Fire and Casualty or Allstate Property and Casualty is a concession that they lack standing to sue those defendants. . . . their attempts to establish Article III standing through the backdoor of a class action is unavailing." (internal quotations and citations omitted)).

11

Courts in this Circuit that have recognized the juridical link doctrine have done so only with respect to the typicality requirement of the class certification question, and have not used it as a basis to find standing. *See Mental Disability Law Clinic v. Hogan*, No. 06CV6320, 2008 WL 4104460, at *22 and n.33 (E.D.N.Y. Aug. 28, 2008) ("A juridical link . . . obviates the general requirement that a defendant class should not be certified unless each member of the plaintiff class has a claim against each member of the defendant class."); *Brown v. Kelly*, 244 F.R.D. 222, 240 (S.D.N.Y. 2007).

In addition, the Court finds the present case distinguishable from *Wu v. Mamsi Life & Health Ins. Co.*, 256 F.R.D. 158 (D. Maryland 2008). In *Wu*, the court determined that the standing concerns with respect to two companies related to the plaintiff's health insurer were cured by the corporate relationship of the named defendants; the fact that the defendant used the same manual with respect to the allegedly injurious conduct; and, most importantly, the fact that the plaintiff had named the corporate parent as a defendant. *Id.* at 166–67. However, unlike the present case, the court noted that "an individual in one ERISA benefit plan can represent a class of participants in numerous plans other than his own, if the gravamen of the plaintiff's challenge is to the general practices which affect all of the plans." *Id.* at 166 (quoting *Fallick v. Nationwide Mutual Ins. Co.*, 162 F.3d 410, 422 (6th Cir. 1998)). The commercial activities at issue here are not sufficiently analogous to the

allegedly wrongful distribution of health insurance benefits to grant the named plaintiffs standing over corporate defendants with whom they had no relationship.

Although the apparent juridical link present in this case might serve to obviate the need for every member of the class to have a claim against each named defendant at the typicality stage of the Rule 23 inquiry, it does not confer standing on the named plaintiffs to seek certification against defendants with whom they have had no interactions. Of course, "the plaintiff may be able to remedy some standing limitations by simply adding additional named plaintiffs that have pertinent claims to establish broader standing . . . ." *Lindquist*, 2008 WL 343299, at *11. The plaintiffs have filed a motion to intervene on behalf of William Bloom, an individual whose loan was serviced by Washington Mutual Home Loans, Inc. The intervention of Bloom would apparently cure the standing defect as to Washington Mutual Home Loans, Inc. However, the plaintiffs served that motion on September 21, 2009 and the defendants have had no opportunity to oppose. Accordingly, the Court declines to expand the defined class to include parties whose loans were issued or serviced by Washington Mutual, FSB; Former State-Chartered Washington Mutual Bank; and Washington Mutual Home Loans, Inc. The plaintiffs' motion to certify a class as to those three entities is denied without prejudice.

The plaintiffs also argue that they have standing as to WMI on the basis that WMI actively controls the servicing activities of all defendants. In *Wu*, the court explained that the plaintiff "clearly" had a relationship with the corporate parent of her

13

health insurer sufficient to establish standing because (1) she was a member of the subsidiary plan; (2) she alleged a direct injury caused by the parent; and (3) she alleged that the parent corporation "uniformly directed its network of preferred health care providers to defraud its members . . . ." *Wu*, 256 F.R.D. at 167 n.9.

In the personal jurisdiction context, courts have found the exercise of jurisdiction over a parent corporation appropriate where the subsidiary is a mere department of the parent.  "The Second Circuit reiterated the four factors that a court must consider in determining whether the subsidiary is a mere department of the parent: (1) common ownership, (2) financial dependency of the subsidiary on the parent, (3) the degree to which the parent is involved in the selection and assignment of the subsidiary's high-ranking personnel and fails to observe corporate formalities, and (4) the degree of control by the parent over the marketing and operational policies of the subsidiary." *Laborers Local 17 Health and Ben. Fund v. Philip Morris, Inc.*, 26 F. Supp. 2d 593, 605 (S.D.N.Y. Aug. 27, 1998.

Here, the plaintiffs have alleged both direct control of WMB by WMI with respect to lending and loan servicing activities, and injury arising from WMI's conduct.  The plaintiffs have alleged that the two companies share common management who control the day to day operations of WMB. (Pls. Reply Exhs. 48–53).  In addition, the plaintiffs' point out that WMI's financial statements include earnings derived from the lending and servicing activities of WMB. (Pls. Reply Exh. 46, WMI 2004 Form 10-K, pg. 6 ("All of our banking subsidiaries are under the

common control of Washington Mutual, Inc. and are insured by the FDIC"). Accordingly, the Court finds that the plaintiffs' class claims properly include WMI.

For the reasons set forth in the Court's December 29, 2008 Memorandum of Decision and Order, the requirements of Rule 23 are satisfied with respect to the plaintiffs' claims against WMI. The Court certifies the present class action against WMI. However, as WMI did not directly engage in the lending or servicing activities at issue the class definition need not be changed.

### III.   CONCLUSION

For the foregoing reasons, it is hereby:

**ORDERED**, that the plaintiffs' motion to certify a class to include parties whose loans were originated or serviced by Washington Mutual, FSB; Former State-Chartered Washington Mutual Bank; or Washington Mutual Home Loans, Inc. is denied without prejudice; and it is further

**ORDERED**, that the plaintiffs' motion to certify a class against Washington Mutual, Inc., is granted.

**SO ORDERED.**

Dated: Central Islip, New York
September 30, 2009

　　　　　　　　　　　　　　　　　　　　　　　　　　/s/ Arthur D. Spatt
　　　　　　　　　　　　　　　　　　　　　　　　　　ARTHUR D. SPATT
　　　　　　　　　　　　　　　　　　　　　　　　　　United States District Judge