# WHALEN & TUSA, P.C.

*A New York Professional Corporation*
*Attorneys and Counselors at Law*

33 West 19th Street, 4th Floor
New York, NY  10011
Telephone: (212) 400-7100
Facsimile:  (212) 658-9685

March 2, 2010

**BY ECF FILING AND FIRST CLASS MAIL**

Honorable Arthur D. Spatt
United States District Court
 For the Eastern District of New York
P.O. Box 9014
Central Islip, NY  11722-9014


Re:     Cassese v. Washington Mutual, Inc., Civil Action No. 05-02724

Dear Judge Spatt:

We write as counsel for Plaintiffs and the certified Classes in the referenced action.  Your Honor will recall that Plaintiffs and the Class have filed a motion to intervene, join or add JPMorgan Chase Bank ("JPMC") as a defendant in this action, based on conduct and benefits accrued <u>after</u> it acquired the mortgage and residential loan portfolio of Washington Mutual Bank.  That motion is fully-briefed and pending.  *See Docket Nos*. 249, 277, 284.  After Plaintiffs' motion was fully submitted in this action, another federal court denied arguments by JPMC contending that its Purchase & Assumption Agreement with the FDIC to acquire Washington Mutual Bank's residential loans provides JPMC with a defense:

> Defendant Chase contends that "under the express terms of the P&A Agreement, Chase did not assume any liability for claims arising out of WaMu's home equity lines of credit made prior to September 25, 2008." (Motion at 7.)  Defendant Chase relies on several cases for the proposition that "courts have specifically addressed the same P&A Agreement at issue in this case, holding that the FDIC retained liability for borrower claims relating to WaMu loans and lending activities." (Motion at 10.) However, these cases are all inapposite because they involve the bank's actions prior to the sale of the bank, unlike the situation here where Plaintiffs' claims arise out of Defendants' post-sale conduct.

*Long Island Office:  565 Plandome Road, Suite 212, Manhasset, NY  11030*

**WHALEN & TUSA, P.C.**

*Schulken v. Washington Mutual Bank*, 2009 U.S. Dist. LEXIS 114030, *9-10 (N.D. Cal. Nov. 19, 2009). The *Schulken* decision is attached for the Court's consideration.

                                              Respectfully yours,
                                                          /s/
                                              Joseph S. Tusa

cc:      Counsel of Record (By ECF Filing)

*WHALEN & TUSA, P.C.*

# ATTACHMENT



LEXSEE

**Jeffrey Schulken, et al., Plaintiffs, v. Washington Mutual Bank, Henderson, NV, et al., Defendants.**

**NO. C 09-02708 JW**

**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION**

**2009 U.S. Dist. LEXIS 114030**

**November 19, 2009, Decided
November 19, 2009, Filed**

**COUNSEL:** [*1] For Jeffrey Schulken, Jenifer Schulken, Plaintiffs: Alan Himmelfarb, KamberEdelson, LLC, Vernon, CA; Evan Meyers, PRO HAC VICE, Jay Edelson, Mike McMorrow, Steven L Lezell, KamberEdelson, LLC, Chicago, IL.

For Washington Mutual Bank, Henderson, NV, Defendant: Victoria R. Collado, Burke Warren MacKay & Serritella, P.C., Chicago, IL.

For JPMorgan Chase Bank, N.A., Defendant: Danielle Jean Szukala, LeAnn Pedersen Pope, LEAD ATTORNEYS, PRO HAC VICE, Victoria R. Collado, Burke Warren Mackay & Serritella, P.C., Chicago, IL; George Geoffrey Weickhardt, LEAD ATTORNEY, Wendy Chai Krog, Ropers Majeski Kohn & Bentley, San Francisco, CA.

**JUDGES:** JAMES WARE, United States District Judge.

**OPINION BY:** JAMES WARE

**OPINION**

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS**

**I. INTRODUCTION**

Jeffrey Schulken and Jenifer Schulken (collectively, "Plaintiffs") bring this action against Washington Mutual Bank ("WaMu") and JPMorgan Chase Bank ("Chase") (collectively, "Defendants"), alleging, *inter alia,* violations of the Truth in Lending Act ("TILA"), *15 U.S.C. ßß 1601, et seq.,* violations of California's Unfair Competition Law, *Cal. Bus. & Prof. Code ßß 17200, et seq.,* and breach of contract. Plaintiffs allege that Defendants [*2] illegally suspended and reduced credit limits on their home equity lines of credit ("HELOCs") as well as other borrowers across the country.

Presently before the Court is Defendants' Motion to Dismiss.[1] The Court finds it appropriate to take the matter under submission without oral argument. See *Civ. L.R. 7-1(b)*. Based on the papers submitted to date, the Court GRANTS in part and DENIES in part Defendants' Motion to Dismiss with leave to amend.

1   (Defendants' Motion to Dismiss Pursuant to *Fed. R. Civ. P. 12(b)(6)*, hereafter, "Motion," Docket Item No. 17.)

**II. BACKGROUND**

In a Complaint filed on June 18, 2009, Plaintiffs allege as follows:

> Plaintiffs are individuals who maintain their primary residence ("subject property") in Cupertino, California. (Class Action Complaint for Damages P 10, hereafter, "Complaint," Docket Item No. 1.) Defendant WaMu is a national banking association with its main office in Henderson, Nevada. (Id. P 11.) Defendant Chase is a national banking association

with its main office in Columbus, Ohio. (Id. P 12.) On September 25, 2008, the United States Office of Thrift Supervision ("OTS") seized Defendant WaMu from its holding company, Washington Mutual, Inc., and placed [*3] Defendant WaMu into the receivership of the Federal Deposit Insurance Corporation ("FDIC"). (Id. P 11.) The FDIC sold the banking subsidiaries, minus unsecured debt or equity claims, to Defendant Chase for $ 1.9 billion. (Id.) Defendant WaMu is now operated as a subsidiary and division of Defendant Chase. (Id.)

In October 2005, Plaintiffs obtained a HELOC agreement from Defendant WaMu, secured against the subject property, with a credit limit of $ 250,000. (Complaint P 17.) On March 13, 2009, Plaintiffs received an Income Verification Request letter from Defendants seeking certain financial information within fourteen days. (Id. P 18.) Plaintiffs complied with the Income Verification Request and submitted financial information over the next several days via facsimile. (Id. P 19.) On March 19, 2009, Plaintiffs discovered, while checking their account on Defendants' website, that their HELOC had been suspended. (Id. P 20.) On March 20, 2009, Plaintiffs received a letter, apparently mailed March 19, 2009 and dated March 18, 2009, that notified Plaintiffs that their line of credit was being suspended due to their failure to submit all the paperwork specified in the March 13, 2009 letter. [*4] (Id.)

Following the suspension, Plaintiffs repeatedly contacted customer service and were provided confusing and often conflicting reasons for how Defendants had determined that Plaintiffs' income justified the suspension. (Complaint P 22.) Plaintiffs were also given inconsistent information regarding the papers needed by Defendants to review the account for potential reinstatement. (Id.) Plaintiffs ultimately sent, via facsimile, over seventy-five pages worth of financial documentation to Defendants, but Defendants refused to remove the suspension. (Id.)

At no time did Plaintiffs' income materially change or decrease, and at no time did Defendants have a reasonable basis for concluding that Plaintiffs, who had always made timely payments on all their loans, would not be able to meet the terms of their loan agreement. (Complaint P 23.) Despite repeated requests, Defendants have refused to remove the suspension. (Id.)

Plaintiffs' HELOC with Defendants was their primary line of credit. (Complaint P 24.) Defendants' reduction of the credit limit on Plaintiffs' HELOC dramatically increased the ratio of credit Plaintiffs used to the amount of credit they had available. (Id.) As a result, Defendants' [*5] acts drove up Plaintiffs' Credit Utilization Rate, a major component of their credit rating. (Id.) In addition to depriving Plaintiffs of the availability of their HELOC, Defendants' acts damaged Plaintiffs' credit rating and increased the cost of credit to them. (Id.) Also, prior to the HELOC suspension and prior to receiving notice, Plaintiffs issued a check to pay their credit card. (Id. P 21.) This check was dishonored, and Plaintiffs incurred finance charges as a result. (Id.)

On the basis of the allegations outlined above, Plaintiffs allege six causes of action: (1)-(3) Violations of the Truth in Lending Act, *15 U.S.C. ßß 1601, et seq.;* (4) Breach of Contract; (5) Breach of Implied Covenants; and (6) Violations of California's Unfair Competition Law, *Cal. Bus. & Prof. Code ßß 17200, et seq.*

Presently before the Court is Defendants' Motion to Dismiss.

### III. STANDARDS

Pursuant to *Federal Rule of Civil Procedure 12(b)(6)*, a complaint may be dismissed against a defendant for failure to state a claim upon which relief may be granted against that defendant. Dismissal may be based on either the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable [*6] legal theory. *Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990)*; *Robertson v. Dean Witter Reynolds, Inc., 749 F.2d 530, 533-34 (9th Cir. 1984)*. For purposes of evaluating a motion to dismiss, the court "must presume all factual allegations of the complaint to be true and draw all reasonable inferences in favor of the nonmoving party." *Usher v. City of Los Angeles, 828 F.2d 556, 561 (9th Cir. 1987)*. Any existing ambiguities

Case 2:05-cv-02724-ADS -ARL   Document 292   Filed 03/02/10   Page 6 of 10

Page 3
2009 U.S. Dist. LEXIS 114030, *

must be resolved in favor of the pleading. *Walling v. Beverly Enters., 476 F.2d 393, 396 (9th Cir. 1973)*.

However, mere conclusions couched in factual allegations are not sufficient to state a cause of action. *Papasan v. Allain, 478 U.S. 265, 286, 106 S. Ct. 2932, 92 L. Ed. 2d 209 (1986)*; see also *McGlinchy v. Shell Chem. Co., 845 F.2d 802, 810 (9th Cir. 1988)*. The complaint must plead "enough facts to state a claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)*. A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009)*. Thus, "for a complaint to survive [*7] a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv., 572 F.3d 962, 969 (9th Cir. 2009)*. Courts may dismiss a case without leave to amend if the plaintiff is unable to cure the defect by amendment. *Lopez v. Smith, 203 F.3d 1122, 1129 (9th Cir. 2000)*.

**IV. DISCUSSION**

Defendants move to dismiss each of Plaintiffs' causes of action. The Court addresses them in turn.

**A. Section 2.5 of the Chase and FDIC Purchase and Assumption Agreement**

Defendants move to dismiss Plaintiffs' entire Complaint on the ground that under the Purchase and Assumption Agreement between Defendant Chase and the FDIC [2] ("P&A Agreement"), Defendant Chase did not assume liability for borrower claims relating to Defendant WaMu's loans and commitments to lend. (Motion at 6-11.)

> 2   (Defendants' Purchase and Assumption Agreement, hereafter, "Defendants' P&A Agreement," Declaration of George G. Weickhardt in Support of JPMorgan Chase Bank N.A.'s Motion to Dismiss Plaintiff's Class Action Complaint, Ex. 6, Docket Item No. 17.)

When a state agency declares a bank insolvent and appoints [*8] the FDIC as receiver, the FDIC may execute a purchase and assumption transaction in which the assuming bank purchases most of the failed bank's assets and continues to operate the bank as a going concern. *Fed. Deposit Ins. Corp. v. Bank of Boulder, 911 F.2d 1466, 1469 (10th Cir. 1990)*. The purchase and assumption transaction involves three parties: the receiver, the assuming bank, and the FDIC as insurer. Id. When the FDIC is appointed receiver, it simultaneously acts as the receiver of the failed bank and as the insurer of the deposits. Id. To facilitate the quick sale of a failed bank, the FDIC can retain certain liabilities for itself through the purchase and assumption agreement. See *Yeomalakis v. F.D.I.C., 562 F.3d 56, 60 (1st Cir. 2009)*. Thus, in a purchase and assumption transaction, the acquiring bank can purchase certain assets while not assuming certain liabilities. See *Bank of Boulder, 911 F.2d at 1470*.

Here, Section 2.5 of Defendants' P&A Agreement states:

> **Borrower Claims.** Notwithstanding anything to the contrary in this Agreement, any liability associated with borrower claims for payment of or liability to any borrower for monetary relief, or that provide for any other form [*9] of relief to any borrower, whether or not such liability is reduced to judgment, liquidated or unliquidated, fixed or contingent, matured or unmatured, disputed or undisputed, legal or equitable, judicial or extra-judicial, secured or unsecured, whether asserted affirmatively or defensively, related in any way to any loan or commitment to lend made by the Failed Bank prior to failure, or to any loan made by a third party in connection with a loan which is or was held by the Failed Bank, or otherwise arising in connection with the Failed Bank's lending or loan purchase activities are specifically not assumed by the Assuming Bank.

Under the P&A Agreement, "loans" include "home equity lines of credit" and "Commitments." (Defendants' P&A Agreement at 9.) Commitments are defined as:

> [T]he unfunded portion of a line of credit or other commitment reflected on the books and records of the Failed Bank to make an extension of credit (or additional advances with respect to a Loan) that was legally binding on the Failed Bank as of Bank Closing, other than extensions of credit pursuant to the credit card business and overdraft protection plans of the Failed Bank, if any. (Defendants' P&A at 3.)

Defendant [*10] Chase contends that "under the express terms of the P&A Agreement, Chase did not assume any liability for claims arising out of WaMu's

Case 2:05-cv-02724-ADS -ARL   Document 292   Filed 03/02/10   Page 7 of 10

Page 4
2009 U.S. Dist. LEXIS 114030, *

home equity lines of credit made prior to September 25, 2008." (Motion at 7.) Defendant Chase relies on several cases for the proposition that "courts have specifically addressed the same P&A Agreement at issue in this case, holding that the FDIC retained liability for borrower claims relating to WaMu loans and lending activities." (Motion at 10.) However, these cases are all inapposite because they involve the bank's actions prior to the sale of the bank, unlike the situation here where Plaintiffs' claims arise out of Defendants' post-sale conduct. See *Yeomalakis, 562 F.3d at 60*; *Allen v. United Fin. Mortg. Corp., No. 09-CV-2507-SC, 2009 U.S. Dist. LEXIS 83680, 2009 WL 2984170, at \*4 n.7 (N.D. Cal. Sept. 15, 2009)*; *Biggins v. Wells Fargo & Co., No. 09-CV-01272-JSW, 2009 U.S. Dist. LEXIS 64620, 2009 WL 2246199, at \*12 (N.D. Cal. July 27, 2009)*; *Grealish v. Washington Mut. Bank FA, No. 08-CV-763-TS, 2009 U.S. Dist. LEXIS 62084, 2009 WL 2170044, at \*1 (D. Utah July 20, 2009)*; **Cassese v. Washington Mut., Inc., No. 05-CV-2724-ADS-ARL, 2008 U.S. Dist. LEXIS 111709, 2008 WL 7022845, at \*3 (E.D.N.Y. Dec. 22, 2008)**. Thus, the Court finds that Section 2.5 does not immunize [\*11] Defendant Chase from all liability stemming from loans covered by the P&A Agreement where Defendant Chase's own actions are at issue.

Since Plaintiffs' claims stem solely from Defendant Chase's post-sale acts, the Court DENIES Defendants' Motion to dismiss Plaintiffs' Complaint on the ground that Defendant Chase did not assume liability for borrower claims relating to Defendant WaMu's loans and commitments to lend.

### B. Truth in Lending Act

Defendants move to dismiss Plaintiffs' First, Second, and Third Causes of Action for violation of TILA on the ground that Plaintiffs allege no facts suggesting that their HELOC was primarily for personal, family, or household purposes. (Motion at 11-12.)

TILA applies to consumer transactions where "the party to whom credit is offered or extended is a natural person, and the money, property, or services which are the subject of the transaction are primarily for personal, family, or household purposes." *15 U.S.C. ß 1602(h)*. "The Truth-in-Lending Act specifically exempts from its scope extensions of credit for business or commercial purposes." *Poe v. First Nat. Bank of DeKalb County, 597 F.2d 895, 896 (5th Cir. 1979)*. In evaluating whether a certain loan [\*12] was made for commercial purposes, the emphasis should be on the purpose of the transaction and not the categorization of the properties used to secure the loan. *Galindo v. Financo Fin., Inc., No. 07-CV-03991-WHA, 2008 U.S. Dist. LEXIS 82773, 2008 WL 4452344, at \*4 (N.D. Cal. Oct. 3, 2008)*. "Whether an investment loan is for a personal or a business purpose requires a case by case analysis." *Thorns v. Sundance Properties, 726 F.2d 1417, 1419 (9th Cir. 1984)*. Where a plaintiff alleges no facts detailing the purposes of the loan, the plaintiff does not state a TILA claim. See *Galindo, 2008 U.S. Dist. LEXIS 82773, 2008 WL 4452344, at \*4*.

Here, Plaintiffs allege:

> Plaintiffs maintain their primary residence in Cupertino, CA (the "subject matter property"). (Complaint P 10.) In or around October 2005, Plaintiffs obtained a HELOC in the amount of $ 250,000 secured by the subject matter property. (Id.) Plaintiffs' HELOC with Defendants was his [sic] primary line of credit. (Id. P 24.)

Plaintiffs do not allege what the purpose of their HELOC was. While Plaintiffs do allege that the HELOC was secured by their "primary residence," this allegation does not demonstrate whether the HELOC itself was for personal or business purposes. Since Plaintiffs have failed [\*13] to sufficiently allege that their HELOC was for "personal, family, or household purposes," the Court finds that Plaintiffs have failed to state a cognizable TILA claim.

Accordingly, the Court GRANTS Defendants' Motion to dismiss Plaintiffs' First, Second, and Third claims for violations of TILA with leave to amend.

### C. Breach of Contract

Defendants move to dismiss Plaintiffs' Fourth Cause of Action for breach of contract on the ground that Plaintiffs have failed to allege sufficient facts giving rise to such a claim. (Motion at 20.)

"A cause of action for breach of contract requires proof of the following elements: (1) existence of the contract; (2) plaintiff's performance or excuse for nonperformance; (3) defendant's breach; and (4) damages to plaintiff as a result of the breach." *CDF Firefighters v. Maldonado, 158 Cal. App. 4th 1226, 1239, 70 Cal. Rptr. 3d 667 (Cal. Ct. App. 2008)*.

Here, Plaintiffs allege:

> Defendants knowingly and intentionally falsely claimed that their customers' financial circumstances had changed so as to "trigger" Chase and WAMU's right to freeze or lower the credit limits. (Complaint P 5.) As a result, Defendants, in violation of federal law, reduced the credit

limits and/or froze the [*14] HELOC accounts of many homeowners, including Plaintiffs, whose financial circumstances had not materially worsened so as [sic] give Defendants a reasonable basis for concluding the Plaintiffs and other accountholders would be unable to meet the terms of their loans. (Id. PP 5, 6.) At no time did Plaintiffs' income materially change or decrease, and at no time did the Defendants' [sic] have a reasonable basis for concluding Plaintiffs, who had always made timely payments on all their loans, would not be able to meet the terms of their loan agreement. (Id. P 23.)

The HELOC agreements contain a term that tracks Regulation Z and provides that Defendants may reduce or suspend additional extensions of credit during times when the Defendants "(b) . . . reasonably believe that you will be unable to fulfill your payment obligations under this Agreement due to a material adverse change in your financial circumstances." (Complaint P 54.) The Schulkens and the other Class members made all payments due to Defendants and otherwise fully performed under their HELOCs with Defendants. (Id. P 55.) Defendants materially breached the terms of the HELOCs by suspending the HELOC accounts for the Schulkens [*15] and other Class members' HELOCs where no material adverse change in financial circumstances had first occurred that would give Defendants a reasonable basis for believing the borrowers would be unable to fulfill their payment obligations under their agreements. (Id. P 57.)

As a result, the Schulkens and the other Class members have suffered damages in the form of the increased price of credit, lost interest, attorneys' fees, adverse effects on Plaintiff's [sic] credit score, finance charges and dishonored check fees, and other damages. (Complaint P 58.)

The Court finds that Plaintiffs have alleged sufficient facts to establish all four elements of a breach of contract claim. First, Plaintiffs allege the existence of the HELOC agreement which contains a term allowing Defendants to reduce or suspend additional extensions of credit under certain circumstances. (Complaint P 54.) Second, Plaintiffs allege that they performed their duty under the agreement by making all payments due. (Id. P 55.) Third, Plaintiffs allege that Defendants breached the agreement by suspending Plaintiffs' HELOC account where there was no material adverse change in financial circumstances. (Id. P 57.) Finally, Plaintiffs [*16] allege that they suffered damages in the form of damaged credit and various fees and penalties. (Id. P 58.)

Accordingly, the Court DENIES Defendants' Motion to Dismiss Plaintiffs' Fourth Cause of Action for breach of contract.

### D. Breach of Implied Covenants

Defendants move to dismiss Plaintiffs' Fifth Cause of Action for breach of implied covenants on the ground that Plaintiffs have failed to allege sufficient facts giving rise to such a claim. (Motion at 20-21.)

"Every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement." *Carma Developers (Cal.), Inc. v. Marathon Dev. Cal., Inc., 2 Cal. 4th 342, 371, 6 Cal. Rptr. 2d 467, 826 P.2d 710 (Cal. 1992)*. "[B]reach of a specific provision of the contract is not a necessary prerequisite." *Id. at 373*. Nor is it necessary that the party's conduct be dishonest; the covenant of good faith can be breached for objectively unreasonable conduct, regardless of the actor's motive. Id. The implied covenant of good faith is read into contracts in order to protect the express covenants or promises of the contract, not to protect some general public policy interest not directly tied to the contract's purpose. Id. If the allegations in [*17] a breach of implied covenant claim "do not go beyond the statement of a mere contract breach and, relying on the same alleged acts, simply seek the same damages or other relief already claimed in a companion contract cause of action, they may be disregarded as superfluous as no additional claim is actually stated." *Careau & Co. v. Sec. Pac. Bus. Credit, Inc., 222 Cal. App. 3d 1371, 1395, 272 Cal. Rptr. 387 (Cal. App. 1990)*. Further, "[t]he implied covenant will not apply where no express term exists on which to hinge an implied duty, and where there has been compliance with the contract's express terms." *Berger v. Home Depot U.S.A., Inc., 476 F. Supp. 2d 1174, 1177 (C.D. Cal. 2007)*.

Here, Plaintiffs allege:

> Defendants breached the implied covenant of good faith and fair dealing in the HELOCs by suspending the HELOC accounts for the Schulkens and other Class members without the customers first having experienced an adverse material change in their finances or the Defendants

having a reasonable belief for claiming such an adverse change would render the borrowers unable to meet their obligations under the agreements. (Complaint P 63.) Defendants further breached the implied covenant of good faith and fair [*18] dealing to [sic] by failing to provide sufficiently specific notice and by failing to provide customers with material information regarding rationale and values used to justify the reductions or suspensions. (Id. P 64.)

Plaintiffs' allegations for breach of implied covenants is the same as their allegations for breach of contract. Specifically, Plaintiffs allege that "Defendants breached the implied covenant of good faith and fair dealing in the HELOCs by suspending the HELOC accounts . . . without the customers first having experienced an adverse material change in their finances." (Complaint P 63.) Since Plaintiffs' breach of implied covenants claim essentially is the same as their breach of contract claim, the Court dismisses Plaintiffs' breach of implied covenants claim as superfluous.

Accordingly, the Court GRANTS Defendants' Motion to dismiss Plaintiffs' Fifth Cause of Action for breach of implied covenants with leave to amend.

### E. Violation of California's UCL

Defendants move to dismiss Plaintiffs' Sixth Cause of Action for violation of California's Unfair Competition Law ("UCL") on the ground that Plaintiffs have failed to allege sufficient facts giving rise to such a claim. (Motion [*19] at 22-23.)

The California UCL prohibits any unlawful, unfair or fraudulent business act or practice. *Cal. Bus. & Prof. Code ß 17200*. A practice can violate this section even if it is merely unfair and not unlawful. *Gregory v. Albertson's, Inc., 104 Cal. App. 4th 845, 850, 128 Cal. Rptr. 2d 389 (Cal. App. Ct. 2002)*. In determining whether a particular business practice is unfair under *Section 17200*, the court must weigh the utility of the defendant's conduct against the gravity of the harm to the alleged victim. *Id. at 852*. Further, *Section 17200* prohibits any violations of *Section 17500*. *Section 17500* makes it unlawful for a business to disseminate any statement "which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." *Ariz. Cartridge Remanufacturers Ass'n v. Lexmark Int'l, Inc., 421 F.3d 981, 985 (9th Cir. 2005)*. Thus, under *Sections 17200* and *17500*, a plaintiff may make a claim based on unlawful business practices, but he need only allege unfair or fraudulent business practices or knowing dissemination of untrue or misleading statements.

Here, Plaintiffs allege:

With respect to the Class, Defendants' practice of requesting [*20] financial information by a deadline, and then proceeding to suspend accounts based on purported failures to submit the requested information well before the deadline was deceptive and untrue. (Complaint P 71.) These unlawful, deceptive, and unfair acts and practices constitute unfair competition in violation of the UCL. (Id.)

Defendants have violated the "unfair" prong of the UCL in that Defendants' actions caused substantial injury to consumers; the injury caused by Defendants' conduct is not outweighed by any countervailing benefits to consumers or competition; and the injury is one that consumers themselves could not reasonably have avoided. (Complaint P 73.)

Defendants have violated the "fraudulent" prong of the UCL in that Defendants' statements regarding the availability of credit through the HELOCs were false and were likely to deceive a reasonable consumer. (Complaint P 74.) Further, Defendants' statements regarding any potential future reduction of credit through the HELOCs would only occur through a material adverse change in financial conditions were false and were likely to deceive a reasonable consumer. (Id.)

Defendants have violated the "unlawful" prong of the UCL in that [*21] Defendants' conduct was undertaken in violation of TILA and Regulation Z. (Complaint P 75.)

Since the Court has dismissed all of Plaintiffs' predicate violations, Plaintiffs cannot state a claim under the unlawful business practices prong of the UCL. Thus, Plaintiffs must allege unfair or fraudulent business practices or the knowing dissemination of untrue or misleading statements. With regard to Plaintiffs' claim under the fraudulent prong of the UCL, Plaintiffs allege a "practice of requesting financial information by a deadline, and then proceeding to suspend accounts based on purported failures to submit the requested information well before

the deadline." (Complaint P 71.) Plaintiffs state only broad and generalized facts regarding Defendants' allegedly fraudulent practice, which cannot meet the heightened pleading requirements for a fraud claim. See *Fed. R. Civ. P. 9(b)* ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."). Similarly, Plaintiffs fail to sufficiently allege facts to support their UCL claim under the unfair prong as Plaintiffs merely allege the elements of such a claim in conclusory fashion. Thus, [*22] the Court finds that Plaintiffs' UCL claim fails because Plaintiffs have not alleged sufficient facts to give Defendants notice of what fraudulent or unfair conduct is being asserted against them.

Accordingly, the Court GRANTS Defendants' Motion to Dismiss Plaintiffs' Sixth Cause of Action for violation of California's Unfair Competition Law with leave to amend.

**V. CONCLUSION**

The Court GRANTS in part and DENIES in part Defendants' Motion to Dismiss Plaintiffs' Complaint with leave to amend and orders as follows:

(1) On or before **December 14, 2009,** Plaintiffs shall file their Amended Complaint as a *separate* docket entry. The Amended Complaint shall be consistent with the directions of this Order.

(2) In light of this Order, the Court finds that a Case Management Conference is premature at this time. Accordingly, the Conference set for November 23, 2009 is VACATED. If necessary, the Court will set a new Case Management Conference in its Order addressing Defendants' anticipated motion to dismiss Plaintiffs' amended complaint.

Dated: November 19, 2009

/s/ James Ware

JAMES WARE

United States District Judge