**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
---------------------------------------------------------X
DENISE CASSESE f/k/a DENISE CALIGIURI,
GEORGE SCOTT RUSH, RICHARD
MELICHAR and RICHARD SCHROER,
individually and on behalf of all others similarly
situated,

          Plaintiffs,

      -against-

WASHINGTON MUTUAL, INC.;

THE FEDERAL DEPOSIT INSURANCE
COMPANY, in its capacity as receiver for
WASHINGTON MUTUAL BANK, such entity
having incorporated former defendants
WASHINGTON MUTUAL BANK, FA and
WASHINGTON MUTUAL HOME LOANS,
INC.; and

WASHINGTON MUTUAL BANK, FSB,

          Defendants.
---------------------------------------------------------X

**MEMORANDUM OF**
**DECISION AND ORDER**
05-cv-2724 (ADS)(ARL)

**APPEARANCES:**

**WHALEN & TUSA, P.C.**
*Attorneys for the plaintiffs*
33 West 19th Street, Suite 405
New York, NY 10011
   By:  Joseph S. Tusa, Esq.
      Paul C. Whalen, Esq., of Counsel

**LOWEY DANNENBERG COHEN & HART, P.C.**
*Attorneys for the plaintiffs*
White Plains Plaza
One North Broadway
White Plains, NY 10601
   By:  Peter D. St. Philip, Jr., Esq., of Counsel

**WEIL, GOTSHAL & MANGES, LLP**
*Attorneys for the defendant Washington Mutual Inc.*
767 Fifth Avenue
New York, NY 10153
  By: Brian S. Rosen , Esq., of Counsel

**BAKER BOTTS, LLP**
*Attorneys for the defendant Federal Deposit Insurance Corporation*
The Warner
1299 Pennsylvania Avenue, NW
Washington, D.C. 20004
  By: David A. Super, Esq.,
     Ryan Bull, Esq.,
     Elysa M. Dishman, Esq.,
     Samuel J. Waldon, Esq., of Counsel

**STROOCK, & STROOCK & LAVAN**
*Attorneys for the third-party JPMorgan Chase Bank, NA*
180 Maiden Lane
New York, New York 10038
  By: Burton Lipshie, Esq.,
     Claude Gabriel Szyfer, Esq.,
     Sarah B. Takasugi, Esq.,
     Heidi Balk, Esq.,
     James Lawrence Bernard, Esq., of Counsel

**SPATT, District Judge.**

   This consumer class action arises out of claims by the plaintiffs that the

defendants improperly charged them "payoff fees" when they made early payments on

their mortgages.  Currently before the Court are motions seeking: (1) de-certification of

the class asserting claims against defendant Federal Deposit Insurance Corporation, (2)

partial judgment on the pleadings in favor of the Federal Deposit Insurance

Corporation, (3) joinder of  William Bloom as an additional named plaintiff, and (4)

joinder of JPMorgan Chase Bank, NA as a defendant.  The Court's rulings on these

motions follow.

# I. BACKGROUND

In 2005, named plaintiffs Denise Cassese and George Scott Rush, who had home loans with defendant Washington Mutual Bank, FA ("WMB"), initiated the present action.  Cassese and Rush alleged that WMB, as well as defendants Washington Mutual, Inc. ("WMI"); Former State-Chartered Washington Mutual Bank; Washington Mutual Bank, FSB ("WMBfsb"); and Washington Mutual Home Loans, Inc., charged them—and thousands of other banking customers—modest but improper fees when they made early payments on their mortgages.  Shortly after the commencement of this action, named plaintiffs Richard Melichar and Richard Schroer, who identify the entity with whom they held home loans only as "Washington Mutual," joined the action, too. The details of the plaintiffs' allegations are set forth more fully in the Court's numerous previous decisions in this case, and familiarity with those facts is assumed.

The plaintiffs' original complaint asserted a wide range of causes of action against the defendants, including state common law claims and state and federal consumer protection claims.  In 2007, before any class had been certified, the defendants moved to dismiss all of these causes of action for failure to state a claim. By order dated September 7, 2007, the Court granted the defendants' motion in part, and dismissed all of the plaintiffs' claims except those for (1) breach of consumer protection statutes in forty-eight U.S. states and territories, and (2) common law breach of contract, unjust enrichment, and fraud.  Among the claims the Court dismissed at that time was a cause of action pursuant to the Truth in Lending Act, 15 U.S.C. §§ 1601–1693r ("TILA").  TILA has a $100 threshold for claims based on alleged

3

improper bank fees, and none of the named plaintiffs had claimed that the defendants

charged them $100 or more.  Thus, the Court found no TILA claim had been stated.

The plaintiffs then moved for reconsideration of the Court's September 7, 2007

decision.  By order dated June 27, 2008, the Court upheld its previous decision with a

single exception: the Court held that the plaintiff's TILA claim was dismissed *without*

*prejudice*.  The Court reasoned that it was possible that putative class plaintiffs existed

who would allege that they were charged illegal payoff fees of more than $100, and

thus the Court granted the plaintiffs thirty days to join an additional named plaintiff

who met this requirement.  If such a person were joined, the plaintiffs could then re-

assert their TILA claim.

Approximately two months later, and prior to the certification of any class or

the joinder of any additional named plaintiffs, the legal landscape for the defendants

changed dramatically.  On September 25, 2008, WMB failed, and the Federal Deposit

Insurance Corporation ("FDIC") was appointed as receiver for the bank.  At the same

time or soon thereafter, the defendants Former State-Chartered Washington Mutual

Bank and Washington Mutual Home Loans, Inc. were also deemed to have failed, and

were combined with WMB under the FDIC's receivership.  The next day, September

26, 2008, defendant WMI, the ultimate corporate parent of all of the other named

defendants, filed for Chapter 11 bankruptcy protection in the United States Bankruptcy

Court for the District of Delaware.

In addition, as part of the dismantling of the failed Washington Mutual family,

JPMorgan Chase Bank, NA ("JPMorgan Chase") purchased all of WMB's assets,

including the right to collect payments on all outstanding mortgages formerly held by

the WMB and its subsidiaries.  However, JPMorgan Chase did not succeed to any of

the liabilities for those mortgages.  See Cassese v. Washington Mut., Inc., No. 05-cv-

2724(ADS)(ARL), 2008 WL 7022845, *2 (E.D.N.Y. Dec. 22, 2008) ("Cassese

12/22/08").  At that time JPMorgan Chase also purchased all of the equity in

Washington Mutual Bank, FSB, and then immediately dissolved this entity by merging

it into JPMorgan Chase. (See Letter to the Court, dated May 7, 2010, DE # 299.)

 In connection with the FDIC's receivership, the Court entered an automatic stay

of the case from September 25, 2008 to December 24, 2008, and confirmed the

substitution of the FDIC for defendants WMB, Former State-Chartered Washington

Mutual Bank, and Washington Mutual Home Loans, Inc.  The Court also recognized an

indefinite stay of all claims asserted against WMI, pursuant to the District of Delaware

Bankruptcy Court's automatic stay of all actions against WMI.

 On December 29, 2008, the Court certified a plaintiff class to proceed on class

claims against only WMB, now in the receivership of the FDIC.  The Court defined the

class (hereinafter "the WMB/FDIC Class") as:

> All consumers or borrowers in the United States and its territories
> who had a mortgage, deed of trust, home loan, cooperative loan,
> home equity loan or line of credit secured by a residence, which loan
> was serviced by Washington Mutual Bank, formerly known as
> Washington Mutual Bank, FA and who paid or will be demanded to
> pay prohibited fees, charges and/or penalties (often but not always
> termed "Fax Fees," "Payoff Statement Fees," "Recording Fees," or
> "UCC-3 Fees" by Washington Mutual Bank, formerly known as
> Washington Mutual Bank, FA in Payoff Statements) in connection
> with requests for payoff statements or payoff amounts or the
> prepayment, repayment, discharge, satisfaction or settlement of loans
> secured by a residence.

Cassese v. Washington Mut., Inc., 255 F.R.D. 89, 98 (E.D.N.Y. 2008) ("Cassese

12/29/08").  The Court also then certified named plaintiffs Denise Cassese, George

Scott Rush, Richard Melichar and Richard Schroer as class representatives.  However, the Court did not at that time rule on whether this class or any other class could assert claims against any of the other named defendants.  In the same order, the Court then re-stayed the entire action until February 2, 2009 and shortly thereafter again stayed the entire action until September 14, 2009.

The primary reason for the Court's stay of the action was to facilitate the FDIC in managing its role as receiver for WMB.  Under the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA"), 12 U.S.C. § 1821, all persons making claims—including claims in courts of law—against the estate of a failed bank must first assert those claims directly with the FDIC.  In light of this requirement, the Court stayed the action in deference to this administrative remedy, which the named plaintiffs then sought to exhaust.

In seeking to exhaust their own remedies with the FDIC, the named plaintiffs also sought to exhaust the administrative remedies of the unnamed class members.  The named plaintiffs therefore filed a "class claim" with the FDIC, in which they attempted to assert both their own claims and the class members' claims against the WMB estate. The FDIC rejected the "class claim" as not cognizable under its administrative claims process, but it processed—and then denied—the named plaintiffs' individual claims. No other individual members of the class filed administrative claims with the FDIC.

After these claims had been submitted and denied, and after the stay of the case had been lifted, the Court then returned to the issue of whether it would certify any additional classes to assert claims against the other named defendants.  This was facilitated in part by the District of Delaware Bankruptcy Court's determination to lift

the stay of actions against WMI.  In its Order dated September 30, 2009, the Court reasoned that the nature of WMI's relationship as corporate parent of WMB gave the named plaintiffs standing to bring derivative claims against WMI, and therefore the Court certified a class to assert claims against WMI.  The Court defined the class ("the WMI Class") as identical to the WMB/FDIC Class, except that the WMI Class was permitted to assert claims against WMI.  The Court then declined to certify any other class, on grounds that the named plaintiffs had no standing to assert claims against the other named defendants.  However, the Court denied certification without prejudice to renew the application upon joinder of named plaintiffs who satisfied the necessary standing requirements.

Almost as soon as the Court lifted the stay in this case, the parties also re-commenced motion practice.  Thus, currently pending before the Court are four principal motions:

(1) a motion by the FDIC to de-certify the WMB/FDIC Class;

(2) a motion by the FDIC for partial judgment on the pleadings to deny the plaintiffs an award for punitive damages, injunctive relief, or payment for attorneys fees;

(3) a motion by the plaintiffs to permit the intervention of one William Bloom as a named plaintiff; and

(4) a motion by the plaintiffs to join, add, or substitute JPMorgan Chase Bank, NA as a defendant.

All motions are opposed.  For the reasons set forth below, the Court grants the motion to decertify, grants in part and denies in part the motion for judgment on the pleadings,

denies the motion to intervene without prejudice, and denies the motion to join

JPMorgan Chase without prejudice.

## II. DISCUSSION

### A. As to the FDIC's Motion to Decertify the Class

As noted above, on December 29, 2008, the Court certified a class pursuant to

Fed. R. Civ. P. 23 to assert claims against the FDIC as receiver for WMB.  To certify

this class, the Court first found that the plaintiff class satisfied the four prongs of Rule

23(a), namely: numerosity, commonality, typicality, and adequacy of representation.

Cassese 12/29/08, 255 F.R.D. at 96.  The Court then found that the class also satisfied

the requirements of both Rule 23(b)(2), because the class sought injunctive relief, and

also Rule 23(b)(3), because common questions of law and fact predominated the class

members' claims.  Id. at 97.  The class definition that the Court adopted at that time is

recited above.  The FDIC now seeks to decertify this class.

Generally, a district judge has broad discretion to certify, modify, and de-certify

classes "whenever warranted."  Sumitomo Copper Litig. v. Credit Lyonnais Rouse,

Ltd., 262 F.3d 134, 139 (2d Cir. 2001); accord Cordes & Co. Fin. Serv., Inc. v. A.G.

Edwards & Sons, Inc., 502 F.3d 91, 104 n. 9 (2d Cir. 2007).  The FDIC urges the Court

to exercise this power and to decertify the WMB/FDIC Class because, among other

things, it contends that the class no longer satisfies Rule 23's numerosity requirement.

According to the FDIC, FIRREA provides that no person may assert claims against the

FDIC in court without first having exhausted his or her administrative remedies with

the FDIC.  The FDIC asserts that the only class members who exhausted their remedies

are the named plaintiffs, and that they are therefore the only class members who may

proceed on their claims in court.  The FDIC rejects the plaintiffs' assertion that the entire class exhausted its administrative remedies with the FDIC through the filing of the plaintiffs' "class claim."   Rather, the FDIC contends that the WMB/FDIC Class now has only four members—the named plaintiffs—and that it therefore must be decertified.  The plaintiffs assert three grounds for opposing the FDIC's motion: (1) no exhaustion is necessary for the WMB/FDIC Class claims to proceed, (2) the plaintiffs' "class claim" exhausted the class's administrative remedies, and (3) the FDIC provided insufficient notice to the class members to facilitate their exhaustion of remedies.

### 1. As to the Necessity of Exhaustion of Administrative Remedies

The plaintiffs assert that, because they had filed their claims against WMB prior to its failure, they and the rest of the members of the plaintiff class are not required to exhaust administrative remedies with the FDIC to continue their suit against the WMB estate.  The FDIC disagrees.

Generally speaking, FIRREA revokes the jurisdiction of all federal courts to adjudicate claims against a failed institution's estate, "except as otherwise provided" in 12 U.S.C. § 1821(d).  The relevant provision of FIRREA, 12 U.S.C. § 1821(d)(13)(D), provides in full:

> Except as otherwise provided in this subsection, no court shall have jurisdiction over—
>
> (i)     any claim or action for payment from, or any action seeking a determination of rights with respect to, the assets of any depository institution for which the Corporation has been appointed receiver, including assets which the Corporation may acquire from itself as such receiver; or
>
> (ii)    any claim relating to any act or omission of such institution or the Corporation as receiver.

Thus, the "exceptions" in Section 1821(d) *undo* the statute's withdrawal of jurisdiction, and grant courts the power to decide claims against the estate of a failed bank. One "exception" that courts agree on is that courts have jurisdiction to review a claim against a failed bank once the claimant has exhausted his or her administrative remedies with the FDIC. See 12 U.S.C. §§ 1821(d)(5)(A)(i), (6)(A), and (8)(C). Further, courts also agree that FIRREA requires administrative exhaustion before a person may assert a *new* claim against the FDIC in court.

However, there is disagreement as to whether the sections cited above, as well as 12 U.S.C. §§ 1821(d)(8)(E) and (5)(F)(ii), require that a person with a claim pending against a bank at the time it fails must nevertheless pursue his or her claim administratively with the FDIC before returning to court. Some circuit courts have answered no, reading these sections to contain an "exception" that allows courts to retain jurisdiction over claims pending at the time receivership commenced, even in the absence of administrative exhaustion. See Marquis v. FDIC, 965 F.2d 1149, 1152–53 (1st Cir. 1992); Praxis Properties, Inc. v. Colonial Savings Bank, 947 F.2d 49, 63 (3rd Cir. 1991); Whatley v. Resolution Trust Corp., 32 F.3d 905 (5th Cir. 1994); FDIC v. Lacentra Trucking, Inc., 157 F.3d 1292 (11th Cir. 1998). Other circuit courts have held the opposite, reading no such exception in FIRREA, and thus requiring plaintiffs to exhaust their remedies with the FDIC before a court has jurisdiction to hear claims that were pending before receivership. See Bueford v. Resolution Trust Corp., 991 F.2d 481, 484 (8th Cir. 1993); Intercontinental Travel Mktg., Inc. v. FDIC, 45 F.3d 1278, (9th Cir. 1994); Resolution Trust Corp. v. Mustang Partners, 946 F.2d 103 (10th Cir. 1991). The Second Circuit has not addressed the issue directly, although in Resolution

Trust Corp. v. MacKenzie, 60 F.3d 972, 977 (2d Cir. 1995) the Second Circuit cited favorably to Bueford, and described the case as requiring a pre-receivership plaintiff to "exhaust administrative remedies under FIRREA as [a] jurisdictional prerequisite to further pursuing suit in district court."

This Court recently addressed this issue in IndyMac Bank, F.S.B. v. MacPherson, 672 F. Supp. 2d 313 (E.D.N.Y. 2009).  Analyzing the Second Circuit's indications in MacKenzie, as well as the language of FIRREA itself, the Court found that it had no jurisdiction to hear a claim against a now-failed bank's estate unless the claimant first exhausted his administrative remedies with the FDIC, *even though* the case was pending before receivership was entered.  Id. at 317–18.  However, the Court also found that it could entertain a pre-receivership claim by a plaintiff who exhausted his administrative remedies with the FDIC *late*—although the FDIC would be permitted to rely on the statutory time period for filing claims as a "statute of limitations-type defense."  Id. (quoting Carlyle Towers Condominium Ass'n, Inc. v. F.D.I.C., 170 F.3d 301, 307 (2d Cir. 1999)).

Here, the Court does not deviate from its previous decision, and holds that the Court has no jurisdiction to hear causes of action against the FDIC as receiver unless the plaintiffs have exhausted their administrative remedies first—regardless of whether a relevant cause of action was asserted before WMB entered receivership.  The Court notes that this result is unaffected by the plaintiffs' arguments that the FDIC has previously settled class action claims without requiring all class members to exhaust their administrative remedies.  To the extent the plaintiffs have accurately described these cases—a fact that the FDIC contests—the Court notes that a settlement does not

have *res judicata* effect on the legal issues raised during litigation.  See <u>Arizona v.

California</u>, 530 U.S. 392, 414, 120 S.Ct. 2304, 147 L.Ed.2d 374 (2000).

    **2. As to Whether the WMB/FDIC Class Has Exhausted Its Administrative
       Remedies**

    Having determined that it is necessary for the plaintiffs to exhaust their

administrative remedies with the FDIC before proceeding against it in court, the Court

now turns to whether these remedies have been exhausted.

    Preliminarily, the parties agree that the named plaintiffs have exhausted their

administrative remedies with the FDIC, and that they may now proceed in court on

these claims.  In addition, the parties agree that none of the unnamed members of the

WMB/FDIC Class have filed individual claims with the FDIC.  Also, the parties agree

that the plaintiffs filed what they called an administrative "class claim" with the FDIC

before the period for exhaustion had run.  The plaintiffs assert that their administrative

"class claim" sufficiently exhausted the WMB/FDIC Class members' administrative

remedies with the FDIC, while the FDIC contends that it did not.

    Section 1821(d) has no explicit provision either permitting or banning the filing

of administrative "class claims," and only a handful of federal courts appear to have

addressed the issue.  However, based on what little authority is available, it is the

Court's view that the analysis of the issue must begin with an acknowledgement that,

even assuming that FIRREA does permit class claims, a class representative filing with

the FDIC must have authority to act on behalf of the persons he claims to represent.

<u>Compare</u> <u>Office & Professional Employees Intern. Union, Local 2 v. F.D.I.C.</u>, 962 F.2d

63, 67 (D.C. Cir. 1992) (Ruth Bader Ginsburg, J.) (holding that a union had power to

file a claim with the FDIC on behalf of its members because labor law provided the

union with broad power to act on behalf of members).  Here, the plaintiffs assert that

their power to file on behalf of the absent class members comes from Fed. R. Civ. P. 23

and this Court's certification of the WMB/FDIC Class.

The few district courts that have addressed the issue of whether Rule 23

provides the power to file with the FDIC on behalf of other class members have

suggested that it does not.  Thus, Judge Murphy in the District of Minnesota, in Michels

v. Resolution Trust Corp., No. 93-cv-1167, 1994 WL 242162, *2 (D.Minn. Apr. 13,

1994) held that putative class plaintiffs could not file on behalf of other class members,

and remarked that, "[a]lthough the court recognizes that requiring each class member to

exhaust FIRREA claim procedures may not be the most convenient or efficient method

of resolving the parties' dispute, total exhaustion is required under 12 U.S.C. § [1821]."

Id.  However, the Michels court addressed only whether *putative* class representatives

could file on behalf of *putative* class members, and did not address whether its

conclusion would be altered if the plaintiff class had been certified.  More recently,

Judge Dawson in the Western District of Arkansas also reached the same conclusion

that a putative class plaintiff could not file an administrative class claim with the FDIC

on behalf of others.  Taylor v. ANB Bancshares, Inc., --- F.Supp.2d ---, 2009 WL

5730500, *4 (W.D. Ark. 2009).  However, the Taylor court similarly did not address

the effect of class certification on its analysis.  By contrast, the plaintiff class in

Brandow v. F.D.I.C., No. 08-cv-2771, 2008 WL 5378348, *2 (N.D. Ohio Dec. 22,

2008), was certified when the court faced the issue of the validity of an FDIC

administrative class claim.  However, the Brandow court was not compelled to rule on

the issue, but rather adopted the parties' agreement that no such class filing with the FDIC was possible.  Id.

Despite the lack of authority on the issue, the Court ultimately finds that Rule 23 does not provide a certified class plaintiff with the power to file an administrative claim on behalf of other class members.  Rule 23 is a procedural rule that governs a method of pursuing claims in federal court.  There is no indication that it has a province outside of that realm.  See Wade v. Danek Medical, Inc., 182 F.3d 281, 290 (4th Cir. 1999) ("Rule 23 . . . merely establishes the procedures for pursuing a class action in the federal courts"); Fed. R. Civ. P. 23(a) (providing that "[o]ne or more members of a class may *sue or be sued* as representative parties . . .") (emphasis added).  The plaintiffs contend that a Rule 23 class has a legal existence outside the federal courts that is similar to that of other corporate forms, (see Pls.' Opp. to Mot. to Decert. at 23), but provide no case law to support this conclusion.  To be sure, a certified class has "a legal status separate from the interest asserted by" its representatives, Sosna v. Iowa, 419 U.S. 393, 399, 95 S.Ct. 553, 42 L.Ed.2d 532 (1975), but this separate status applies only to the determination of claims in federal court.  Whereas state- or federally-incorporated entities may take a wide range of acts on their own behalf—including owning property, borrowing money, and appearing before administrative agencies— Rule 23 only provides that a certified class, as such, may "sue or be sued" in federal court.  Fed. R. Civ. P. 23(a).  Although exhaustion of administrative remedies is a pre-requisite to suing on the plaintiffs' claims, it is not part of the function of suing, and thus it is not encompassed in the power granted to a class representative by Rule 23. The Court therefore finds that Rule 23 provides the named plaintiffs no power to file an

administrative "class claim" with the FDIC, and that the administrative "class claim" here did not exhaust the administrative remedies of the absent class members.

### 3. Adequacy of Notice

The plaintiffs further assert that, even if their "class claim" was insufficient, class decertification is improper because the FDIC failed to properly notify the absent class members of their right to file claims with the FDIC. The parties agree that the FDIC did provide some notice to WMB's creditors by publishing a newspaper advertisement, as required by 12 U.S.C. § 1821(d)(3)(B), indicating that claimants to WMB's estate had the right to file a claim with the FDIC. However, the plaintiffs assert that the FDIC had an additional duty, pursuant to 12 U.S.C. § 1821(d)(3)(C), to mail notice of this right to all of the WMB/FDIC Class members. The section that the plaintiffs rely on states in full:

> (C) Mailing required
>
> The receiver shall mail a notice similar to the notice published under subparagraph [1821(d)](B)(i) at the time of such publication to any creditor shown on the institution's books--
>
>> (i) at the creditor's last address appearing in such books; or
>>
>> (ii) upon discovery of the name and address of a claimant not appearing on the institution's books within 30 days after the discovery of such name and address.

12 U.S.C. § 1821(d)(3)(C). According to the plaintiffs, all WMB/FDIC Class members were "creditor[s] shown on the institution's books," and therefore they merited individual mailed notice of their right to file a claim with the FDIC. Id. The FDIC disputes that the absent class members were "creditor[s] shown on the institution's books," and therefore denies it had any duty to mail notice to these individuals.

Few courts appear to have confronted this issue.  The sole case that appears to be on point is <u>Brandow</u>, discussed above, which concerned a class action in Ohio state court that was pending against Washington Mutual Bank at the time of its failure. <u>Brandow</u>, 2008 WL 5378348 at *2.  In <u>Brandow</u>, the plaintiff class had been certified prior to Washington Mutual Bank's failure, but the FDIC nevertheless did not mail them notice of their right to file claims against WMB's estate.  <u>Id.</u>  Facing an argument similar to that advanced here by the plaintiffs, the court held that the unnamed class members were not "shown on the institution's books as having a known claim," and thus were not entitled to mailed notice.  <u>Id.</u> (internal quotations omitted).

While <u>Brandow</u> is not binding on this Court, the Court agrees that unnamed class members are not entitled to individual mailed notice from the FDIC.  First, the class definition for the WMB/FDIC Class is insufficiently specific to provide the FDIC with a workable indication of the membership of the class.  That is, the class is defined as borrowers who paid "prohibited fees, charges and/or penalties" in connection with paying their home loans early.  Obviously, the parties disagree as to what fees are "prohibited", and, in the Court's view, it is not reasonable to require the FDIC to examine WMB's records in detail to determine which borrowers are likely to claim that the fees they paid were illegal.  Moreover, the WMB/FDIC Class was not certified until nearly two months after WMB failed, and thus at the time WMB turned its books over to the FDIC, the unnamed class members were only putative class members.  FIRREA only requires the FDIC to mail notice to claimants appearing on the failed institution's books, and the Court thus finds it unreasonable to conclude that Congress meant to

require mailed notice to members of plaintiff classes that were uncertified at the time of a bank's failure.

Rather, the Court finds that the minimal newspaper advertisement that the FDIC ran is all that FIRREA requires of the FDIC for unnamed class members. Thus, the plaintiffs' assertion that decertification is improper because of lack of notice is unacceptable to the Court.

### 4. Necessity of Decertification Based on Lack of Numerosity

A class action may proceed only to the extent the plaintiff class is sufficiently numerous to warrant certification under Rule 23. Here, the Court has determined that the Court has no jurisdiction to determine claims against the FDIC as receiver unless each individual plaintiff has exhausted his or her administrative remedies with the FDIC. The Court has also found that the unnamed members of the WMB/FDIC Class were adequately advised of their right to file claims with the FDIC, and that they have not filed those claims. Thus, the named plaintiffs are the only members of the WMB/FDIC Class with causes of action that the Court may hear. As such, the WMB/FDIC Class is insufficiently numerous, and the Court therefore decertifies it.

The Court notes that its decertification of the WMB/FDIC Class does not affect the named plaintiffs' individual claims against the FDIC, which remain pending. The Court also notes that its ruling does not affect the WMI Class, which remains certified to assert claims against WMI. WMI never entered the FDIC's receivership, and thus the FDIC's exhaustion requirement does not affect claims asserted against WMI. In summary, the named plaintiffs may continue to pursue (1) individual claims against the FDIC, and (2) class claims against WMI.

**B. As to the FDIC's Motion for Partial Judgment on the Pleadings**

The FDIC has also moved for judgment on the pleadings on three issues in this case.  First, the FDIC asserts that the court should bar the plaintiffs from pursuing injunctive or declaratory relief against it, because such relief would be moot.  Second, the FDIC seeks to bar the plaintiffs' recovery of any punitive damages, statutory penalties, and exemplary damages, on the grounds that these are barred by both federal law and public policy.  Third, the FDIC seeks judgment on the pleadings denying the plaintiffs' request for attorneys' fees, as any such award would be punitive.

The plaintiffs do not oppose the FDIC's motion with respect to injunctive relief, but they do oppose the FDIC on the remaining issues.  The plaintiffs thus assert that punitive damages based on pre-receivership acts are permitted by law, and that the plaintiffs may recover attorneys' fees from the FDIC by operation of applicable fee-shifting provisions.

**1. As to Injunctive and Declaratory Relief**

The present complaint in this action, filed prior to WMB's failure, seeks declaratory and injunctive relief barring WMB and its affiliates from asserting improper payoff fees in the future.  While the plaintiffs' claims against WMB are now generally asserted against the FDIC as WMB's successor in interest, the parties agree that, at the time of its failure, WMB sold all of its home loans to JPMorgan Chase, and that the FDIC therefore holds none of these loans.  The FDIC, as receiver for WMB, will therefore have no opportunity to charge borrowers any fees in the future.  Thus, the plaintiffs' request for injunctive or declaratory relief barring the FDIC from doing what

it otherwise cannot do is moot.  The Court therefore dismisses the plaintiff's claims for injunctive and declaratory relief against the FDIC.

### 2. As to Punitive Damages

The FDIC asserts two primary grounds for barring the plaintiffs' recovery of punitive damages.  First, the FDIC contends that punitive damages are barred by 12 U.S.C. § 1825(b), which provides in pertinent part:

> When acting as a receiver, the following provisions shall apply with respect to the Corporation: . . .
>
> > (3) The Corporation shall not be liable for any amounts in the nature of penalties or fines, including those arising from the failure of any person to pay any real property, personal property, probate, or recording tax or any recording or filing fees when due.

Second, the FDIC urges that there is no policy basis for punitive damages here because there is no future conduct by Washington Mutual Bank to deter.  Moreover, the FDIC contends that any punitive award would only reduce the recovery for other innocent creditors of the bank.

As a preliminary matter, there is some indication from circuit courts that Section 1825(b) may permit claims against the FDIC for punitive damages that were assessed against a bank prior to its failure.  See RTC Commercial Assets Trust 1995-NP3-1 v. Phoenix Bond & Indem. Co., 169 F.3d 448, 458 (7th Cir. 1999) ("Because the receiver takes the assets as it finds them, complete with encumbrances for taxes, penalties, or anything else, it is not immune from claims to payment for penalties assessed prior to its acquisition of the assets."); but see National Loan Investors L.P. v. Town of Orange, 204 F.3d 407, 411 (2d Cir. 2000) (declining to adopt or reject the holding in Phoenix Bond, because "the question is close, and, on this record, avoidable").  However, there

19

is no indication that the FDIC is liable as receiver for penalties, such as the plaintiffs'
seek here, that are assessed *after* the receivership commences. See, e.g., Monrad v.
F.D.I.C., 62 F.3d 1169, 1175 (9th Cir. 1995) (holding that Section 1825(b) bars all
punitive damage claims against the FDIC). The Court thus finds that Section 1825(b),
by its plain language, bars punitive damages from being assessed against the FDIC after
receivership has commenced. 12 U.S.C. § 1825(b) ("When acting as a receiver . . . [the
FDIC] shall not be liable for any amounts in the nature of penalties or fines."). Based
on the text of the statute, the Court also finds that the plaintiffs' arguments that Section
1825(b) applies only to the FDIC in its corporate capacity, and that Section 1825(b)
applies only to tax liability, to be unconvincing.

In the Court's view, its interpretation of Section 1825(b) is in harmony with the
policy considerations that underlie the issues. First, the FDIC correctly notes that
punitive damages are, by definition, not compensatory. Rather, they are intended to
deter future infractions. See, e.g., City of Newport v. Fact Concerts, Inc., 453 U.S. 247,
266–67, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981) ("Punitive damages by definition are
not intended to compensate the injured party, but rather to punish the tortfeasor whose
wrongful action was intentional or malicious, and to deter him and others from similar
extreme conduct.") Here, while punitive damages could arguably deter other still-
solvent banks from acting illegally, the primary target of any punitive damages, that is,
WMB, no longer exists and cannot be deterred from any future conduct. Thus, as
several other courts have held, it is not reasonable to allow punitive damages when
there is little or no conduct to deter. See Monrad, 62 F.3d at 1175 ("claims that are
punitive . . . cannot be asserted against the FDIC, because the deterrent effect is

minimal and other innocent creditors would be punished by diminishing available assets."); <u>FDIC v. Claycomb</u>, 945 F.2d 853, 861 (5th Cir.1991) ("[A punitive claim] cannot be asserted against the FDIC as such application could have no deterrent effect, and would only serve to punish innocent creditors of the failed institution by diminishing available assets."), <u>cert. denied</u>, 504 U.S. 955, 112 S.Ct. 2301, 119 L.Ed.2d 224 (1992).    In addition, as the <u>Monrad</u> and <u>Claycomb</u> courts point out, any punitive damage award asserted against a failed institution would come out of the pockets of other creditors who had no part in the wrongful conduct being punished.  <u>Id.</u>

For these reasons, the Court grants the FDIC's motion for judgment on the pleadings with respect to punitive and exemplary damages.  Nevertheless, the Court adds that it agrees with the plaintiffs that the FDIC's additional request for judgment on the pleadings with respect to "statutory penalties" (FDIC's Mot. for Jud. on the Pldgs. at 3) is somewhat confusing.  As a general matter, the Court holds here that the plaintiffs may assert no claims for punitive damages against the FDIC, regardless of their source.  However, as the FDIC has not specifically identified any "statutory penalties," as to which it seeks a ruling, the Court is not able to evaluate whether any such statutory penalty is in fact punitive.  Thus, the Court denies without prejudice the FDIC's motion for judgment on the pleadings with respect to "statutory penalties", with leave to renew if the plaintiffs seek to assert a statutory penalty that the FDIC wishes to challenge as punitive.

### 3. As to Attorneys' Fees

The plaintiffs' complaint also requests that the defendants pay the attorneys' fees that the plaintiffs have incurred in connection with this action.  The FDIC now

moves to bar any such recovery on the grounds that an award of attorneys fees to the plaintiffs would be punitive to the FDIC, and therefore is barred for the reasons discussed above.  The FDIC also argues that any payment of attorneys' fees to the plaintiffs would contravene the general principal that a failed bank's assets must be divided equally among its creditors.  The plaintiffs dispute these assertions.

Having considered the matter, the Court is unconvinced that either basis advanced by the FDIC would bar the recovery of attorneys' fees from the FDIC.  First, the Court is not persuaded that an award of attorneys' fees to the plaintiffs in this case would be punitive.  As the plaintiffs point out, one of the primary justifications for fee shifting statutes is to provide plaintiffs who have few resources or minimal individual claims with access to counsel.  See, e.g., Pennsylvania v. Delaware Valley Citizens' Council for Clean Air, 483 U.S. 711, 725, 107 S.Ct. 3078, 97 L.Ed.2d 585 (1987) ("We agree that a fundamental aim of [fee-shifting] statutes is to make it possible for those who cannot pay a lawyer for his time and effort to obtain competent counsel, this by providing lawyers with reasonable fees to be paid by the losing defendants.").  Particularly in light of this important function served by many fee shifting statutes, the Court declines to prescriptively deny the plaintiffs the right to later pursue attorneys fees if they are successful in their claims against the FDIC.

Further, with respect to the FDIC's claim that the principles of ratable distribution limit the recovery of attorneys' fees, the Court finds that the weight of case law suggests that ratable distribution need not be a general bar to recovering attorneys' fees.  In the Court's view, the opinion relied on by the plaintiffs, Adams v. Zimmerman, 73 F.3d 1164, 1176 (1st Cir. 1996), is more directly on point than the case

cited by the FDIC, <u>Interfirst Bank-Abilene, N.A. v. F.D.I.C.</u>, 777 F.2d 1092, 1096 (5th Cir. 1985).  The <u>Adams</u> court, like this Court, was presented with a claim for attorneys' fees against the FDIC-receiver, and also, as here, the underlying suit was based on acts taken by the failed institution prior to receivership.  <u>Adams</u>, 73 F.3d at 1176. Distinguishing <u>Interfirst</u>, the <u>Adams</u> court held that a plaintiff *could* recover legal fees from the FDIC, provided that they accrued prior to receivership.  <u>Id.</u>  The Court finds <u>Adams</u> persuasive, and thus declines to grant the FDIC's motion to preclude the recovery of attorneys' fees against it in this case.

To be sure, the Court is aware that <u>Adams</u> limited the recovery of attorneys' fees to those accrued prior to receivership, and thus the Court obviously would consider this limitation in granting any award in the future.  However, as the issue of the amount of attorneys' fees to be awarded to the plaintiffs is not presently before the Court, the Court declines to address it at this time.  For these reasons, the Court denies the FDIC's motion for judgment as a matter of law with respect to the plaintiffs' claim for attorneys' fees.

**C. As to the Intervention of Additional Named Plaintiff William Bloom**

In the third motion presently pending before the Court, the plaintiffs seek to add William Bloom as an additional named plaintiff in this case.  Bloom asserts that he held a mortgage with "Washington Mutual," and that in 2002, "Washington Mutual" improperly assessed him a $120 fee in connection with the early repayment of his home loan.  The plaintiffs seek to add Bloom as a plaintiff primarily for the purpose of asserting a class claim pursuant to the Truth in Lending Act.  As discussed above, TILA does not recognize claims for improper bank fees that total less than $100, and none of

the individual claims for fees by the presently named plaintiffs satisfies this threshold. The Court therefore previously dismissed the plaintiffs' TILA claim, with leave to add a plaintiff whose claim satisfied TILA's threshold. Bloom's joinder would ostensibly permit the plaintiffs to reassert the TILA claim.

Both the FDIC and WMI oppose Bloom's joinder in this case. The FDIC contends, among other things, that Bloom is barred from asserting any claim against the FDIC as receiver because he has not exhausted his administrative remedies with the FDIC. WMI opposes Bloom's joinder on the grounds that Bloom has no standing to assert a TILA claim against it, and that his joinder is not timely.

With respect to the FDIC, the Court agrees that Bloom's failure to exhaust his administrative remedies bars him from asserting claims against the FDIC. As discussed above, FIRREA requires all claimants to the estate of a failed bank to first file their claims with the FDIC before a court has jurisdiction to hear the claims. Here, the parties agree that Bloom has not filed an individual claim with the FDIC, and the Court has ruled that the plaintiffs' "class claim" did not exhaust other class members'— including Bloom's—administrative remedies. Thus, the plaintiffs' motion to join Bloom for the purpose of asserting claims against the FDIC is denied at this time as futile.

As for Bloom's claims against WMI, the Court does not adopt WMI's reasoning that Bloom may in no case assert a valid TILA claim against it. WMI contends that Bloom has no standing to sue because WMI is not a "creditor" as required for suit by the relevant provisions of TILA, 15 U.S.C. §§ 1602(f) and 1631. However, the Court notes that it has previously ruled in this case that the plaintiffs have standing to assert

claims against WMI based on acts taken by its subsidiary, Washington Mutual Bank. See Cassese v. Washington Mut., Inc., 262 F.R.D. 179, 185 (E.D.N.Y. 2009) ("Cassese 9/30/09").  This determination of standing is the law of the case, and necessarily applies to TILA claims as well.  Thus, to the extent Bloom can assert a valid TILA claim based on actions taken by Washington Mutual Bank, Bloom has standing to assert relevant derivative claims against WMI, regardless of whether WMI was in fact a "creditor" as defined by TILA, and regardless of whether he has exhausted his remedies with the FDIC.

However, the Court finds that, because Bloom does not identify which Washington Mutual entity he transacted with, the Court cannot rule definitively on the issue of his joinder.  Bloom asserts that he originally obtained his home loan from a third party, and that the right to service his loan was then transferred to "Washington Mutual", who later charged him improper payoff fees.  (Pl.'s Prop. Third Am. Compl., ¶¶ 60, 67, 68.)  Plaintiffs' counsel asserts that Bloom does not know "which Washington Mutual entity (or entities) is (or are) properly considered the assignee of his loan documents," (Pl.'s Mot. to Join at 2), and that Bloom should therefore be permitted to take discovery to determine the name of the Washington Mutual entity he transacted with.

The Court does not find this to be reasonable.  To be sure, it is proper to allow some vagueness in pleading when the defendants have sole access to the information required to make a more specific allegation.  However, Bloom alleges that he both received correspondence from and *paid a fee* to "Washington Mutual."  The Court finds

25

it implausible that he has no access to any document identifying the legal name of the entity or entities with whom he interacted in this way.

Finally, with respect to the timing of Bloom's joinder, the Court is aware that the plaintiffs motion for Bloom's joinder was untimely.  However, the Court finds that, in the interest of justice, that is not a bar in the present case to permitting joinder.

Thus, the Court denies the plaintiff's motion to join Bloom as a plaintiff, without prejudice to (1) replead against the FDIC after the Bloom has exhausted his administrative remedies, and (2) replead against WMI with greater specificity.

**D. As to the Joinder of JPMorgan Chase as a Defendant**

The plaintiffs also seek to add JPMorgan Chase as a defendant pursuant to Fed. R. Civ. P. 20, 21, and 25(c).

### 1. As to the Plaintiffs' Motion to Join JPMorgan Chase as a Successor In Interest to Washington Mutual Bank, FSB, Pursuant to Rule 25(c)

The plaintiffs assert that the Court should substitute JPMorgan Chase for Washington Mutual Bank, FSB ("WMBfsb") because JPMorgan Chase is the successor in interest to that entity.  Rule 25(c) provides in pertinent part:

> (c) Transfer of Interest. If an interest is transferred, the action may be continued by or against the original party unless the court, on motion, orders the transferee to be substituted in the action or joined with the original party. . .

The parties agree that, at the time of WMB's failure, JPMorgan Chase purchased WMBfsb in its entirety, and then merged it into itself.  (See Letter to Court, dated May 7, 2010, DE # 299.)  JPMorgan Chase is therefore the successor in interest to WMBfsb, and Rule 25(c) provides the Court with the power to substitute JPMorgan Chase in place of WMBfsb.  Nevertheless, JPMorgan Chase contends that its joinder is

improper because the Court has previously held that none of the named plaintiffs has standing to assert claims against WMBfsb.  According to JPMorgan Chase, without standing to sue WMBfsb, the plaintiffs also have no standing to sue JPMorgan Chase as WMBfsb's successor.

The Court agrees that JPMorgan Chase's substitution at this time is improper. In the Court's Order in this case dated September 30, 2009, the Court declined to certify a class to assert claims against WMBfsb, reasoning that, because none of the named plaintiffs had transacted with WMBfsb, none had standing to sue WMBfsb. Cassese 9/30/09, 262 F.R.D. at 184; Lujan v. Defenders of Wildlife, 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) (holding that standing to sue requires that a plaintiff's harm be causally connected to the acts complained of).  However, as there was no motion at the time to dismiss the claims asserted against WMBfsb, the Court did not additionally dismiss the claims against WMBfsb.  Nevertheless, while the Court previously permitted these claims to remain pending, the Court now finds that, as no named plaintiff has standing to sue WMBfsb, the plaintiffs cannot have standing to sue WMBfsb's successor in interest, JPMorgan Chase.  Therefore, JPMorgan Chase's substitution is not proper.

However, the Court notes that its previous ruling also held that the plaintiffs could renew their motion to certify a class to assert claims against WMBfsb after joining an additional named plaintiff who had standing to sue WMBfsb.  The Court must apply this ruling to JPMorgan Chase, as well.  Thus, the Court denies the plaintiffs' motion to substitute JPMorgan Chase as the successor in interest to WMBfsb, without prejudice to seek to join JPMorgan Chase as a defendant upon the

timely joinder of a named plaintiff with standing to sue JPMorgan Chase as successor to WMBfsb.

**2. As to the Plaintiffs' Motion to Join JPMorgan Chase as a Defendant Pursuant to Rules 20 and 21**

The plaintiffs also seek to assert claims against JPMorgan Chase for reasons unrelated to its status as successor in interest to WMBfsb.  In making this motion, the plaintiffs rely on Fed. R. Civ. P. 20 and 21, which permit a court to join a party to a suit when the claims asserted against that party are closely related to those in the case before the court.  Specifically, the plaintiffs advance two grounds for joining JPMorgan Chase as a defendant.  First, the plaintiffs point out that JPMorgan Chase currently holds all of the home loans that were previously held by the Washington Mutual family of entities, and that the certified class (which remains certified as to claims asserted against WMI) contains individuals who "will be demanded to pay" loan payoff fees.  With respect to these individuals, the plaintiffs seek injunctive relief barring any of the defendants from charging these loan payoff fees in the future.  According to the plaintiffs, JPMorgan Chase is a necessary defendant for effecting this relief, because it alone continues to hold and service the class members' loans.

Second, the plaintiffs seek to amend their complaint to assert new facts with respect to JPMorgan Chase's retention of certain loan payoff fees.  The plaintiffs assert that the Washington Mutual entities levied certain improper fees shortly before receivership commenced on September 25, 2008, and that these fees were not paid until after that date.  The plaintiffs allege that JPMorgan Chase, as the successor to the Washington Mutual loans, retained these fees.  The plaintiffs therefore seek to join JPMorgan Chase as a defendant so that they may recoup these fees.

The Court finds that neither of these bases provides the plaintiffs with standing to join JPMorgan Chase as a defendant.

First, with respect to the plaintiffs' assertion that JPMorgan Chase must be joined to effect appropriate injunctive relief for the class members, the Court finds that this argument fails because the plaintiffs have asserted no actual case or controversy with JPMorgan Chase.  To assert any claim in federal court, a plaintiff must establish that there exists a case or controversy between the named parties.  See, e.g., Lujan, 504 U.S. at 559–60.  Here, the plaintiffs contend that they have asserted a case or controversy with JPMorgan Chase because they seek injunctive relief barring JPMorgan Chase from charging borrowers improper payoff fees in the future.  However, there is no allegation that JPMorgan Chase has attempted to assess these fees in the past, or that it imminently seeks to do so.  Rather, the plaintiffs assert only that Washington Mutual entities charged payoff fees to home loans borrowers, and that JPMorgan Chase now owns and services home loans acquired from those entities.  In the Court's view, this is insufficient to allege a case or controversy between the plaintiffs and JPMorgan Chase.  Id. at 560 (holding that the "injury in fact" requirement for standing requires injury that is "actual or imminent, not conjectural or hypothetical" (internal quotations omitted)).

The plaintiffs nevertheless contend that JPMorgan Chase's joinder is necessary because JPMorgan Chase, as owner of the loans once held by the Washington Mutual entities, is the only person that can give them the forward looking injunctive relief to which they are entitled.  However, in the Court's view, the fact that the plaintiffs can no longer be granted the full extent of the injunctive relief they sought against Washington

Mutual Bank is not relevant with regard to whether they have standing to sue JPMorgan Chase. There is no additional case or controversy present here merely because the failure of Washington Mutual Bank has frustrated the plaintiffs' request for injunctive relief. The plaintiffs provide no authority that suggests otherwise.

Moreover, the plaintiffs also lack standing to sue JPMorgan Chase because none of the named plaintiffs alleges any interaction with JPMorgan Chase. Rather, all of the named plaintiffs allege that they were injured long before JPMorgan Chase purchased loans from the Washington Mutual entities. To be sure, the named plaintiffs seek to assert claims against JPMorgan Chase on behalf of current borrowers who presumably did or will interact with JPMorgan Chase. However, this Court has previously held that the class-based nature of this type of claim does not cure the standing deficiencies of the individual plaintiffs. Cassese 9/30/09, 262 F.R.D. at 184; see also Simon v. Eastern Kentucky Welfare Rights Organization, 426 U.S. 26, 40, n. 20, 96 S.Ct. 1917, 48 L.Ed.2d 450 (1976) ("That a suit may be a class action, however, adds nothing to the question of standing, for even named plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent."); Gunther v. Capital One, N.A., --- F.Supp.2d ---, 2010 WL 1404122, *8–9 (E.D.N.Y. 2010) (Spatt, J.). Similarly, the fact that a class remains certified in this case does not give the named plaintiffs standing to sue JPMorgan Chase either, as that class has been certified to assert claims against WMI only.

The named plaintiffs' lack of standing to sue JPMorgan Chase is also fatal to the plaintiffs' alternative basis for joining JPMorgan Chase. As noted above, the

plaintiffs seek to assert a new allegation that JPMorgan Chase retained improper payoff fees that Washington Mutual Bank assessed—but did not collect—before failing. However, all of the named plaintiffs assert that they were charged allegedly improper banking fees well before Washington Mutual Bank failed, and none asserts that he or she paid fees that were collected or retained by JPMorgan Chase.  Thus, none of them has standing to assert claims against JPMorgan Chase.  Again, the fact that the named plaintiffs are asserting class claims does not cure their lack of individual standing.

For these reasons, the Court denies the plaintiffs' motion to join JPMorgan Chase as a defendant pursuant to Rules 20 and 21.  However, the Court does so without prejudice to the plaintiffs' right to reassert their claims against JPMorgan Chase upon the joinder of a named plaintiff who satisfies the standing requirements discussed above.

## III. CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED** that the FDIC's motion to decertify the WMB/FDIC Class is granted, and the WMB/FDIC Class is decertified, and it is further

**ORDERED** that the FDIC's motion to stay discovery pending the determination of its motion to decertify is dismissed as moot, and it is further

**ORDERED** that the FDIC's motion for partial judgment on the pleadings with respect to declaratory and injunctive relief is granted, and the Court dismisses the plaintiffs' claims against the FDIC for declaratory and injunctive relief, and it is further

**ORDERED** that the FDIC's motion for partial judgment on the pleadings with respect to punitive damages is granted, and the FDIC is granted judgment barring punitive damages against it, and it is further

**ORDERED** that the FDIC's motion for partial judgment on the pleadings with respect to statutory damages is denied without prejudice, and it is further

**ORDERED** that the FDIC's motion for partial judgment on the pleadings with respect to attorneys' fees is denied, and it is further

**ORDERED** that the plaintiffs' motion to join William Bloom as a plaintiff is denied without prejudice to renew as set forth above, and it is further

**ORDERED** that the plaintiffs' motion pursuant to Fed. R. Civ. P. 25(c) to substitute JPMorgan Chase as the real party in interest for WMBfsb is denied without prejudice, and it is further

**ORDERED** that the plaintiffs' motion pursuant to Fed. R. Civ. P. 20 and 21 to join JPMorgan Chase as a defendant is denied without prejudice, and it is further

**ORDERED** that, based on the parties' representation that Washington Mutual Bank, FSB was dissolved as of September 25, 2008, the Clerk of the Court is directed to amend the caption in this case to read as follows:

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
----------------------------------------------------------X
DENISE CASSESE f/k/a DENISE CALIGIURI,
GEORGE SCOTT RUSH, RICHARD
MELICHAR and RICHARD SCHROER,
individually and on behalf of all others similarly
situated,

                           Plaintiffs,

            -against-

WASHINGTON MUTUAL, INC.; and

THE FEDERAL DEPOSIT INSURANCE
COMPANY, in its capacity as receiver for
WASHINGTON MUTUAL BANK, such entity
having incorporated former defendants
WASHINGTON MUTUAL BANK, FA and
WASHINGTON MUTUAL HOME LOANS,
INC.;

                        Defendants.
----------------------------------------------------------X
**SO ORDERED.**

Dated: Central Islip, New York
May 13, 2010

                                   __/s/ Arthur D. Spatt_____
                                   ARTHUR D. SPATT
                        United States District Judge