**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK**

-------------------------------------------------------------x

DENISE CASSESE, f/k/a DENISE CALIGUIRI,    :
GEORGE SCOTT RUSH, RICHARD                 :
MELICHAR and RICHARD SCHOERER,             :
individually and on behalf of all others similarly    : Case No. 2:05-cv-2724-ADS-ARL
situated,                                   :
                                            :
                                            : Honorable Arthur D. Spatt
            Plaintiffs,                      : Honorable Arlene R. Lindsay
                                            :
      vs.                                    :
                                            :
WASHINGTON MUTUAL, INC.;                    :
                                            :
THE FEDERAL DEPOSIT INSURANCE              :
CORPORATION, in its capacity as receiver for  :
WASHINGTON MUTUAL BANK, such entity         :
having incorporated former defendants        :
WASHINGTON MUTUAL BANK, FA,                 :
WASHINGTON MUTUAL HOME LOANS, INC.; :
and WASHINGTON MUTUAL BANK, FSB,           :
                                            :
            Defendants.                      :
-------------------------------------------------------------x

**PLAINTIFFS' AND THE CERTIFIED CLASS' MEMORANDUM OF
LAW IN OPPOSITION TO DEFENDANT WASHINGTON
MUTUAL, INC.'S MOTION FOR JUDGMENT ON THE
<u>PLEADINGS OR, IN THE ALTERNATIVE, TO DECERTIFY THE CLASS</u>**

LOWEY DANNENBERG                    WHALEN & TUSA, P.C.
 COHEN & HART, P.C.                  Joseph S. Tusa (JT-9390)
Peter D. St. Phillip, Jr. (PS-0726)   Paul Whalen (PW-1300)
One North Broadway                   33 West 19th Street
Fifth Floor                          Suite 405
White Plains, New York  10601        New York, New York  10011
Tel: (914) 997-0500                  Tel: (212) 400-7100

*Attorneys for Plaintiffs' Denise Cassese, f/k/a Denise Caliguiri,
George Scott Rush, Richard Melichar and Richard Schoerer,
individually and on behalf of all others similarly situated*

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................. iii

PRELIMINARY STATEMENT ............................................................................. 1

STATEMENT OF FACTS .................................................................................... 2

  A.   The Procedural History of This Case ................................................. 2

  B.   The Congressional Inquiry Into Lending Fraud at WMI and its Affiliates ............ 8

  C.   WMI's Several Litigations Against the FDIC and J.P. Morgan
    Chase, N.A., as Successor-In-Interest To WMB and its Shareholders ................... 9

STANDARD OF REVIEW ................................................................................. 12

ARGUMENT ................................................................................................. 13

  A.   The Court Has Repeatedly Rejected WMI's Pleading Defenses .......................... 13

   1.   The Court's Rejection of WMI's Pleading Arguments
    is Law of the Case ................................................................. 14

   2.   WMI's Motion is Untimely .......................................................... 16

   3.   WMI's Motion is Barred as Another Serial Pleading Motion ......................... 16

   4.   WMI's Motion is Barred By Rule 12(c) ............................................. 17

  B.   WMI's Judicial Admission That It, Along With Its Affiliates, Operated
    As A Single, Unified Organization Requires Denial of the Motion ..................... 17

  C.   Plaintiffs Contend That WMI Directly Participated in the Wrongdoing at
    Issue in This Case ................................................................. 18

  D.   Alternatively, Plaintiffs Have Adequately Pled the Necessary, Plausible
    Facts To Sustain Their Alternative Claim That WMI is Derivatively Liable
    for the Conduct of WMB ............................................................. 19

  E.   If WMI's Motion is Granted, Leave To Replead Should Be Given ...................... 23

F.   The Court Has Already Denied WMI's Motion for Decertification and WMI
Offers Nothing New Justifying Reconsideration ......................................................... 24

CONCLUSION ................................................................................................................... 24

# TABLE OF AUTHORITIES

## CASES

*Agostini v. Felton*,
521 U.S. 203 (1997) .......................................................................................... 15

*Alexander v. Washington Mutual, Inc.,*
No. 07-4426, 2008 WL 3285845 (E.D. Pa Aug. 4, 2008) ................................. 18

*Armstrong v. Sears*,
33 F.3d 182 (2d Cir. 1994) ............................................................................... 16

*Bank of New York v. First Millennium, Inc.*,
No. 09-1628 CV, 2010 WL 2163099 (2d Cir. June 1, 2010) ........................... 12

*Cassese v. Washington Mut., Inc.*,
255 F.R.D. 89 (E.D.N.Y. 2008) .................................................................. 2, 14

*Cassese v. Washington Mut., Inc.*,
262 F.R.D. 179 (E.D.N.Y. 2009) ........................................................... *passim*

*Cassese v. Washington Mut., Inc.*,
No. 05-CV-2724, 2009 WL 3599552 (E.D.N.Y. Apr. 6, 2009) ........................ 2

*Cassese v. Washington Mut., Inc.*,
No. 05-CV-2724, 2008 WL 7022845 (E.D.N.Y. Dec. 22, 2008) ...................... 2

*Cassese v. Washington Mut., Inc.*,
No. 05-CV-2724, 2010 WL 1936131 (E.D.N.Y. May 13, 2010) ...................... 2

*Devilla v. Schriver*,
245 F.3d 192 (2d Cir. 2001) ............................................................................. 15

*Gunther v. Capital One N.A.*,
No. 09-CV-2966, 2010 WL 1404122 (E.D.N.Y. Apr. 8, 2010) ...................... 22

*Hamilton v. Atlas Turner, Inc.*,
197 F.3d 58 (2d Cir. 1999) ............................................................................... 16

*Hayden v. Paterson*,
594 F.3d 150 (2d Cir. 2010) ............................................................................. 13

*In re Wade Cook Fin. Corp.,*
375 B.R. 580, 599 (9th Cir. BAP 2007) .......................................................... 20

*Kramer v. Time Warner, Inc.*,
   937 F.2d 767 (2d Cir. 1991).................................................................................... 12

*McAnaney v. Astoria Fin. Corp.*,
   665 F. Supp. 2d 132 (E.D.N.Y. 2009) ........................................................... 23

*McKell v. Washington Mut., Inc.*,
   49 Cal. Rptr. 3d 227 (Cal. App. Sept. 18, 2006)..............................................18

*Motorola Credit Corp. v. Uzan*,
   388 F.3d 39 (2d Cir. 2004)...................................................................... 19-20

*Muller-Paisner v. TIAA*,
   289 Fed. Appx. 461, 466 (2d Cir. 2008).........................................................12

*Official Comm. of the Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*,
   322 F.3d 147 (2d Cir. 2003)...................................................................... 15

*Purgess v. Sharrock*,
   33 F.3d 134 (2d Cir. 1994)........................................................................ 13

*Superrior Portland Cement v. Pacific Coast Cement Co.*,
   205 P.2d 597 (Wash. 1949)....................................................................... 20

*Swierkiewicz v. Sorema, N.A.*,
   534 U.S. 506 (2002).............................................................................. 23

*U.S. Travel, Inc. v. Gel Travel, Inc.*,
   No. C06-053JLR, 2006 WL 3761359 (W.D. Wash. Dec. 20, 2006)............................... 20

*U.S. v. McKeon*,
   738 F.2d 26 (2d Cir. 1984)....................................................................... 22

*United States v. Bilzerian*,
   926 F.2d 1285 (2d Cir. 1991)..................................................................... 7

*Western World Ins. Co. v. Stack Oil, Inc.*,
   922 F.2d 118 (2d Cir. 1991)...................................................................... 18

*Youkelsone v. Washington Mut., Inc.*,
   418 B.R. 107, 112 (Bankr. D. Del. 2009) ........................................................19

*Young v. Selsky*,
   41 F.3d 47 (1994).............................................................................. 13

**STATUTES**

11 U.S.C. § 547(c)(2).................................................................................................... 21

28 U.S.C. § 1292............................................................................................................ 15

## PRELIMINARY STATEMENT

Over 5 years into this litigation, WMI attempts its **fourth** Rule 12 motion, the **ninth** filed in total by it and the defendants under its common control.  The motion comes more than 3 years and 8 months after the operative complaint was filed and more than 2 years and 7 months after WMI filed its answer.  Under any definition of the word, WMI's motion is untimely.

Even though the Court has told WMI first that it rejected its argument and then that its prior decision was "law of the case", WMI simply refuses to take "no" for an answer.  The motion should be rejected out of hand as pleading motions are far behind us.  Further, WMI lost its attempt to decertify the class against it on May 13, 2010.  Without timely moving for reconsideration or for interlocutory appellate review, WMI simply moves again without any new arguments, citing instead the "inequity" of the situation.  The Court should reject WMI's untimely reconsideration application.

On the merits, moreover, the motion is frivolous. WMI has made far-reaching judicial admissions in other litigation of its intimate control of the operations of its wholly-owned subsidiary, Washington Mutual Bank ("WMB").  WMI judicially admits in an operative pleading filed in the Delaware Bankruptcy Court that "[i]n the years preceding the seizure [of WMB by the FDIC], the WaMu corporate family encompassed dozens of companies that operated, primarily under the WaMu brand, *as a single, unified organization*.  Many of these companies conducted business under the WaMu Marks, as part of the larger Washington Mutual corporate family."  This admission alone dooms WMI's motion which is premised on the notion that it had precious little to do with the lending operations of WMB.  But if additional evidence of such control is required, it is bountiful, including WMI's own employees' testimony and documents clearly showing that WMI directed the lending operations of WMB.

When it wants money from others, WMI tells the federal courts that it controlled the banking operations of its subsidiaries and that all WaMu companies were a "single, unified organization." When, however, it wants to keep the money it unlawfully wrested from the borrowers of this common enterprise, it claims it had nothing to do with its subsidiaries' lending practices.  The jury is entitled to reject this double-speak.

## STATEMENT OF FACTS

### A.      The Procedural History of this Case

Plaintiffs will not duplicate the several recitations of the procedural history of the case in the Court's several opinions.  *See, e.g., Cassese v. Washington Mut., Inc.*, No. 05-CV-2724, 2008 WL 7022845 (E.D.N.Y. Dec. 22, 2008) ("Cassese I"); *Cassese v. Washington Mut., Inc.*, 255 F.R.D. 89 (E.D.N.Y. 2008) ("Cassese II"); *Cassese v. Washington Mut., Inc.*, No. 05-CV-2724, 2009 WL 3599552 (E.D.N.Y. Apr. 6, 2009) ("Cassese III"); *Cassese v. Washington Mut., Inc.*, 262 F.R.D. 179 (E.D.N.Y. 2009) ("Cassese IV"); *Cassese v. Washington Mut., Inc.*, No. 05-CV-2724, 2010 WL 1936131 (E.D.N.Y. May 13, 2010) ("Cassese V").  They will, however, highlight those events that give WMI's motion context.

On September 2, 2005, WMI, along with its co-defendants, made its first Rule 12 motion. [Docket No. 16].  Four days later, the Court denied the motion without prejudice for its failure to comply with Judge Platt's Individual Rules.  [Docket No. 22].  On October 11, 2005, Plaintiffs filed their First Amended Class Action Complaint ("FAC").  [Docket No. 25].  On April 11, 2006, WMB moved to dismiss the FAC and separately moved to strike certain of its allegations.  [Docket Nos. 39 & 41].  Plaintiffs thereafter moved to join a new plaintiff.  [Docket No. 47].  On July 7, 2006, the Court denied the outstanding motions without prejudice.  [Docket No. 49].  The Court thereafter granted Plaintiffs' motion to amend the complaint to add a new plaintiff.  [Docket No. 53].

On October 6, 2006, Plaintiffs filed their Second Amended Complaint ("SAC").  [Docket No.

56].  In it, they allege:

- [WMI] engage[s] in the practice of mortgage banking, home loan lending and loan servicing in New York, New Jersey, North Carolina and other states.  This practice involves initiating, originating, purchasing or acquiring loans, keeping a small number of those loans for their own portfolio and "reselling" the large majority to [certain governmental agencies]. (¶ 1);

- Plaintiff Cassese received a demand from "Washington Mutual" listing the amounts "required to pay this loan in full . . . ." (¶17);

- Plaintiffs Rush, Melichar and Schroer received similar payoff statement demands from "Washington Mutual." (¶¶ 18, 19 & 20);

- "WMI is also the parent company of each of the other Defendants, and actively supervises and controls each of their activities and operations, as admitted in its Form 10-K for the year ended December 31, 2004:  "All of our banking subsidiares are under common control of Washington Mutual, Inc."  A June 30, 2005 WMI press release also confirms that WMI officers and executives actively manage and control WMI's home lending business, stating that the new President of WMI's "Home Loans Division" will "oversee all aspects of the company's home loans business."  WMI reports the operating results of the other Defendants in WMI's publicly-filed financial statements . . . . In a January 27, 2005 press release, WMI boasted that:  "Washington Mutual currently operates more than 2,400 retail banking, mortgage lending, commercial banking and financial services offices throughout the nation."  (¶ 21);

- According to WMI, its "earnings are primarily driven by real estate secured lending and deposit taking activities which generate net interest income and by activities that generate noninterest income, including the sale and servicing of loans and mortgage-backed securities generate more than 90% of interest income and this concentration is likely to continue as a result of out decision to exit certain non-core businesses, such as lending to mid- and large-sized companies." (¶ 26);

- "WMI organizes its operations into three operating segments:  i) the Mortgage Banking Group; ii) the Retail Banking and Financial Services Group; and iii) the Commercial Group." (¶ 30)  The Mortgage Banking Group's principal activities include originating and servicing home loans; buying and selling loans in the secondary market and reinsurance businesses. (¶ 31); and

- the United States Department of Labor recently ordered WMI to rehire and pay damages to a former vice president and national manager in WMI's home loan

division, after she was allegedly fired for disclosing illegal lending conduct by WMI and its subsidiaries. (¶ 79).

On July 9, 2007, WMI filed yet another Rule 12 motion.  [Docket No. 102].  In it, WMI argued that it should be dismissed as Plaintiffs did not deal directly with it.  *Id.* at 9-12.  WMI offered testimony from two employees, Norman D. Shaw and Elizabeth Proctor, in support of this position.  Plaintiffs moved to strike the motion due to WMI's failure to answer jurisdictional discovery on July 13, 2007 [Docket No. 109].  By order entered July 23, 2007, the Court denied WMI's motion without prejudice to renewal after it ruled on WMB's motion to dismiss.  [Docket No. 115].  On September 7, 2007, the Court decided WMB's outstanding motions to dismiss.  [Docket No. 125].  On September 21, 2007, WMI re-filed its Rule 12 motion.  [Docket No. 130].  WMI contended that "[j]urisdiction over [WMI] is . . . inappropriate in that plaintiffs had no relationship with, and therefore have no standing to assert, a claim against [WMI]."  *Id.*  In support of this motion, WMI again offered evidence that it did not have any business with retail customers and did not service or originate loans.  [Docket No. 105, ¶ 2].

Instead of responding to Plaintiffs' discovery, on October 5, 2007, WMI wrote the Court to inform it that it would waive its objection to personal jurisdiction and thereby withdraw the motion. [Docket No. 134].  By order entered October 9, 2007, the Court directed the Clerk to terminate WMI's Rule 12(a)(2) motion.  [Docket No. 135].

On October 15, 2007, WMI answered the SAC.  [Docket No. 137].  WMI denies that it "has engaged in the business of originating and servicing loans secured by residential real property", characterizing itself as "a holding company."  *Id.* at ¶ 1.  It, however, admits that it "makes public filings of information related to corporate activities and financial performance of various entities bearing the Washington Mutual name."  *Id.* at ¶ 21.  Defendants "specifically deny that WMB . . . is controlled by WMI", *id*, at ¶ 22, despite having admitted in its 2004 SEC Form 10-K that "[a]ll of our banking

subsidiaries are under the common control of Washington Mutual, Inc. and are insured by the FDIC."

*See Cassese IV*, 262 F.R.D. at 185.

In compliance with Court-ordered deadlines, Plaintiffs and Defendants exchanged and responded to Rule 56.1 Statements in anticipation of summary judgment proceedings initiated by Defendants. Many of Plaintiffs' Rule 56.1 Statements directed themselves to WMI's participation in the loan business of its subsidiaries. WMI refused to answer most of these statements, instead arguing their relevance. Specifically, WMI refused to respond to evidence concerning its relationship with its subsidiaries, including the following:

- WMI's "earnings are primarily driven by real estate secured lending and deposit taking activities which generate net interest income and by activities that generate noninterest income, including the sale and servicing of loans and providing fee-based services to our customers. Real estate secured loans and mortgage-backed securities generate more than 90% of interest income and this concentration is likely to continue as a result of our decision to exit certain non-core businesses, such as lending to mid- and large-sized companies." (¶ 118);

- WMBFA Vice President Norman Shaw testified as follows:

  A.   Well, again, we don't differentiate between different entities within the bank. And so if one of those entities had originated a loan or something, we would not look to that as a criteria or something. We treat everything - - everything is the same. They're all loans to us.

  Q.   When you say entities within the bank, you mean the entities that bear the Washington Mutual name?

  A.   Correct. Yes.

  *Shaw Dep. Tr.* at 49:1-10. (¶ 120);

- A June 30, 2005 WMI press release states that the new President of the Washington Mutual "Home Loan Division" will "oversee all aspects of the company's home loans business." (¶ 138);

- The President of WMI's "Home Loan Division" oversaw all aspects of the home loans business conducted by WMI's subsidiaries. (¶ 139);

- The President of WMI's "Home Loan Division" oversaw all aspects of the home loans business conducted by WMBFA. (¶ 140);

- The President of WMI's "Home Loan Division" also oversaw all aspects of the home loans business conducted by WMBfsb. (¶ 141);

- A February 28, 2005 WMI press release states that the President of Retail Banking Distribution, a member of the WMI Executive Committee, was responsible for over 2000 Washington Mutual financial centers in 14 states. (¶ 142);

- A February 28, 2005 WMI press release also states that the President of Banking Products and Operations, a member of the WMI Executive Committee, oversees all aspects of WMI's consumer lending operations. (¶ 143);

- A November 10, 2003 WMI press release states that the Senior Vice President of National Retail Lending was responsible for directing and managing WMI's entire retail mortgage network, including more than 2,500 loan consultants in nearly 400 home loan centers across the nation. (¶ 144);

- Kerry Killinger is or was the Chief Executive Officer of WMI (¶ 145) and is or was the Chairman of the Board of Directors of WMBFA and WMBfsb. (¶¶ 146, 147);

- Fay Chapman was the Senior Executive Vice President of WMI and WMBFA. (¶ 148);

- Thomas Casey is or was the Senior Executive Vice President of WMI and WMBFA. (¶ 149);

- Stephen J. Rotella is or was the President and Chief Operating Officer of WMI and is the President of WMBFA. (¶ 150);

- Craig Chapman is or was formally the President of WMBFA and a member of the WMI Executive Committee. (¶ 151); and

- David C. Schneider was hired by WMI as President of its Home Loans Division in June 2005 (¶ 152), is or was the President of the home loans group of WMBFA (¶ 153); and is or was a member of the Executive Committee of WMI. (¶ 154).

*See Defendants' Counter-Statement In Response to Plaintiffs' Statement of Undisputed Material Facts*

*(June 6, 2008), annexed to Declaration of Peter St. Phillip In Support of Plaintiffs' and the Class'*

*Memorandum of Law In Opposition to Defendant Washington Mutual, Inc.'s ("WMI") Motion For*

*Judgment on the Pleadings ("St. Phillip Decl.") at Ex."A"* (citing, for each of the above statements, the evidentiary support for same).  For the majority of these statements, WMI contended that the answers to these questions were irrelevant for purposes of "establishing standing against *or claims against* any entity other than WMB."  *Id.* (emphasis supplied).  WMI cannot avoid producing relevant discovery concerning the interrelationship between it and WMB while arguing that it had nothing to do with the lending operations of WMB.  This use of discovery objections simultaneously as a "sword" and a "shield" is forbidden in this Circuit.  *United States v. Bilzerian*, 926 F.2d 1285, 1292 (2d Cir. 1991).

WMI has still not responded to the relevant discovery, nor has it answered Plaintiffs' Rule 56.1 Statements.  [Docket No. 109].  In light of its position in this motion, Plaintiffs recently moved Judge Lindsay for an order compelling WMI to respond to the discovery relevant to this motion, [Docket No. 309] which WMI opposed due to the pendency of this motion.  [Docket No. 312].  Magistrate Judge Lindsay accepted WMI's argument and has blocked Plaintiffs' access to relevant class discovery pending the outcome of this motion.  [Docket No. 313].

On September 30, 2009, the Court granted Plaintiffs' motion to apply the class certification findings made against WMB to WMI.  [Docket No. 257].  In so doing, the Court rejected WMI's argument that the order should not be extended to it because it was a separate entity from WMB and that no plaintiff had directly interacted with WMI.  The Court held:

> Here, the Plaintiffs have alleged direct control of WMB by WMI with respect to lending and loan services activities and injury resulting from WMI's conduct.  The Plaintiffs have alleged that the two companies share common management who control the day to day operations of WMB.  (Pls. Reply Exhs. 48-53).  In addition, the Plaintiffs' point out that WMI's financial statements include earnings derived from the lending and servicing activities from WMB.  (Pls. Reply Exh. 46, WMI 2004  Form 10-K, pg. 6 ("All of our banking subsidiaries are under the common control of WMI, and are insured by the FDIC.").  Accordingly, the Court finds that the Plaintiffs' class claims properly include WMI.

*Id.* at pp. 14-15.

On September 21, 2009, WMB moved to decertify the class against it on grounds that
Plaintiffs could not establish numerosity under Rule 23(a)(1) because only those absent class
members who personally submitted administrative claims in the FDIC receivership were
members of the class.  [Docket No. 251].  On October 16, 2009, WMI joined in this motion.
[Docket No. 273]  On May 13, 2010, the Court granted the motion as to WMB due to its
interpretation of the administrative exhaustion requirements of claimants against a failed bank
under FIRREA, but denied WMI's motion because the class need not administratively exhaust
any claims against WMI.  *Cassese V*.  As to WMI, the Court concluded:

> . . . the Court notes that it has previously ruled in this case that the plaintiffs have
> standing to assert claims against WMI based on acts taken   by its subsidiary, Washington
> Mutual Bank. *See Cassese v. Washington Mut., Inc.*, 262 F.R.D. 179, 185 (E.D.N.Y.
> 2009) (" *Cassese 9/30/09* "). This determination of standing is the ***law of the case***, and
> necessarily applies to TILA claims as well. Thus, to the extent Bloom can assert a valid
> TILA claim based on actions taken by Washington Mutual Bank, Bloom has standing to
> assert relevant derivative claims against WMI, regardless of whether WMI was in fact a
> "creditor" as defined by TILA, and regardless of whether he has exhausted his remedies
> with the FDIC.

*Id*. at *13 (emphasis supplied).

On June 14, 2010, WMI filed this motion.  It is the ***ninth*** Rule 12 motion filed by WMI
and its affiliates in this case.  [Docket Nos. 16, 20, 31, 39, 57, 58, 102, 130, 305].

### B.      The Congressional Inquiry Into Lending Fraud at WMI and its Affiliates.

In the wake of the recent financial crisis, the United States Senate Committee on Homeland
Security & Governmental Affairs, Permanent Subcommittee on Investigations held hearings on the
impact of certain practices on the fiscal stability of the United States.  One such hearing -- convened on
April 13, 2010 -- examined the role of high risk home loans, using the Washington Mutual companies as
an example.  Several executives holding positions simultaneously at WMI and WMB testified about

WMI's (and its subsidiaries') lending practices.  These executives also submitted written testimony.

The testimony pertinent to this motion included:

> James Vanasek – Chief Credit Officer and later Chief Risk Officer of "Washington Mutual" from September 1999 to December 2005
>
> • testified that he was "forced by our external auditor to reduce the loan loss reserve of $1.8 billion by $500 million or risk losing our audit certification"  (*St. Phillip Decl*. at Ex. "B").  Mr. Vanasek here is discussing how he was forced by WMI's outside accountants in preparation of WMI's certified financial statements accompanying its financial statements to the SEC (WMI is the publicly-traded holding company);
>
> • Received a September 8, 2008 document entitled "Home Loans – **Risk Mitigation and Mortgage Fraud** – 2008 Targeted Review" Prepared by "Washinton Mutual, Inc.", demonstrating WMI's participation in reviewing the loans of WMB for fraud risk (*Id.*, Ex. "C");
>
> Randy Melby – General Auditor of "Washington Mutual"
>
> • testified concerning WaMu's consolidation of family residential mortgage lending operations in the fourth quarter of 2005 (*Id.*, Ex. "D" at 8; describing WaMu's internal audits of the "Home Loans Group" in 2005-2008)
>
> David Schneider – President of Home Loans at "Washington Mutual" (and a member of WMI's Executive Committee)
>
> • testifying concerning "WaMu" and its strategies concerning the home loan business; using "WaMu" to describe WMI when testifying concerning the $140 billion of Mortgage Servicing Rights it sold in 2006 (*Id.*, Ex. "E").

Other members of WMI's executive committee, including Kerry Killinger and Stephen Rotella

testified about their oversight of WMB's loan operations.

> **C.      WMI's Several Litigations Against the FDIC and J.P. Morgan Chase, N.A., as Successor-In-Interest To WMB and its Shareholders.**

Ever since the September 2008 seizure of WMB by the Federal Deposit Insurance Company

("FDIC"), WMI, the FDIC and J.P. Morgan Chase Bank, N.A. ("J.P. Morgan") have been litigating their

respective entitlement to several billions of dollars of assets.  These cases include: (1) two adversary

proceedings in the Delaware Bankruptcy Court under Docket No. 08-bk-12229 (*J.P. Morgan v.*

*Washington Mut., Inc.*, No. 09-ap-50551; *Washington Mut., Inc. v. J.P. Morgan*, No. 09-ap-50934); and

(2) a civil action pending in the District of Columbia, *Washington Mut., Inc. v. FDIC*, No. 09-cv-00533

(D.D.C.).

     In Adversary Proceeding No. 09-50551, WMI filed an Answer and Counterclaim on September

11, 2009 wherein it judicially admitted that:

- "In the years preceding the seizure, the WaMu corporate family encompassed dozens of companies that operated, primarily under the WAMU brand, as a single, unified organization. Many of these companies conducted business under the WaMu Marks, as part of the larger Washington Mutual corporate family." *Id.*, ¶ 82 (emphasis supplied);

- "Wamu.com was the primary website for WMI and its subsidiaries, and as such was the primary centralized focal point for customer interaction  . . . ."; *Id.* at ¶ 86;

- "It was WMI's policy and practice to register the WaMu Marks and the Secondary Marks with the United States Patent and Trademark Office in the name of WMI, the holding company. WMI subsidiaries operating under the WaMu Marks and/or using the Secondary Marks were permitted to use them for the products and services relevant to such subsidiary's business pursuant to an implied license from WMI for as long as the subsidiary remained part of the Washington Mutual corporate family." *Id.*, ¶ 84;

- "Banking services and related services have been provided under some or all of the WaMu Marks since 1889." *Id.*, ¶ 82 (the second, misnumbered ¶ 82);

- "WMI also owns registrations for at least 140 other trade marks and service marks, each in connection with various lines of business of the WaMu corporate family . . . ." *Id.*, ¶ 83;

- "From December 2007 through April 2008, WMI made the [sic] Capital Contributions to WMB in the amount of $6.5 billion." *Id.*, Counterclaim, ¶ 13;

- "All Capital Contributions made [sic] at a time when WMI was insolvent or engaged in business for which its assets were unreasonably small capital and when WMB was insolvent resulted in WMI receiving no consideration in exchange for making such contributions." *Id.,* ¶ 15;

- "In December 2007, WMI was recognizing serious signs of asset deterioration. On December 10, 2007, WMI announced a loss for the fourth quarter because of a $1.6 billion charge to write down the value of *its* home-loan business, and *its* plans to lay off approximately 3,150 employees . . . . " *Id.,* ¶ 16 (emphasis added);

- "WMI had a debt burden of more than $7 billion, and its primary asset, the equity value in WMB, was reduced to nothing."  *Id.*, ¶ 28;

- WMI and WMB established so-called "Special Purpose Entities" or "SPEs" which issued Trust Securities, the value of which was related to mortgage interests.  These instruments were valued at approximately $4 billion and were sold to qualified investors.  *Id.*, ¶¶ 32-34;

- Upon the happening of certain events, John F. Robinson, WMI Corporate Risk Management, pledged in a February 23, 2006 letter to Darrel Dochow of OTC, that "WMI will contribute to WMB the [Trust Securities]"  ¶ 35.  As a result of this assurance, Mr. Dochow wrote to Mr. Robinson and confirmed that the OTC would consider the value of the Trust Securities to be in WMB's core capital.  *Id.*;

- WMI contended that its September 25, 2008 transfer of the Trust Securities to WMB was avoidable because "the transfer was made to an insider, WMB or J.P. Morgan Chase, as successor in interest to WMB, while WMI was insolvent and while WMB or J.P. Morgan Chase had reasonable cause to believe that WMI was insolvent"  *Id.*, ¶ 48;

- "Immediately after its appointment as receiver, the FDIC purportedly sold the majority of WMB's assets to J.P. Morgan for consideration of $1.88 billion"  *Id.*, ¶ 70;

*St. Phillip Decl.*, Ex. "F".

In addition to these admissions, WMI offered documentary evidence in these cases in support of its arguments, establishing that (1) WMI controlled the finances and capital structure of its subsidiaries; (2) WMI and its subsidiaries shared financial policies concerning deposits and other matters; (3) WMI personnel had to approve capital contribution requests of WMB; and (4) WMI commingled its assets with WMB.

Specifically, WMI's "GL Administration Policy: Internal Corporate Demand Deposit Account (DDA) Establishment and Usage Polity" was designed to "communicate policies for the establishment and usage of 'On Us' bank accounts for all Washington Mutual entities and departments"  *St. Phillip Decl.*, Ex. "G", p. A-43.  It required for WMI and its subsidiaries that "[t]he establishment of all accounts must be centralized" to ensure consistency.  *Id.*  WMI's GL Administration Policy: Policy to Request New GL Account" also set intracorporate policy for all of WMI's subsidiaries.  *Id.,* Ex. "H".

WMI set firm "General Standards" for "Intercompany Transactions" among WMI and its subsidiaries, *id.*, and "Liquidity Management Standards" which were designed to, among other things, "provide reliable support for its subsidiaries" *Id,* Ex. "I".  Pursuant to these policies, WMI from time-to-time contributed billions of dollars to its subsidiaries for no consideration to itself.  *Id.,* Ex. "J" (showing September 24, 2008 capital contribution of $14 billion from WMI to WMBfsb); Ex. "K" (e-mail approving an August 25, 2008 capital contribution of $500 million from WMI to WMB).

WMI's shareholders have sued it for failing to comply with Washington corporate law's requirement that companies hold annual shareholder meetings.  *Willingham v. Washington Mut., Inc.*, Adversary Proceeding No. 1:10-ap-51297 (Bankr. D. Del.).

## STANDARD OF REVIEW

The Court applies the same standard to this motion as it applies to Rule 12(b)(6) motion – whether the Complaint "contains sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Bank of New York v. First Millennium, Inc.*, No. 09-1628-cv, 2010 WL 2163099, at *14 (2d Cir. June 1, 2010) (citation omitted).  The Second Circuit has rejected a reading of *Twombly* and *Iqbal* that heightens the pleading standard beyond that identified in Rule 8(a)(2). "Although *Twombly* and *Iqbal* require 'factual amplification [where] needed to render a claim plausible,'" [citations omitted], we reject [Defendants'] contention that *Twombly* and *Iqbal* require the pleading of specific evidence or extra facts beyond what is needed to make the claim plausible." *Arista Records v. Doe 3*, 604 F.3d 110, 120-21 (2d Cir. 2010).

In considering a Rule 12 motion, the Court may take judicial notice of (1) filings of a party with the U.S. Securities and Exchange Commission ("SEC"), *Kramer v. Time Warner, Inc.*, 937 F.2d 767, 774 (2d Cir. 1991); (2) Congressional testimony, *Muller-Paisner v. TIAA*, 289 Fed. Appx. 461, 466 (2d Cir. 2008); and (3) documents filed by a party in other litigation pending in the federal courts. *Young v.*

*Selsky*, 41 F.3d 47, 49 (1994).  "A party can properly treat statements in briefs as binding judicial admissions of fact."  *Purgess v. Sharrock*, 33 F.3d 134, 144 (2d Cir. 1994) (citations omitted).

Where a complaint falls short of the *Twombly/Iqbal* test, "a court should freely give leave to amend before trial 'when justice so requires.' Fed. R. Civ. P. 15(a)(2)."  *Hayden v. Paterson*, 594 F.3d 150, 160 (2d Cir. 2010) (citations omitted).

## ARGUMENT

### A.        The Court Has Repeatedly Rejected WMI's Pleading Defenses.

During the first 4½ years of this litigation, all defendants were wholly-owned and controlled subsidiaries of WMI.  At that time, the five defendants were represented by the same counsel and collectively filed three Rule 12(b)(6) motions, three Rule 12(b)(2) motions and two Rule 12(f) motions.  The Court substantially denied much or all of each motion and WMI's Rule 12(b)(2) motion was withdrawn after Plaintiffs propounded discovery that, if answered, would have demonstrated its futility.  The Court refused to consider WMB's motion to strike under Rule 12(f) because it was a serial pleading motion.  [Docket No. 125 at 36 (holding Fed. R. Civ. P. 12(g)(2) precluded review of other serial Rule 12 motions)].  WMI renewed many of these same defenses in opposition to Plaintiffs' class certification motion and again in its motion to decertify the class.  The Court again rejected WMI's arguments, most recently concluding its earlier rulings are "law of the case."  *Cassese V* at *13.

After changing defense counsel, more than 5 years into this litigation and after having sought permission to file a summary judgment motion, WMI has filed yet another pleading motion, asserting the same discredited arguments.  The motion should be denied out-of-hand as: (1) contrary to the law of the case; (2) an untimely motion to reconsider prior rulings; (3) as yet another serial pleading motion; and (4) too late under Rule 12(c).

**1.      The Court's Rejection of WMI's Pleading Arguments is Law of the Case.**

WMI's motion for judgment on the pleadings repeats a number of arguments already made and

denied by this Court in this case.  Namely, WMI repeats defenses that:  (1) it may not be liable to

borrowers of its subsidiaries because it was not the direct lender or creditor; (2) it may not be liable for

its own alleged violations; (3) it may not be liable for the unlawful conduct of its wholly-owned and

controlled subsidiaries; and (4) the named plaintiffs lack standing to either assert claims or serve as class

representatives. *WMI Brf.* at 10-18.  Each of these arguments has been denied:

> The Standing Defendants contend that because Cassese, Rush, and Schroer were
> borrowers of only the WMB entity, they cannot satisfy the threshold jurisdictional
> requirement of standing and may not seek class certification as against the Standing
> Defendants . . . . The plaintiffs also argue that they have standing as to WMI on the basis
> that WMI actively controls the servicing activities of all defendants . . . . The Second
> Circuit reiterated the four factors that a court must consider in determining whether the
> subsidiary is a mere department of the parent: (1) common ownership, (2) financial
> dependency of the subsidiary on the parent, (3) the degree to which the parent is involved
> in the selection and assignment of the subsidiary's high-ranking personnel and fails to
> observe corporate formalities, and (4) the degree of control by the parent over the
> marketing and operational policies of the subsidiary."  *Laborers Local 17 Health and
> Ben. Fund v. Philip Morris, Inc.*, 26 F. Supp. 2d 593, 605 (S.D.N.Y. Aug. 27, 1998).
>
> Here, the plaintiffs have alleged both direct control of WMB by WMI with respect to
> lending and loan servicing activities, and injury arising from WMI's conduct. The
> plaintiffs have alleged that the two companies share common management who control
> the day to day operations of WMB. (Pls. Reply Exhs. 48-53). In addition, the plaintiffs'
> point out that WMI's financial statements include earnings derived from the lending and
> servicing activities of WMB. (Pls. Reply Exh. 46, WMI 2004 Form 10-K, pg. 6 ("All of
> our banking subsidiaries are under the common control of Washington Mutual, Inc. and
> are insured by the FDIC"). Accordingly, the Court finds that the plaintiffs' class claims
> properly include WMI.

*Cassese IV*, 262 F.R.D. at 183-85.  This Court further summarized WMI's defenses in its prior decision

certifying the class against WMB.  *Cassese II*, 255 F.R.D. at 95 ("defendants oppose the class motion

arguing that WMI [and other WMI-controlled subsidiaries] . . . are all improper defendants because the

plaintiffs admittedly were only borrowers of WMB, and therefore the remaining defendants did not and

could not assess the Disputed Charges to the plaintiffs.").

On May 13, 2010, the Court resolved four motions, including a motion to decertify the classes certified against WMB and WMI and a motion to intervene a new plaintiff in this action.  As to decertification, WMI argued, "[t]hus, a decision on the [FDIC] Motion to Decertify will surely impact the status of class certification against WMI." [Docket No. 278 at 2].  Contrary to WMI's contention that it has previously raised only raised "standing" defenses, WMI opposed the Plaintiffs' intervention motion, based on its argument that plaintiffs could not state a claim against it.  [Docket No. 272 at pp. 1-3].  The Court again denied WMI's pleading and class defenses.  *Cassese V*, at *13 ("the Court notes that it has previously ruled in this case that the plaintiffs have standing to assert claims against WMI based on acts taken by its subsidiary, Washington Mutual Bank").

WMI's current motion implicitly asks the Court to disregard the law of case doctrine.  However, both the Supreme Court and the Second Circuit endorse the doctrine to promote fairness to the parties and the efficiency of the federal courts.  *Agostini v. Felton*, 521 U.S. 203, 236 (1997) (law of the case doctrine counsels that "a court should not reopen issues decided in earlier stages of the same litigation."); *Official Comm. of the Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*, 322 F.3d 147, 167 (2d Cir. 2003) ("where the litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again").  The doctrine's purpose is to "maintain consistency and avoid reconsideration of matters once decided during the course of a single continuing lawsuit . . . ."  *Devilla v. Schriver*, 245 F.3d 192, 197 (2d Cir. 2001).   Filing a Rule 12 motion years after the pleadings close represents the very antithesis of efficiency.  The Court should deny each of WMI's Rule 12(c) arguments -- no matter how WMI dresses them up -- as contrary to the law of the case.

### 2.      WMI's Motion is Untimely.

WMI disagrees with the Court's prior rulings.  It should have moved for reconsideration under Local Rule 6.3, or sought interlocutory appellate review pursuant to either 28 U.S.C. § 1292 or Fed. R. Civ. P. 12(f).  The deadlines to do so have expired.  WMI must now await an appeal from final judgment to present these issues to the Second Circuit.

### 3.      WMI's Motion is Barred as Another Serial Pleading Motion.

WMI's Rule 12(c) motion is its fourth and the tenth overall pleading motion filed in this case, many of which attack the SAC.  This Court has interpreted Rule 12(g)(2) to require a "single pre-answer motion in which the defendant asserts all the Rule 12 defenses that are then available":

> This Rule [12(g)(2)] "contemplates a single pre-answer motion in which the defendant asserts all the Rule 12 defenses and objections that are then available to him or her. The rule generally precludes a second motion based on any Rule 12 defense or objection that the defendant could have but neglected to raise in the original motion." 5A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure: Civil 2d* §1385. In this case, WMB made two separate Rule 12 motions: (1) pursuant to Rule 12(b)(6) to dismiss the second amended complaint for failure to state a claim; and (2) an independent motion pursuant to Rule 12(f) to strike allegations of the second amended complaint, complete with its own twenty-four-page supporting memorandum and ten-page reply brief. According to Rule 12(g), these two separate motions should have been consolidated, and the Court finds that WMB's separate Rule 12(f) motion to strike is improper. *See* Fed. R. Civ. P. 12(g); *Armstrong v. Sears*, 33 F.3d 182, 188 (2d Cir. 1994) (noting that all defenses must be consolidated in a single Rule 12 motion).

[Docket No. 125 at 36-37].  WMB, while under the common control of WMI, filed four Rule 12 motions as a co-defendant with WMI, represented by the same counsel.  Nothing stopped WMI from presenting its current pleading challenge to the Court in 2005, when it filed its first Rule 12 motion.  Under the circumstances, WMI should be barred from raising those arguments through another serial Rule 12 motion.  *Hamilton v. Atlas Turner, Inc.*, 197 F.3d 58 (2d Cir. 1999) (abuse of discretion to entertain a personal jurisdiction challenge not raised until 4 years into the proceedings).

### 4.      WMI's Motion is Barred by Rule 12(c).

Rule 12(c) contains a timeliness requirement.  Motions for judgment on the pleadings should not be entertained unless filed "early enough not to delay trial."  FED. R. CIV. P. 12(c).  WMI has already delayed trial by filing this motion – it has successfully used it to block producing relevant discovery. [Docket No. 314].  Because WMI successfully delayed trial with this motion, it cannot be considered under Rule 12(c).  As the leading federal practice treatise explains:

> Ordinarily, a motion for judgment on the pleadings should be made promptly after the close of the pleadings.  If a party engages in excessive delay before moving under Rule 12(c), the district court may refuse to hear the motion on the ground that its consideration will delay or interfere with the commencement of the trial . . . . [I]f the pleadings do not resolve all of the factual issues in the case, a trial on the merits would be more appropriate than an attempt at resolution of the case on a Rule 12(c) motion.[]

5C C. Wright & A. Miller, Fed. Prac. & Proc. Civ. § 1367 (3d ed.) (footnote omitted).  The SAC was filed in *October 2006* -- more than 3 years and 8 months ago.  This motion is unquestionably excessively delayed and should be denied.

### B.      WMI's Judicial Admission That it, Along With its Affiliates, Operated as a Single, Unified Organization Requires Denial of the Motion.

WMI's Answer filed in the Bankruptcy Court on September 11, 2009 directly contradicts its central position in this motion – that it was a distinct corporation from WMB that had nothing to do with WMB's lending practices.  WMI judicially admits:

> In the years preceding the seizure [of WMB by the FDIC], the WaMu corporate family encompassed dozens of companies that operated, primarily under the WAMU brand, as a single, unified organization.  Many of these companies conducted business under the WaMu Marks, as part of the larger Washington Mutual corporate family.

*St. Phillip Decl.*, Ex. "F", Counterclaim, ¶ 82.

WMI talks out of both sides of its mouth – when it is seeking return of funds it gave to WMB without any consideration, it contends before the Delaware Bankruptcy Court that WMI and WMB was

a "single, uniform organization."  Where, however, it seeks to sidestep liability for its role in the lending activities at issue here, it tries to lay it all off on WMB and claim it had nothing to do with it.  By claiming in its Answer that it was a "single, unified organization" in the Bankruptcy Court, WMI has judicially admitted that its motion here is without merit.

A statement in a party's answer filed in other litigation is a judicial admission.  *Western World Ins. Co. v. Stack Oil, Inc.*, 922 F.2d 118, 122 (2d Cir. 1991) (statement in answer is a "formal judicial admission" that is "conclusive" against the party making it) (citations omitted).  Here, WMI and WMB, for purposes of this litigation, are conclusively a "single, uniform organization."  The motion should be dismissed on this ground alone.  Several courts have permitted claims against WMI to go forward alleging wrongdoing involving its lending practices.  *Alexander v. Washington Mut., Inc.*, No. Civ.A. 07-4426, 2008 WL 3285845 (E.D. Pa. June 30, 2008) (denying motion to dismiss RESPA claims against WMI and WMB); *In re Washington Mut. RESPA Fee Litig.*, Order (E.D.N.Y. 02-CV-5944 (SMG) (June 6, 2008) (certifying settlement class against WMI and WMB); *McKell v. Washington Mut., Inc.*, 49 Cal. Rptr. 3d 227, 234 (Cal. App. Sept. 18, 2006) (reversing decision granting demurrer of claims against "Washington Mutual, Inc., and its divisions and/or subsidiaries").  This Court's prior rulings on the same subject should, likewise, stand.

### C.  Plaintiffs Contend That WMI Directly Participated in the Wrongdoing at Issue in This Case.

Plaintiffs' allegations seek to hold WMI responsible for *its own* conduct *and* for the conduct of its subsidiaries.  262 F.R.D. at 185 ("Plaintiffs have alleged . . . injury resulting from WMI's conduct.").  Plaintiffs' SAC contends that WMI directly participated in the wrongdoing at issue here.  *See* SAC, ¶¶ 17-31.  Significantly, the payoff statements at issue were sent by "Washington Mutual" not by WMB.  *Id.* at ¶¶ 17-20.  WMI contends that it owned the trade name "WaMu" and operated coordinately under

the name "Washington Mutual." *St. Phillip Decl.,* Ex. F, Counterclaim, ¶¶ 81-92. Hence, a rational jury could conclude that the "Washington Mutual" that charged the disputed fees was WMI, not WMB. While self-interested WMB employees have testified that WMI had nothing to do with the lending operations of WMB, Plaintiffs have alleged (and substantial evidence suggests) that this is untrue. A jury should ultimately decide who is correct.

> D.   **Alternatively, Plaintiffs Have Adequately Pled the Necessary, Plausible Facts to Sustain Their Alternative Claim That WMI is Derivatively Liable for the Conduct of WMB.**

As the Court has twice ruled, Plaintiffs have pled all facts necessary to recover against WMI based on its common control of WMB.

WMI seems to think that its victory over a *pro se* litigant in *Youkelsone v. Washington Mut., Inc.*, 418 B.R. 107, 112 (Bankr. D. Del. 2009) justifies belated reconsideration of the Court's interpretation of the separate pleading filed in this case. *Youkelsone*, however, carries little water here. The *Youkelsone* plaintiff failed to amass the comprehensive evidence that Class Plaintiffs have collected here that WMI, *inter alia*, (1) intermingled its funds with WMB; (2) totally controlled the lending operations of WMB; (3) held all intellectual property of WMB and licensed it "impliedly" to the company for seemingly no consideration; (4) judicially admitted that "the WaMu corporate family encompassed dozens of companies that operated, primarily under the WaMu brand, as a single, unified organization"; and (5) took a position under the Bankruptcy Code that necessarily excluded the possibility that transfers of $6.5 billion from WMI to WMB were done at arm's length. Whatever efforts Youkelsone made in pleading and proving his case, Plaintiffs' efforts here are what count for this motion.

The Court previously evaluated Plaintiffs' pleading under New York law governing parent/subsidiary relationships. *Cassese IV*, 262 F.R.D. at 183. Until now, WMI never challenged that choice of law, rendering its new invocation of Washington law waived. *Motorola Credit Corp. v. Uzan*,

388 F.3d 39, 61 (2d Cir. 2004) ("implied consent . . . is sufficient to establish choice of law") (citation

omitted).  Even so, Plaintiffs meet the standards of Washington law.

 The Supreme Court of Washington has recognized that corporations like WMI, that dominate

and operate through their subsidiaries, cannot siphon out all of the money from such subsidiaries and

leave the creditors to solely seek recompense for its wrongs against the carcass of the subsidiary:

> It is a well-recognized principle of law that a corporation may not be used as a cloak or disguise to escape corporate liability, and that the corporate veil may be pierced when necessary to do justice in particular cases. [citations omitted.]

> The foregoing principle, requiring that a corporate entity on occasion be disregarded, is especially applicable in cases involving a parent or principal corporation and subsidiary corporations which acquiesce in and register the decrees of their principal.

> The rule followed in many cases is that the legal fiction of distinct corporate existence may be disregarded where a corporation is so organized and controlled, and its affairs are so conducted, as to make it merely an instrumentality or adjunct of another corporation. The courts will ignore separate corporate entities in order to defeat a fraud, wrong, or injustice, at least where the rights of third persons are concerned.' 18 C.J.S., Corporations § 7e, p. 382.

> If one corporation so dominates and controls another as to make that other merely an adjunct to it, the courts will look beyond the fiction of distinct corporate entity.  *Briggs & Co. v. Harper Clay Products Co.*, 150 Wash. 235, 272 P. 962.

*Superior Portland Cement v. Pacific Coast Cement Co.*, 205 P.2d 597, 620 (Wash. 1949); *accord U.S.*

*Travel, Inc. v. Gel Travel, Inc.*, No. C06-053JLR, 2006 WL 3761359, *5 (W.D. Wash. Dec. 20, 2006)

(citing *Kueckelhan v. Federal Old Line Ins. Co.*, 418 P.2d 443, 455 (Wash.1966); *In re Estate of*

*Trierweiler*, 486 P.2d 314, 317 (Wash. 1971)); *In re Wade Cook Fin. Corp.*, 375 B.R. 580, 599 (9th Cir.

BAP 2007) ("there must be such a commingling of the affairs of two corporations as to work an injustice

on third parties if their separate status is recognized, in order for the court to hold the two corporations

are, in effect, one legal entity . . . ."[T]heir property rights [must be] so commingled and their affairs so

intimately related in management as to render it apparent that they are, in fact and in intent, one, and, so

related, to have them regarded otherwise would work a fraud upon third persons") (citations omitted).

WMI, as it told its shareholders in public securities filings, commonly controlled its operating subsidiary, WMB.  Congressional inquiries revealed executives that spoke in terms of their role at "WaMu", a trade name held by WMI and used to refer to the entire corporate family of companies. Executives at WMI and WMB held overlapping directorships, did not view the lending business as compartmentalized across corporate form, and managed the lending business collectively.  WMI contributed $6.5 ***billion*** of capital to WMI for no consideration whatsoever in transactions that it argues to the United States Bankruptcy Court were voidable because they were not made at arm's length.  WMI admits that it permitted WMB to use the "WaMu" registered marks pursuant to an "implied" license. Taken as a whole, the evidence is overwhelming that WMI's and WMB's "property rights" were so "commingled" and "their affairs were so intimately related in management" that they are, in fact, one enterprise.  The Court need do no more than to credit WMI's admission that "[i]n the years preceding the seizure, the WaMu corporate family encompassed dozens of companies that operated, primarily under the WAMU brand, as a single, unified organization.  Many of these companies conducted business under the WaMu Marks, as part of the larger Washington Mutual corporate family."

In its litigation with JP Morgan, WMI claimed that its transfers to WMB were avoidable because WMB was an "insider" rendering the contributions avoidable under the Bankruptcy Code.  *St. Phillip Decl.*, Ex. "F" at Counterclaim, ¶ 63.  Section 547(b)(4)(B) of the Bankruptcy Code allows for avoidance of transfers within one year before the date of filing if the creditor "at the time of such transfer was an insider."  By arguing to the Delaware Bankruptcy Court that WMB is an "insider" for purposes of avoiding billions of dollars in capital contributions it made to WMB, WMI necessarily takes the position that the transactions were not conducted at arm's length and that the transfers were not made in the ordinary course of business.  *See* 11 U.S.C. § 547(c)(2) (defense to preference action where

transfers were made in the ordinary course of business).  Given this position, WMI cannot now defend this case on grounds that it was a separate, independent corporation.

WMI claimed in its Answer filed in the Delaware Bankruptcy litigation that its patents, copyrights, trademarks and internet domains were used in a unified fashion by all of its corporate affiliates pursuant to an "implied license".  This admission further advances Plaintiffs' argument that WMI was not acting at arm's length from WMB in its lending operations.  WMI is stuck with the admissions it made to the bankruptcy court; it cannot disclaim this statement in this litigation to avoid liability.  *See, e.g., U.S. v. McKeon*, 738 F.2d 26, 31 (2d Cir. 1984) ("The law is quite clear that such pleadings constitute the admissions of a party-opponent and are admissible in the case in which they were originally filed as well as in any subsequent litigation involving that party") (citations omitted).

In addition, it should be noted that WMI itself has disregarded its own corporate formalities.  As it admits, it has not held a general shareholders meeting since April 15, 2008.  *See Debtor's Answer and Counterclaim to Plaintiffs' Complaint, Answer to Paragraph 12*, *In re Washington Mut., Inc.*, Adversary Proceeding No. 10-50731 (Ex. "L" to *St. Phillip Decl.*).  Washington corporate law requires that a Washington corporation hold an annual meeting of shareholders for the purpose of electing directors.  RCW 23B.07.010.  WMI is, therefore, currently failing to observe its own corporate formalities.  It should, as a result, not be heard to complain about the inequity of having to defend itself against Class Plaintiffs' claims that it failed to observe the necessary corporate formalities to insulate itself from liability here.

Given all of the above facts, this case is distinguishable from that cited by WMI, *Gunther v. Capital One, N.A.*, No. 09-cv-2966, 2010 WL 1404122 (E.D.N.Y. Apr. 8, 2010).  In *Gunter*, this Court found the complaint deficient because plaintiff did not allege that the two banks "fail[ed] to observe corporate formalities or . . . intermingle funds."  Further, the Court concluded that "no individual is

alleged to serve as a management executive for both entities" and that there was "no indication that Capital One Bank is undercapitalized, or that the plaintiff and the putative class members could not fully recover from Capital One Bank with respect to any claim on which they succeed." *Id*. at *13.  Unlike *Gunter*, here WMI admits that it intermingled funds through billion dollar capital contributions which were not ordinary business transactions and that it was undercapitalized when it made those contributions.  *Gunter*, therefore, is distinguishable, as the *Gunter* Court itself properly determined.  *Id*. at *14 (distinguishing this case).  The same is true of this Court's decision in *McAnaney v. Astoria Fin. Corp.*, 665 F. Supp. 2d 132 (E.D.N.Y. 2009) as plaintiffs in that case had no judicial admissions, Congressional testimony or SEC filings where the defendant admitted the common control and intermingling of funds for no consideration as is present here.  The *McAnaney* decision was also issued on a motion for summary judgment after the Court denied two of the parent corporation's Rule 12 motions.

### E.    If WMI's Motion is Granted, Leave to Replead Should Be Given.

Not all of the evidence Plaintiffs have amassed from the public record is pled in the SAC, nor, under our notice pleading system, does it have to be.  *Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506, 512 (2002) ("This simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims.").  The Court can take judicial notice of the sundry admissions of intermingling of funds and common control that WMI makes in its securities filings, its executives' Congressional testimony and its court filings. Hence, it is unnecessary for Plaintiffs to plead these facts for the Court to deny WMI's motion.  If the Court disagrees, leave should be granted for Plaintiffs to replead in light of the welter of evidence that has come to light from the Congressional hearings and the many lawsuits involving WMI, the FDIC and J.P.Morgan following the filing of the SAC in 2006.  In addition, Plaintiffs are entitled to discovery of

the materials WMI has produced to Congress and to the parties in these litigations on the issues raised by WMI's motion to prove their claims against WMI.

**F.    The Court Has Already Denied WMI's Motion for Decertification and WMI Offers Nothing New Justifying Reconsideration.**

WMI joined WMB's motion for decertification and lost.   Now it claims again that the class should be decertified because the Court decertified the class against WMB.  *WMI Brf.* at 21.  WMI, however -- unlike WMB -- does not have a FIRREA exhaustion defense to class certification, as the Court has already recognized.  Hence, there is no FIRREA impediment to class certification against WMI.

WMI also complains that it "must bear the entire burden of defending class claims for alleged misconduct that Plaintiffs concede WMI did not engage in." *Id.*  This argument is fallacious as Plaintiffs have never conceded that WMI was blameless or that it did not directly participate in the conduct alleged to be unlawful.  WMI's contention that it is blameless is belied by the evidence; a jury is entitled to conclude that it is directly responsible for the acts of its own executives.

WMI grouses that it is a Chapter 11 debtor and defending this action will unduly waste the estate's limited resources.  *Id.*  WMI cannot complain about the "inequity" of class certification.  WMI participated in the wrongdoing at issue here and has reorganized in an attempt to flush its own obligations to the detriment of Plaintiffs who funded its operations through the payment of illegal fees.  WMI, not Plaintiffs, are wasting the estate's resources by attempting serial decertification applications instead of working towards resolving these claims at trial so that its liability to the class can be fixed.

**CONCLUSION**

WMI unduly delayed by bringing this pleading motion several years after the pleadings were closed.  Because it has already delayed trial, the Court should not entertain it.  F̲ED. R. C̲IV. P. 12(c).

Alternatively, the Court should deny the motion for the stated reasons, including because (1) it has already twice rejected virtually the exact same argument; and (2) Plaintiffs have pleaded sufficient facts, taken alone and in conjunction with judicial admissions and facts which can be judicially noticed, to recover against WMI.

WMI's alternative request to decertify the class is an untimely request for reconsideration that asserts no new grounds.  The Court already denied this motion and should do so again.

Dated: July 9, 2010
        White Plains, New York

                                    Respectfully submitted,

                                    **LOWEY, DANNENBERG, COHEN
                                      & HART, P.C.**
                                    BY:  /s/ Peter D. St. Phillip, Jr.
                                            Peter D. St. Philip, Jr.
                                    One North Broadway,  Fifth Floor
                                    White Plains, NY  10601
                                    Tel:  (914) 997-5000
                                    Fax: (914) 997-0035
                                    E-mail: pstphillip@lowey.com

                                    **WHALEN & TUSA, P.C.**
                                    Joseph S. Tusa
                                    33 West 19th Street, Suite 405
                                    New York, NY  10011
                                    Tel: (212) 400-7100
                                    Fax: (212) 658-9685
                                    E-mail: joseph@whalen-tusa.com

                                    *Attorneys for Class Plaintiffs*