**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
----------------------------------------------------------X
DENISE CASSESE f/k/a DENISE CALIGIURI,
GEORGE SCOTT RUSH, and RICHARD
SCHROER, individually and on behalf of all
others similarly situated,                                    **MEMORANDUM OF**
                                                              **DECISION AND ORDER**
                        Plaintiffs,       05-cv-2724 (ADS)(ARL)

          -against-

WASHINGTON MUTUAL, INC.; and

THE FEDERAL DEPOSIT INSURANCE
COMPANY, in its capacity as receiver for
WASHINGTON MUTUAL BANK, such entity
having incorporated former defendants
WASHINGTON MUTUAL BANK, FA and
WASHINGTON MUTUAL HOME LOANS,
INC.;

                        Defendants.
----------------------------------------------------------X
**APPEARANCES:**

**WHALEN & TUSA, P.C.**
*Attorneys for the plaintiffs*
33 West 19th Street, Suite 405
New York, NY 10011
     By:    Joseph S. Tusa, Esq.,
               Paul C. Whalen, Esq., of Counsel

**LOWEY DANNENBERG COHEN & HART, P.C.**
*Attorneys for the plaintiffs*
White Plains Plaza
One North Broadway
White Plains, NY 10601
     By:    Peter D. St. Philip, Jr., Esq., of Counsel

**WEIL, GOTSHAL & MANGES, LLP**
*Attorneys for the defendant Washington Mutual Inc.*
767 Fifth Avenue
New York, NY 10153
     By:    Brian S. Rosen , Esq., of Counsel

**BAKER BOTTS, LLP**
*Attorneys for the defendant Federal Deposit Insurance Corporation*
The Warner
1299 Pennsylvania Avenue, NW
Washington, D.C. 20004
      By:    David A. Super, Esq.,
               Ryan Bull, Esq.,
               Elysa M. Dishman, Esq.,
               Samuel J. Waldon, Esq., of Counsel

**SPATT, District Judge.**

This consumer class action arises out of claims by the plaintiffs that the defendants improperly charged them "payoff fees" when they made early payments on their mortgages. Currently before the Court are two motions: (1) the plaintiffs' motion for reconsideration of the Court's previous denial of their motion to join Willaim Bloom as a plaintiff, and (2) a motion by defendant Washington Mutual, Inc. ("WMI") for judgment on the pleadings dismissing all of the plaintiffs' claims against WMI, or in the alternative, decertifying the class asserting claims against WMI. For the reasons set forth below, the Court (1) denies the plaintiff's motion for reconsideration, with leave to re-plead, and (2) denies WMI's motions for judgment on the pleadings and class decertification.

## I. BACKGROUND

In 2005, named plaintiffs Denise Cassese and George Scott Rush, who had home loans with defendant Washington Mutual Bank, FA ("WMB"), initiated the present action. Cassese and Rush alleged that WMB, as well as defendants Washington Mutual, Inc. ("WMI"); Former State-Chartered Washington Mutual Bank; Washington Mutual Bank, FSB ("WMBfsb"); and Washington Mutual Home Loans, Inc., charged them—and thousands of other banking customers—modest but improper fees when

they made early payments on their mortgages. Shortly after the commencement of this action, named plaintiff Richard Schroer, who identifies the entity with whom he held a home loan only as "Washington Mutual," joined the action, too. The details of the plaintiffs' allegations are set forth more fully in the Court's numerous previous decisions in this case, and familiarity with those facts is assumed.

The plaintiffs' original complaint asserted a wide range of causes of action against the defendants, including state common law claims and state and federal consumer protection claims. In 2007, before any class had been certified, the defendants moved to dismiss all of these causes of action for failure to state a claim. By order dated September 7, 2007, the Court granted the defendants' motion in part, and dismissed all of the plaintiffs' claims except those for (1) breach of consumer protection statutes in forty-eight U.S. states and territories, and (2) common law breach of contract, unjust enrichment, and fraud. Among the claims the Court dismissed at that time was a cause of action pursuant to the Truth in Lending Act, 15 U.S.C. §§ 1601–93r ("TILA"). TILA has a $100 threshold for claims based on alleged improper bank fees, and none of the named plaintiffs had claimed that the defendants charged them $100 or more. Thus, the Court found no TILA claim had been stated.

The plaintiffs then moved for reconsideration of the Court's September 7, 2007 decision. By order dated June 27, 2008, the Court upheld its previous decision with a single exception: the Court held that the plaintiff's TILA claim was dismissed *without prejudice*. The Court reasoned that it was possible that putative class plaintiffs existed who would allege that they were charged illegal payoff fees of more than $100, and thus the Court granted the plaintiffs thirty days to join any additional named plaintiff

3

who met this requirement. If such a person were joined, the plaintiffs could then re-assert their TILA claim.

Approximately two months later, and prior to the certification of any class or the joinder of any additional named plaintiffs, the legal landscape for the defendants changed dramatically. On September 25, 2008, WMB failed, and the Federal Deposit Insurance Corporation ("FDIC") was appointed as receiver for the bank. At the same time or soon thereafter, the defendants Former State-Chartered Washington Mutual Bank and Washington Mutual Home Loans, Inc. were also deemed to have failed, and were combined with WMB under the FDIC's receivership. The next day, September 26, 2008, defendant WMI, the ultimate corporate parent of all of the other named defendants, filed for Chapter 11 bankruptcy protection in the United States Bankruptcy Court for the District of Delaware.

In connection with the FDIC's receivership, the Court entered an automatic stay of the case from September 25, 2008 to December 24, 2008, and confirmed the substitution of the FDIC for defendants WMB, Former State-Chartered Washington Mutual Bank, and Washington Mutual Home Loans, Inc. The Court also recognized an indefinite stay of all claims asserted against WMI, pursuant to the District of Delaware Bankruptcy Court's automatic stay of all actions against WMI.

On December 29, 2008, the Court certified a plaintiff class to proceed on class claims against only WMB, now in the receivership of the FDIC. The Court defined the class (hereinafter "the WMB/FDIC Class") as:

> All consumers or borrowers in the United States and its territories who had a mortgage, deed of trust, home loan, cooperative loan, home equity loan or line of credit secured by a residence, which loan was serviced by Washington Mutual Bank, formerly known as

4

> Washington Mutual Bank, FA and who paid or will be demanded to pay prohibited fees, charges and/or penalties (often but not always termed "Fax Fees," "Payoff Statement Fees," "Recording Fees," or "UCC-3 Fees" by Washington Mutual Bank, formerly known as Washington Mutual Bank, FA in Payoff Statements) in connection with requests for payoff statements or payoff amounts or the prepayment, repayment, discharge, satisfaction or settlement of loans secured by a residence.

Cassese v. Washington Mut., Inc., 255 F.R.D. 89, 98 (E.D.N.Y. 2008) ("Cassese 12/29/08"). The Court also then certified named plaintiffs Denise Cassese, George Scott Rush, Richard Melichar and Richard Schroer as class representatives, although Richard Melichar later withdrew his claim and is no longer a named plaintiff. The Court did not at that time rule on whether this class or any other class could assert claims against any of the other named defendants. In the same order, the Court then again stayed the entire action until February 2, 2009 and shortly thereafter stayed the entire action until September 14, 2009.

The primary reason for the Court's stay of the action was to facilitate the FDIC in managing its role as receiver for WMB. Under the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA"), 12 U.S.C. § 1821, all persons making claims—including claims in courts of law—against the estate of a failed bank must first assert those claims directly with the FDIC. In light of this requirement, the Court stayed the action in deference to this administrative remedy, which the named plaintiffs then sought to exhaust.

In seeking to exhaust their own remedies with the FDIC, the named plaintiffs also sought to exhaust the administrative remedies of the unnamed class members. The named plaintiffs therefore filed a "class claim" with the FDIC, in which they attempted to assert both their own claims and the class members' claims against the WMB estate.

5

The FDIC rejected the "class claim" as not cognizable under its administrative claims process, but it processed—and then denied—the named plaintiffs' individual claims. No other individual members of the class filed administrative claims with the FDIC.

After these claims had been submitted and denied, and after the stay of the case had been lifted, the Court then returned to the issue of whether it would certify any additional classes to assert claims against the other named defendants. This was facilitated in part by the District of Delaware Bankruptcy Court's determination to lift the stay of actions against WMI. In its Order dated September 30, 2009, the Court reasoned that the nature of WMI's relationship as corporate parent of WMB gave the named plaintiffs standing to bring derivative claims against WMI, and therefore the Court certified a class to assert claims against WMI. The Court defined this new class ("the WMI Class") as identical to the WMB/FDIC Class, except that the WMI Class was permitted to assert claims against WMI. The Court then declined to certify any other class, on grounds that the named plaintiffs had no standing to assert claims against the other named defendants.

After the Court lifted the stay in this case, the parties re-commenced motion practice. On September 21, 2009, the FDIC moved to decertify the class asserting claims against it, and on that same day, the plaintiffs moved to add William Bloom as a plaintiff to assert claims against the defendants pursuant to the TILA. By order dated May 13, 2010, the Court granted the FDIC's motion to decertify the FDIC/WMB Class on grounds that the unnamed plaintiff class members had not exhausted their compulsory remedies with the FDIC. See Cassese v. Washington Mut., Inc., No. 05-cv-2724, --- F. Supp. 2d ---, 2010 WL 1936131, **4–9, (E.D.N.Y. May 13, 2010)

6

("Cassese 5/13/10"). In addition, the Court denied the plaintiffs' motion to join William Bloom as a plaintiff, because Bloom had not alleged which entity in the Washington Mutual family he had interacted with. Id. at **12–13. However, the Court granted the plaintiffs leave to re-plead with greater specificity as to the entity or entities that Bloom alleged had charged an improper fee. Id.

Now, the plaintiffs request that the Court reconsider its denial of their motion to join William Bloom, based on newly submitted evidence that shows which Washington Mutual entity Bloom transacted with. WMI opposes this motion.

For its part, WMI moves pursuant to Fed. R. Civ. P. 12(c) for judgment on the pleadings dismissing all of the plaintiffs' claims against it, on grounds that it is not alleged to have directly taken any improper actions, and it cannot be held liable for the alleged wrong acts of its former subsidiary, WMB. In the alternative, WMI requests that the Court decertify the class asserting claims against it, on grounds that the decertification of the WMB/FDIC Class precludes the WMI Class from asserting derivative claims against it. The plaintiffs oppose both of these requests.

## II. DISCUSSION

**A. As to the Plaintiffs' Motion for Reconsideration**

The plaintiffs request that the Court reconsider its decision in Cassese 5/13/10, and permit William Bloom to join this case as a plaintiff to assert claims against WMI pursuant to the TILA. WMI opposes Bloom's joinder, on grounds that (1) Bloom's claim is time barred, (2) WMI is not a "creditor" as defined in the TILA, and thus is not subject to liability under the TILA, and (3) Bloom does not have a valid derivative claim against WMI. The Court finds none of these arguments compelling, but

7

nevertheless denies the plaintiffs' motion for reconsideration without prejudice because the plaintiffs failed to comply with the Court's instructions in Cassese 5/13/10.

As discussed above, the Court originally dismissed the plaintiffs' TILA claims in Cassese 9/7/07 on the ground that none of the named plaintiffs had asserted claims that satisfied the TILA's $100 threshold. However, on reconsideration, the Court allowed the plaintiffs to add any named plaintiff whose individual claim totaled more than $100. In response, the plaintiffs moved to join William Bloom, who alleged that he was charged an improper $120 payoff fee by "Washington Mutual." However, the plaintiffs did not state in their proposed complaint which "Washington Mutual" entity allegedly charged Bloom the improper fee. Thus, the Court could not readily determine the validity of Bloom's claim against WMI. Therefore, the Court denied the plaintiffs' motion to permit Bloom to assert a TILA claim against WMI, with leave to "replead against WMI with greater specificity." Cassese 5/13/10, 2010 WL 1936131 at *13.

However, rather than replead as directed, the plaintiffs filed the present motion to reconsider. The plaintiffs assert in their motion to reconsider that it was WMB that charged Bloom an improper payoff fee, and they have submitted documentary evidence to support this claim. The fact that the plaintiffs now assert that WMB charged the relevant fee does not bar Bloom from asserting a derivative TILA claim against WMI— and this issue is discussed at greater length below. Rather, Bloom's claim remains insufficient because, despite the Court's direction, the plaintiffs have as yet failed to present a proposed amended complaint to the Court alleging that WMB charged the fee. As such, the plaintiffs' submissions in support of their motion for reconsideration do not address the Court's original concern that Bloom had plead with insufficient

8

specificity.  Extrinsic evidence does not cure vagueness at the pleading stage.  The Court therefore denies the plaintiffs' motion for reconsideration, and once again grants the plaintiffs thirty days to replead Bloom's claim against WMI with greater specificity.

WMI makes three additional arguments in support of denying with prejudice the plaintiff's motion to join Bloom.  Two of these arguments the Court has previously addressed and rejected, and the Court now addresses and rejects the third contention below as part of its discussion of WMI's motion for judgment on the pleadings.

First, WMI asserts that Bloom's TILA claim is time barred, as TILA provides only a one year statute of limitations, and the present case was not brought within a year of the accrual of Bloom's claim.  Although there is some dispute as to when Bloom's claim accrued, the plaintiffs do not assert that the present case was filed within a year of the accrual of Bloom's claim.  Nevertheless, the Court has already held in this case that the plaintiffs' allegations of the defendants' acts are sufficient to assert a plausible claim that the TILA statute of limitations should be tolled on equitable grounds.  Cassese v. Washington Mut., Inc., No. 05-cv-2724, Docket # 167, p. 23 (E.D.N.Y. June 27, 2008) ("Cassese 6/27/08") ("the Court declines to prohibit potential claimants from submitting evidence that would support a finding of concealment and permit the application of equitable tolling").  Thus, applying this holding to Bloom's TILA claim, the Court finds that the plaintiffs' pleadings establish a plausible claim for tolling TILA's statute of limitations with respect to Bloom.

WMI counters that tolling is inappropriate with respect to Bloom's claims against WMI because the plaintiffs allege that WMB, and not WMI, concealed violations of the TILA.  However, as discussed below, the Court finds that at this pre-

9

discovery stage, the acts of WMB may be imputed to WMI as an alter-ego, and that tolling is therefore appropriate.

Second, WMI contends that it is not a "creditor" as defined in the TILA, and as such, the Bloom cannot assert a valid claim against it pursuant to that statute. The Court directly addressed and rejected this argument in Cassese 5/13/10. 2010 WL 1936131 at *12. The Court will not repeat that discussion here.

Third, WMI asserts that Bloom cannot assert a valid claim against WMI because Bloom alleges that it was WMB, not WMI, that charged him an improper payoff fee. According to WMI, Bloom's proper claim, if any, must be against WMB, now in the receivership of the FDIC. However, in both Cassese v. Washington Mut., Inc., 262 F.R.D. 179, 185 (E.D.N.Y. 2009) ("Cassese 9/30/09") and Cassese 5/13/10, the Court held that the plaintiffs had standing to assert derivative claims against WMI based on acts taken by WMB. In addition, the Court confirms below that the plaintiffs have asserted valid derivative claims against WMI. Thus, this objection is without merit.

Finding none of WMI's arguments to be compelling, the Court grants the plaintiffs thirty days to replead Bloom's claim against WMI with greater specificity.

**B. As to WMI's Motion for Judgment on the Pleadings or to De-Certify the WMI Class**

For its part, WMI has moved for judgment on the pleadings dismissing all of the plaintiffs' claims. In the alternative, WMI moves to decertify the WMI Class. The plaintiffs oppose both motions.

**1. As to WMI's Motion for Judgment on the Pleadings**

**a. Standard on a Motion for Judgment on the Pleadings**

WMI has moved for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c), contending that the plaintiffs have not stated a claim upon which relief may be granted. The Court therefore applies the same standard used for a motion to dismiss for failure to state a claim, pursuant to Fed. R. Civ. P. 12(b)(6). See Hayden v. Paterson, 594 F.3d 150, 160 (2d Cir. 2010).

Under the now well-established Twombly standard, a complaint should be dismissed only if it does not contain enough allegations of fact to state a claim for relief that is "plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007). The Second Circuit has explained that, after Twombly, the Court's inquiry under Rule 12(b)(6) is guided by two principles. Harris v. Mills, 572 F.3d 66 (2d Cir. 2009) (quoting Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009)).

"First, although 'a court must accept as true all of the allegations contained in a complaint,' that 'tenet' 'is inapplicable to legal conclusions' and 'threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" Id. (quoting Iqbal, 129 S. Ct. at 1949). "'Second, only a complaint that states a plausible claim for relief survives a motion to dismiss' and '[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" Id. (quoting Iqbal, 129 S. Ct. at 1950). Thus, "[w]hen there are well-pleaded factual

11

allegations, a court should assume their veracity and . . . determine whether they plausibly give rise to an entitlement of relief." Iqbal, 129 S. Ct. at 1950.

The Court applies this analysis to the WMI's motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c).

### b. Application of the Rule 12(c) Standard

The plaintiffs have asserted that WMB, a former subsidiary of WMI, charged the WMI Class members improper fees in connection with the class members paying their mortgages early, but they do not allege that WMI directly charged any improper fees. Nevertheless, the plaintiffs seek to assert derivative claims against WMI, WMB's corporate parent and alleged alter-ego, based on WMB's acts. WMI contends that the plaintiff has not alleged sufficient facts to support a finding that WMB's corporate veil should be pierced.

In Cassese 9/30/09 and Cassese 5/13/10, the Court held that, based on the plaintiffs' allegations that WMB was a mere department of WMI, the plaintiffs had standing to assert derivative claims against WMI based on the acts of WMB. Cassese 9/30/09, 262 F.R.D. at 185; Cassese 5/13/10, 2010 WL 1936131 at *12. However, the Court did not explicitly rule in either decision as to whether the plaintiffs had stated valid claims against WMI based on derivative liability.

Under the New York State choice of law rules that the Court must apply, the law applicable to a corporation's internal affairs is generally the law of the state of its incorporation. See Fletcher v. Atex, Inc., 68 F.3d 1451, 1456 (2d Cir. 1995). Here, WMB was incorporated in Washington State, and therefore the law that guides the Court in determining whether to disregard WMB's corporate form is the law of

12

Washington State. The Court notes that in Cassese 9/30/09, it applied New York state law in determining whether to pierce WMB's corporate veil for purposes of standing. Neither party has addressed whether this choice of law was appropriate in that context. However, the choice of law issue is not critical, as the Court finds that the substantive law of New York and Washington on this point is sufficiently similar so as not to affect the outcome of the Court's decision.

Under Washington law, "though courts ordinarily recognize a parent corporation as a legal entity distinct and separate from its subsidiary, courts may disregard the distinction between a parent corporation and its subsidiary when necessary to do justice in particular cases." In re Wade Cook Fin. Corp., 375 B.R. 580, 598 (9th Cir. 2007). Thus, although a presumption of separateness applies to parent and subsidiary corporations, Washington law provides that the corporate veil of a subsidiary may be pierced when "[the parent and subsidiary's] property rights [are] so commingled and their affairs so intimately related in management as to render it apparent that they are, in fact and in intent, one, and, so related, to have them regarded otherwise would work a fraud upon third persons." Id. (internal quotations and alterations omitted). In ruling on the issue of standing to assert derivative claims against WMI, the Court previously applied a very similar standard under New York law in Cassese 9/30/09.

Here, the plaintiffs allege that WMI "actively supervises and controls [WMB's] activities and operations," and contends that this is supported by statements in various WMI publications. (2d Am. Compl., ¶ 21.) The statements that the plaintiffs rely on include WMI's report that "[a]ll of [WMI's] banking subsidiaries are under the

13

common control of [WMI]," as well as WMI's declaration in a press release that WMI's Home Loans Division president would "[o]versee all aspects of the company's home loans business." (Id.) The plaintiffs also cite to WMI's statement to the press that "Washington Mutual currently operates more than 2,400 retail banking, mortgage lending, commercial banking and financial services offices throughout the nation." (Id.)

The Court finds that, at the pleading stage, these fact allegations are sufficient to establish the plausibility of the plaintiffs' conclusion that WMB is the alter-ego of WMI. The Court views this to be in harmony with the Court's finding in Cassese 9/30/09 that the plaintiffs have standing to sue WMI for the acts of WMB, based on evidence that WMI and WMB share common management and combine publicly reported earnings statements. 262 F.R.D. at 185.

Based on three cases, WMI challenges the Court's holding that the plaintiffs have asserted valid derivative claims against WMI. The Court finds all three of these cases distinguishable. First, WMI relies on this Court's holding in Gunther v. Capital One, N.A., 703 F. Supp. 2d 264, 278 (E.D.N.Y. 2010). In Gunther, the plaintiff asserted that, based on an alter-ego theory of liability, Capital One Bank's parent corporation was liable for allegedly improper bank fees that Capital One Bank had charged the plaintiff. Citing a failure to plead specific facts, the Court dismissed the plaintiff's claims against Capital One Bank's corporate parent. Id. In that case, however, the Court was applying Virginia law, which permits alter-ego liability only when the use of the corporate form is, among other things, a "'device or sham' used to 'disguise wrongs, obscure fraud, or conceal crime.'" Id. (quoting H.S.W. Enterprises,

14

Inc. v. Woo Lae Oak, Inc., 171 F. Supp. 2d 135, 145 (S.D.N.Y.2001) (applying Virginia law)). Neither Washington nor New York law requires that the corporate form be actively used to conceal wrongs to pierce a corporation's veil. To be sure, Washington law requires that the corporate form be disregarded only when to do otherwise "would work a fraud upon third persons," In re Wade Cook Fin. Corp., 375 B.R. at 598, but it does not require, as Virginia law does, that the use of the corporate form have been *intended* to hide wrongdoing. In Gunther, this Court dismissed the plaintiff's derivative claims for failure to allege facts supporting this element of intent to disguise wrongs. Washington law carries no such additional pleading burden, and therefore Gunther is inapposite.

Second, the plaintiffs rely on Judge Joseph F. Bianco's summary judgment ruling in McAnaney v. Astoria Financial Corp., 665 F. Supp. 2d 132, 145 (E.D.N.Y. 2009), a case that was before this Court during its pleading stage. In McAnaney, Judge Bianco granted summary judgment in favor of a corporate parent being sued for the acts of its subsidiary. Id. Applying New York law, Judge Bianco found that evidence of overlapping directors and officers between the parent and its subsidiary, as well as evidence that the two entities issued consolidated earnings statements, was insufficient to support a finding that the two entities were alter-egos. Id.

This case is distinguishable because, here, the plaintiffs have alleged facts in support of their request to pierce WMB's corporate veil—including alleged statements by the corporate parent—that were not alleged in McAneney. Moreover, McAneney was a decision on a motion for summary judgment, and Judge Bianco held that the plaintiffs' evidence was insufficient to *prove* alter ego liability. The present motion is a

15

motion to dismiss, and even under the Twombly standard for pleading, a plaintiff need not allege facts that would *prove* the plaintiff's factual and legal conclusions in order to avoid dismissal. Rather, a plaintiff must only allege facts that show that the plaintiff's conclusions are *plausible*. See Iqbal, 129 S. Ct. 149–50. The Court is satisfied that, at this procedural stage, the plaintiffs have alleged facts that have "nudged their claims" for derivative liability "across the line from conceivable to plausible." Twombly, 550 U.S. at 570.

Finally, WMI relies on a decision from the Bankruptcy Court for the District of Delaware, Youkelsone v. Washington Mut., Inc, 418 B.R. 107, 115 (Del. Br. 2009), that involved WMI itself. In that case, Bankruptcy Judge Mary Walrath considered a motion to dismiss derivative claims against WMI that were based solely on the acts of WMB. Having reviewed the plaintiff's complaint in Youkelsone, Judge Walrath dismissed the plaintiff's claims against WMI, stating that the plaintiff's bare allegation that "WMI was the parent corporation of WMB, overseeing, managing, controlling and supervising all operations of WMB" was insufficient to state a plausible claim for derivative relief against WMI. Id.

Again, the plaintiffs here, unlike the plaintiff in Youkelsone, have alleged facts showing that WMI made statements implying its shared identity with WMB. In addition, this Court in Cassese 9/30/09 took notice of WMI and WMB's overlapping directorship, management, and financial reporting. Thus, the Court finds that the complaint before this Court asserts material facts on this issue that were absent in the complaint in Youkelsone, and that denial of WMI's motion for judgment on the pleadings is appropriate despite the Youkelsone court's holding.

16

Therefore, the Court denies WMI's motion for judgment on the pleadings.

**2. As to WMI's Motion to Decertify the WMI Class**

In the alternative, WMI moves to decertify the WMI Class, on grounds that the WMI Class claims are dependant on the defunct class claims of the now-decertified WMB/FDIC Class. The Court briefly addressed and rejected this position in Cassese 5/13/10, and now does so in greater detail. Cassese 5/13/10, 2010 WL 1936131 at *9 ("The Court also notes that its [decertification of the WMB/FDIC Class] does not affect the WMI Class, which remains certified to assert claims against WMI. WMI never entered the FDIC's receivership, and thus the FDIC's exhaustion requirement does not affect claims asserted against WMI.").

WMI contends first that, because the WMI Class is defined in explicit reference to the WMB/FDIC Class, "[l]ogically, the WMI class must also be decertified for lack of numerosity as this required factor of numerosity was satisfied as to WMI only to the extent that it was met as to WMB." (WMI's Mot. for Jud. at 19.) WMI correctly relates that, after the Court found that it had no jurisdiction over the claims by the unnamed WMB/FDIC Class members, the Court decertified the WMB/FDIC Class for lack of numerosity. However, the Court never held that the WMB/FDIC Class members' claims were substantively invalid. Whereas FIRREA forces plaintiffs to file claims with the FDIC before suing failed banks in receivership, FIRREA does not extend this protection to persons related to the failed bank, but not themselves in receivership. This is true even if the related person is a corporate parent being sued derivatively for the acts of the failed bank. Therefore, unlike the claims asserted by the unnamed members of the WMB/FDIC Class, the Court has jurisdiction over the claims

17

asserted by the unnamed members of the WMI Class. The WMI Class is therefore sufficiently numerous, and need not be decertified.

This analysis applies equally to the argument that WMI has styled as "separate and independent," (WMI's Mot. for Jud. at 20) but in which WMI similarly asserts that the WMI Class members have no valid claims against WMB, and thus they have no valid claims against WMI. Again, the Court did not rule in Cassese 5/13/10 on the substantive validity of the unnamed class members' claims against WMB, but rather held only that the Court had no jurisdiction over these claims. WMI presents cases and commentary that stand for the proposition that a valid derivative claim against a corporate parent must be based—unsurprisingly—on a substantively valid underlying claim against the subsidiary. See, e.g., Harsco Corp. v. Segui, 91 F.3d 337, 349 (2d Cir. 1996); 1 Fletcher Cyc. Corp. § 41.28 ("In order to determine whether the corporate veil should be pierced, the corporation must first be assumed liable. An attempt to pierce the corporate veil is not itself a cause of action but rather is a means of imposing liability on an underlying cause of action, such as a tort or breach of contract.") However, there is no indication that a court's loss of jurisdiction over a valid substantive claim asserted against a subsidiary precludes a court from nevertheless hearing that otherwise-valid claim as asserted against a parent under an alter-ego theory. WMI's objection is therefore not a valid basis for decertifying the WMI Class.

The Court is similarly unmoved by WMI's assertion that "[e]quity clearly favors decertifying the WMI class." (WMI's Mot. for Jud. at 20.) Accepting as true at this stage the plaintiffs' allegation that WMI was the alter-ego of WMB, it is not unjust

18

that WMI should be held liable for acts that it allegedly directed and benefitted from, even if WMB was technically a separate legal entity.

Therefore, the Court denies WMI's motion to decertify the WMI Class.

### III. CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED** that the plaintiffs' motion for reconsideration is denied without prejudice to replead consistent with this opinion; and it is further

**ORDERED** that defendant WMI's motion for judgment on the pleadings or, in the alternative, to decertify the WMI Class is denied in its entirety.

**SO ORDERED.**

Dated: Central Islip, New York
October 18, 2010

                                                       _/s/ Arthur D. Spatt_
                                                        ARTHUR D. SPATT
                                                     United States District Judge