**FILED
CLERK**

9/3/2013 3:43 pm

**U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
DENISE CASSESE f/k/a DENISE CALIGIURI,
GEORGE SCOTT RUSH, RICHARD
SCHROER and WILLIAM BLOOM,
individually and on behalf of all others similarly
situated,

                              Plaintiffs,

           -against-

WASHINGTON MUTUAL, INC.;

THE FEDERAL DEPOSIT INSURANCE
COMPANY, in its capacity as receiver for
WASHINGTON MUTUAL BANK, such entity
having incorporated former defendants
WASHINGTON MUTUAL BANK, FA and
WASHINGTON MUTUAL HOME LOANS,
INC.; and

WASHINGTON MUTUAL BANK, FSB,

                             Defendants.
----------------------------------------------------------X

**DECISION AND ORDER**
05-cv-2724 (ADS)(ARL)

**APPEARANCES:**
**TUSA, P.C.**
*Attorneys for the Plaintiffs*
1979 Marcus Avenue, Suite 120
New York, NY 11042
      By:    Joseph S. Tusa, Esq., of Counsel

**LOWEY DANNENBERG, BEMPORAD, SELINGER & COHEN, P.C.**
*Attorneys for the Plaintiffs*
White Plains Plaza
One North Broadway
White Plains, NY 10601
      By:    Peter D. St. Philip, Jr., Esq., of Counsel

**WEIL, GOTSHAL & MANGES, LLP**
*Attorneys for the Defendant Washington Mutual Inc.*
767 Fifth Avenue
New York, NY 10153
      By:    John Peter Mastando, Esq., of Counsel

1

**SPATT, District Judge.**

This case arises from approval of a settlement ending more than six years of class action litigation against the Defendant Washington Mutual, Inc. ("WMI") for alleged violations of federal and state law in charging pre-payment fees relating to residential mortgage and home equity loans. Familiarity with the numerous prior orders is presumed.

On February 15, 2011, a Settlement Agreement (the "Agreement") was filed with the Court. As part of the Agreement, the Settlement Class Members agreed to relinquish any claims against WMI. For its part, WMI agreed to deposit a Gross Settlement Fund in the amount of Thirteen Million Dollars ($13,000,000) into a Settlement Account; provide notice to class members; and implement a claims process and distribution as described in Article 6 of the Settlement Agreement. The Agreement provided that, except for limited circumstances not applicable here, the Gross Settlement Fund was not to be paid out until after the "Effective Date" of the Agreement, which could not occur until after exhaustion of any appeals.

Relevant here, Article 6 provided that "[a]ny Class Member who does not timely and validly exclude himself or herself from the Class, but does not submit a valid and timely Proof of Claim Form . . . will not be entitled to receive any proceeds from the Net Settlement Fund." (Agreement ¶6.2.) The Agreement defined "Net Settlement Fund" as that portion of the Gross Settlement Fund that remained after the payment of attorneys' fees and other administrative expenses.

Article 6 also required that all Proof of Claim Forms be submitted no later than fifteen days prior to the "Final Fairness Hearing." Similarly, Article 6 mandated that "[a]ny Proof of Claim Form received after such date or any Proof of Claim Form that does not satisfactorily meet the submission requirements set forth herein and in the Proof of Claim Form shall be rejected by

the Settlement Administrator and Class Members submitting such forms shall not be entitled to a distribution from the Net Settlement Fund." (Id. ¶6.3.) Article 6 also provided that if a Disputed Claim could not be resolved by the Settlement Administrator without objection by Class Counsel or WMI Counsel, or by good faith conferrals between them, the claim could be submitted to the Court for resolution. (Id. ¶6.4.) In addition, the Settlement Account Agent was required to deliver Claim Payments to Claiming Class Members within 120 days of the Effective Date. Finally, Article 6 provides that any funds remaining in the "Net Settlement Fund" after Distribution of Claim Payments "shall be returned to WMI's bankruptcy estate for subsequent distribution in accordance with the Plan." (Id. ¶6.6.)

On March 10, 2011, the Court (1) entered a Preliminary Order Approving the Settlement Agreement; (2) scheduled a "Final Fairness Hearing" for September 15, 2011; (3) directed Class Members to submit their Proof of Claim Forms to participate in the Settlement's financial distribution by August 31, 2011.

On September 15, 2011, the Court (1) held a "Final Fairness Hearing"; (2) certified the proposed class for settlement purposes only; (3) overruled any objections; (4) approved the Settlement Agreement and application for attorneys' fees; (5) excluded opt-out claimants; and (6) deemed the distribution plan set forth in Article 6 to be fair and reasonable.

A few objectors unsuccessfully appealed the award of attorneys' fees. After those appeals were exhausted, the "Effective Date" of the Settlement Agreement occurred sometime in May 2013. Accordingly, under the terms of the Settlement Agreement, claim payments are due sometime in September 2013.

Class Counsel, counsel for WMI, and the Settlement Administrator have been conferring

3

regarding the nearly 500,000 Proof of Claim Forms submitted by Settlement Class Members. However, certain disputes regarding the Distribution of the Claim Payments have arisen. In a letter dated August 13, 2013, the parties jointly requested the Court's rulings on these disputes.

## I. DISCUSSION

1. <u>As to Late-Filed Proof of Claim Forms</u>

The Settlement Administrator has determined that approximately 2,652 Proof of Claim Forms were received after the August 31, 2011 deadline, but prior to the "Effective Date" of the Settlement Agreement. Approximately 496,036 Proof of Claim Forms were timely filed. Class counsel believes that these late-filed claims should be allowed, while WMI believes that these late-filed claims should be disallowed.

Courts in this and other circuits have delineated four factors to aid the Court in addressing untimely claims in a class action settlement. These factors (the "<u>Pioneer</u> factors") include: 1) the danger of prejudice to the nonmovant; 2) the length of the delay and its potential effect on judicial proceedings; 3) the reason for the delay, including whether it was within the reasonable control of the movant; and 4) whether the movant acted in good faith. <u>Pioneer Inv. Servs. v. Brunswick Assoc. Ltd. P'ship</u>, 507 U.S. 380, 395, 113 S. Ct. 1489, 123 L. Ed. 2d 74 (1993)); <u>accord</u> <u>In re Oxford Health Plans, Inc.</u>, 383 F. App'x 43, 45 (2d Cir. 2010); <u>In re Visa Check/Mastermoney Litig.</u>, No. 96-CV-2538, 2009 WL 7230400, at *1 (E.D.N.Y. Nov. 19, 2009). Especially relevant to this determination is the reason for the delay and whether it was in the claimants' control. <u>See</u> <u>In re Oxford Health Plans, Inc.</u>, 383 F. App'x at 45 ("[B]ecause in the ordinary case there will be little prejudice or disruption caused by allowing a late-submitted claim, we focus our analysis on the asserted reason for the claimant's delay"); <u>see</u> <u>also</u> <u>In re Gilat Satellite Networks, Ltd.</u>, No. 02-CV-1510, 2009 WL 803382, at *6 (E.D.N.Y. Mar. 25, 2009)

4

("Because there is no showing of delay or prejudice, the late filed claims should be included in the class for settlement disbursement."). Some courts have likened this inquiry to a showing of "excusable neglect." See In re Auction Houses Antitrust Litig., No 00-CV-0648, 2004 WL 3670993, *9 (S.D.N.Y. Nov. 17, 2004).

Here, while Class Counsel asserts that accepting late-filed claims would have a negligible impact on the recovery for timely-filed claims, the Court requires additional information before it can make a determination. In particular, Class Counsel fails to provide the reasons for the delays or explain just how lengthy the particular delays were. Nor does Class Counsel indicate, in any quantifiable terms, the average payout for Class Members, either including or excluding the late-filed claims. Without such calculations, its remains unclear the extent to which WMI, which appears to retain a reversionary interest in any undistributed funds, would be prejudiced by the inclusion of late-filed claims. Dahingo v. Royal Caribbean Cruises, Ltd., 312 F. Supp. 2d 440, 447 (S.D.N.Y. 2004) (prejudice is found where the defendant was entitled to receive back any excess not paid out for claims, attorneys' fees and costs, or administrative expenses). For this reason, at this time, the Court defers ruling on the dispute over the late-filed claims. Class Counsel is directed to submit further explanation on this issue, not to exceed 20 pages, within 20 days of the date of this order. Class Counsel should fully address why, in light of each of the four Pioneer factors, the Court should allow late-filed claims as part of the Settlement distribution.

2. As to Unsigned Proof of Claim Forms

The Settlement Administrator has advised the parties that approximately 45,063 Proof of Claim Forms were timely received, but unsigned. The instructions to the Proof of Claim Form directed all Class Members to execute their claims forms, and by their signature, the Settlement

Class Members are verifying that they are entitled to receive a Claim Payment. However, relying on Dahingo, Class Counsel believes that the Settlement Class Members' efforts to complete and submit their Proof of Claim Form to the Settlement Administrator evinces sufficient intent to participate in the Settlement. The Court agrees.

To be sure, in Dahingo, the Court granted an application for an order providing claimants who submitted timely but unsigned claims the opportunity to submit signed claim forms. Given the (1) protracted nature of this litigation; (2) the upcoming negotiated 120-day deadline to disburse Claim Payments; and (3) the lack of opposition by WMI on this issue, the Court sees no reason to require these claimants to submit signed claim forms, thereby further extending this litigation. Accordingly, the Court grants Class Counsel's request to direct the Settling Parties and the Settlement Administrator to accept and treat as valid all Class Member unsigned, timely claims received by the Settlement Administrator.

3. Single Proof of Claim Forms Submitted for Multiple Qualifying Claims

Certain Class Members are eligible to submit multiple claims. Instead of separately mailing Proof of Claim Forms to the same Class Member for each eligible claim, and to save postage costs, the Settlement Administrator included multiple Proof of Claim Forms in a single mailing to Class Members eligible to receive multiple forms. Each Proof of Claim Form indicated on its face that separate Proof of Claim Forms were to be submitted for each claim. The Settlement Administrator has informed the parties' counsel that approximately 8,636 Settlement Class Members attempted to submit multiple eligible claims on a Single Proof of Claim Form. Based on the loan database obtained through discovery by Class Counsel, and provided to the Settlement Administrator, the Settlement Administrator can identify and compute the amount of multiple claims submitted on a single Proof of Claim Form by eligible Settlement

6

Class Members. Class Counsel believes that all included eligible claims listed on a single proof of Claim Form should be accepted.

Finding no prejudice to WMI or the other Class Members, the Court grants Class Counsel's request to direct the Settling Parties and the Settlement Administrator to accept and treat as valid all eligible Class Member claims listed on a single Proof of Claim Form.

4. <u>Multiple Qualifying Loans but Submitted Claim for only One Loan</u>

Relatedly, certain Class Members who are eligible to submit multiple claims only submitted a claim for one loan. The Settlement Administrator has informed the parties' counsel that approximately 7,880 loans in the electronic loans database remain unclaimed by Settlement Class Members who submitted a claim for another loan. Class Counsel believes that these Class Members should be eligible to receive a Claim Payment for all the Loans. The Court disagrees. In the Court's view, these Class Members apparently evinced an intent to submit a claim for only one of their loans.

5. <u>Settlement Class Members who Claim Lower Amounts than Indicated in Discovery</u>

The default value of the Disputed Fees paid by Claiming Class Members for purposes of computing their share of the "Net Settlement Fund" is determined by the information in the electronic loan database obtained through discovery by Class Counsel, and provided to the Settlement Administrator. Nonetheless, the Court approved a process whereby Settlement Class Members could (but were not required to) indicate the amount of their alleged claim on the face of the Proof of Claim Form. Settlement Class Members who claimed an amount greater than the default amount reflected in the loan database were required to submit documents to support an upward adjustment. The parties' counsel and the Settlement Administrator are currently reviewing such claims and documents. The Settlement Administrator reports that approximately

7

3,588 claims contain Proof of Claim Forms seeking an amount <u>lower</u> than the default values indicated in the loan database. In this instance, Class Counsel recommends that the higher value represented by the electronic database be used to calculate the Settlement Class Member's claim.

The Court agrees. Settlement Class Members were not actually required to indicate the amount of their alleged claim on the face of the Proof of Claim Form and, presumably, they were not aware of the default value recovery. Under these circumstances, the Court identifies no reason to penalize those Settlement Class Members who claimed a lower amount than indicated in discovery.

6. <u>Inclusion of Supporting Documents without Listing the Amount of Their Claims</u>

In addition to the Class Members who submitted documents supporting specified claim amounts above or below the default indicated by the Electronic Loan Database, others submitted documents without indicating the amount of their claims. The Settlement Administrator advises that 38,061 such claims were received. Class Counsel contends that the submission of documents indicates a request that those documents be reviewed to determine whether they support an upward adjustment to the default claim value indicated in the electronic database. The Court agrees. These Class Members apparently evinced an intent to seek an upward adjustment to the default claim value.

## II. CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED**, that Court defers ruling on the late-filed claims issue until Class Counsel submits further explanation as described in the order; and it is further

**ORDERED**, that the Settling Parties and Settlement Administrator are directed to accept and treat as valid all Class Member unsigned claims received by the Settlement Administrator; and it is further

**ORDERED**, that the Settling Parties and Settlement Administrator are directed to accept and treat as valid all eligible Class Member claims listed on a single Proof of Claim Form; and it is further

**ORDERED**, that the Settling Parties and Settlement Administrator should not accept and treat as valid claims for Class Members who submitted a claim form for only one of their loans; and it is further

**ORDERED,** that the Settling Parties and Settlement Administrator are directed to calculate class member claims by using the default value listed for the claim in the electronic loan database provided to the Settlement Administrator, or the value supported by the documents submitted by the Class Member accompanying the claim form(s), whichever value is greater or yields the higher claim, regardless of the claim amount listed by the Class Member on the face of the submitted claim form.

**SO ORDERED.**

Dated: Central Islip, New York
September 4, 2013

                                                  *Arthur D. Spatt*
                                                  ARTHUR D. SPATT
                                                  United States District Judge