**FILED
CLERK**

10/1/2013 10:43 am

**U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE**

**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK**
----------------------------------------------------------X
DENISE CASSESE f/k/a DENISE CALIGIURI,
GEORGE SCOTT RUSH, RICHARD
SCHROER and WILLIAM BLOOM,
individually and on behalf of all others similarly
situated,

                       Plaintiffs,

      -against-

WASHINGTON MUTUAL, INC.;

THE FEDERAL DEPOSIT INSURANCE
COMPANY, in its capacity as receiver for
WASHINGTON MUTUAL BANK, such entity
having incorporated former defendants
WASHINGTON MUTUAL BANK, FA and
WASHINGTON MUTUAL HOME LOANS,
INC.; and

WASHINGTON MUTUAL BANK, FSB,

                      Defendants.
----------------------------------------------------------X

**DECISION AND ORDER**
05-cv-2724 (ADS)(ARL)

**APPEARANCES:**
**TUSA, P.C.**
*Attorneys for the Plaintiffs*
1979 Marcus Avenue, Suite 120
New York, NY 11042
      By:    Joseph S. Tusa, Esq., of Counsel

**LOWEY DANNENBERG, BEMPORAD, SELINGER & COHEN, P.C.**
*Attorneys for the Plaintiffs*
White Plains Plaza
One North Broadway
White Plains, NY 10601
      By:    Peter D. St. Philip, Jr., Esq., of Counsel

**WEIL, GOTSHAL & MANGES, LLP**
*Attorneys for the Defendant Washington Mutual Inc.*
767 Fifth Avenue
New York, NY 10153
      By:    John Peter Mastando, Esq., of Counsel

1

**SPATT, District Judge.**

This case arises from approval of a settlement ending more than six years of class action litigation against the Defendant Washington Mutual, Inc. ("WMI") for alleged violations of federal and state law in charging pre-payment fees relating to residential mortgage and home equity loans. Familiarity with the numerous prior orders is presumed.

On February 15, 2011, the parties executed a Class Action Settlement Agreement (the "Settlement Agreement").

On March 10, 2011, the Court directed Class Members to submit their Proof of Claim Forms to participate in the Settlement's financial distribution by August 31, 2011.

On September 15, 2011, the Court approved the Settlement. However, due to appeals by a few objecting class members, the Effective Date of the Settlement Agreement was delayed until May 2013. All objector appeals were denied.

Class Counsel, counsel for WMI, and the Settlement Administrator have been conferring regarding the nearly 500,000 Proof of Claim Forms submitted by Settlement Class Members. However, certain disputes regarding the Distribution of the Claim Payments have arisen. In a letter dated August 13, 2013, the parties jointly requested the Court's rulings on these disputes.

In a Decision and Order dated September 3, 2013, the Court resolved five of the six issues presented and reserved decision on the question of late-filed claims. In this regard, the Court directed Class Counsel to submit further explanation concerning its request to permit late-filed claims of absent Class Members. In particular, the Court stated that it "requires additional information before it can make a determination," including "the reasons for the delays," the length of the delays, and the average payout for Class Members, by including or excluding the late-filed claims.

In response, the Settlement Administrator reviewed each of the 23,622 late claims from all filing sources (revised up from the 2,652 e-mailed claims initially represented as late) to determine if there were explanations and found approximately 243, or approximately 1% of the total late-filed claims, contained a reason for the tardiness. Of the 23,622 late claims, 6,168 were received within 30 days of the August 31, 2011 deadline, 19,254 were received within 90 days of that deadline, 20,328 were received within 120 days of that deadline, and the remainder received thereafter.

As stated in the Court's September 3, 2013 order, courts in this and other circuits have delineated four factors to aid in addressing untimely claims in a class action settlement. These factors (the "Pioneer factors") include: 1) the danger of prejudice to the nonmovant; 2) the length of the delay and its potential effect on judicial proceedings; 3) the reason for the delay, including whether it was within the reasonable control of the movant; and 4) whether the movant acted in good faith. Pioneer Inv. Servs. v. Brunswick Assoc. Ltd. P'ship, 507 U.S. 380, 395, 113 S. Ct. 1489, 123 L. Ed. 2d 74 (1993)); accord In re Oxford Health Plans, Inc., 383 F. App'x 43, 45 (2d Cir. 2010); In re Visa Check/Mastermoney Litig., No. 96-CV-2538, 2009 WL 7230400, at *1 (E.D.N.Y. Nov. 19, 2009). Especially relevant to this determination is the reason for the delay and whether it was in the claimants' control. See In re Oxford Health Plans, Inc., 383 F. App'x at 45 ("[B]ecause in the ordinary case there will be little prejudice or disruption caused by allowing a late-submitted claim, we focus our analysis on the asserted reason for the claimant's delay"); see also In re Gilat Satellite Networks, Ltd., No. 02-CV-1510, 2009 WL 803382, at *6 (E.D.N.Y. Mar. 25, 2009) ("Because there is no showing of delay or prejudice, the late filed claims should be included in the class for settlement disbursement."). Some courts have likened this inquiry to

a showing of "excusable neglect." See In re Auction Houses Antitrust Litig., No 00-CV-0648, 2004 WL 3670993, *9 (S.D.N.Y. Nov. 17, 2004).

As to the danger of prejudice to the nonmovant, the Court finds that accepting otherwise valid claims that were received late would have a relatively slight prejudicial effect on the recovery of timely-filed class members. The Net Settlement Fund is approximately $11.2 million. Therefore, on a pro-rata basis, if all late-filed claims are accepted, the average payout per class member would be $21.48. Conversely, if all late-filed claims are rejected, the average payout per class member would be increased slightly to $22.40. The difference would be less than 5%. Further, the Court is satisfied that accepting late-filed claims would have a minimal effect on WMI's reversionary interest "as the settlement is fully subscribed in either case." (Class Counsel's Ltr, at 3.)

Similarly, the Court finds that the proffered reasons for the delays – which include submissions to the Court or WMI's successor, illness, and wrong addresses – appear reasonable and do not reflect bad faith in any way.

Finally, with respect to the length of the delay and its potential effect on judicial proceedings, as noted above, 20,328 claims were received within 120 days of the August 31, 2011 deadline. Class Counsel represents that accepting all late-filed claims at this time would not have any appreciable effect on the administration of the settlement. However, even with modest prejudice to the timely-filed Class Members and the WMI, the Second Circuit has cautioned that "the legal system relies on deadlines to function, and that 'every missed deadline" should not become "the occasion for the embarkation on extensive trial and appellate litigation to determine the equities of enforcing the bar.'" In re Oxford Health Plans, Inc., 383 F. App'x at 45 (citation omitted). Mindful of this concern, the Court declines to accept all late-filed claims

because to do so would, in effect, render the August 31, 2011 deadline a nullity. Rather, the Court grants Class Counsel's request to direct the Settlement Administrator to accept late-filed claims to the extent the Settlement Administrator shall accept only those claims filed within 120 days of August 31, 2011 deadline.

**SO ORDERED.**

Dated: Central Islip, New York
October 1, 2013

                                                    *Arthur D. Spatt*
                                                    ARTHUR D. SPATT
                                                  United States District Judge